Dated: February 27, 2006

**NOTICE REGARDING EXTENSION OF NEGOTIATION PERIOD PROVIDED BY STIPULATION BETWEEN DELTA AIRLINES, KENTON COUNTY AIRPORT BOARD AND UMB BANK, N.A. AS INDENTURE TRUSTEE**

Notice #5

**NOTICE TO THE HOLDERS OF THE $419,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES A (DELTA AIR LINES, INC. PROJECT) AND THE $19,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES B (DELTA AIR LINES, INC. PROJECT)**

| Series | Interest Rate | Maturity Date | CUSIP No. [1] |
|--------|---------------|---------------|-----------|
| Series A | 7.500% | 2/1/2012 | 491026JF8 |
| Series A | 7.500% | 2/1/2020 | 491026JG6 |
| Series A | 7.125% | 2/1/2021 | 491026JK7 |
| Series A | 6.125% | 2/1/2022 | 491026JH4 |
| Series B | 7.250% | 2/1/2022 | 491026JJ0 |

**(COLLECTIVELY, THE "BONDS")**

**NOTE:  THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE REGISTERED AND BENEFICIAL OWNERS OF THE BONDS.  IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS, AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO BENEFICIAL OWNERS OF THE BONDS IN A TIMELY MANNER.**

Dear Bondholder:

This notice (the "Notice") is given to you by UMB Bank, N.A., as successor trustee to Star Bank, N.A. n/k/a U.S. Bank National Association (the "Trustee") under the Trust Indenture dated as of February 1, 1992 (the "Indenture") between the Kenton County Airport Board (the "Issuer") and the Trustee in your capacity as a holder of the Bonds (the "Bondholders").

This Notice and other information will be posted on www.kentoncountybondholders.com, a website established by the Trustee for the purpose of making publicly available certain information which may be of interest to Bondholders.  Delta Air Lines, Inc. ("Delta") and certain of its affiliated companies have also provided information for dissemination and have posted certain financial and other information pertaining to their bankruptcy filing (as referenced below) on their website, www.deltadocket.com.

**CHAPTER 11 FILING OF DELTA AIR LINES, INC., ET. AL.**

As the Trustee previously notified you, on September 14, 2005, Delta and certain of its affiliates filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Proceedings").  The bankruptcy petition and other related documents filed in these cases are available on the Court's

---

[1] The Trustee makes no representation as to the accuracy of the CUSIP numbers.

website www.nysb.uscourts.gov or at the Clerk's office at the following address:

Clerk of United States Bankruptcy Court<br>
Alexander Hamilton Custom House<br>
One Bowling Green<br>
New York, NY 10004-1408

Additionally, certain documents are available at www.deltadocket.com.

## DELTA AIR LINES, INC. ANNOUNCES POTENTIAL REJECTION OF FACILITIES LEASE; PARTIES ENTER INTO STIPULATION CONCERNING POTENTIAL REJECTION

As the Trustee previously notified you Delta has publicly announced that it is considering a rejection of a certain Lease Agreement dated as of February 1, 1992 (the "Facilities Lease") as part of the Bankruptcy Proceedings. The Facilities Lease relates to facilities (the "Facilities") at the Cincinnati / Northern Kentucky International Airport. The Facilities Lease provides, inter alia, that throughout its term, Delta shall pay, or cause to be paid, rental amounts equal to those amounts due under the Bonds.

As the Trustee also previously notified you, based upon Delta's indication of its potential rejection of the Facilities Lease, Delta, the Trustee and the Kenton County Airport Board ("KCAB") entered into a Stipulation, a copy of which is posted at www.kentoncountybondholders.com (the "Stipulation"). The Stipulation contemplated, among other things, that for a period commencing December 30, 2005 and ending on March 1, 2006 (the "Negotiation Period") Delta, the Trustee, and KCAB shall attempt to negotiate a consensual agreement with respect to Delta's occupancy of some or all of the Facilities after any rejection of the Facilities Lease. The Court approved the Stipulation on January 6, 2006.

**This Notice should not be considered to be a substitute for a careful and thorough reading of the Stipulation.** Any questions concerning the Stipulation can be directed to counsel to the Trustee, Mr. Kannel or Mr. Bleck (each of their contact information is listed below).

## NEGOTIATION PERIOD EXTENDED UNTIL MAY 1, 2006

The Stipulation provides that the parties may extend the Negotiation Period beyond March 1, 2006 by written agreement of the parties. The parties have agreed to extend the Negotiation Period through and including May 1, 2006 (the "Extension").

As the Trustee previously notified you, certain Bondholders have joined an unofficial Bondholders' committee. They have approved the Extension. Bondholders participating in such group could be restricted in their ability to trade their Bonds. In addition, Delta has required that Bondholders who receive information from Delta enter into a confidentiality agreement which may not only restrict the ability of such Bondholders to trade the Bonds, but also the other securities of Delta.

## RETENTION OF COUNSEL

The Trustee has retained the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., and specifically Mr. William W. Kannel and Mr. Daniel S. Bleck of that firm, to represent it in connection with the Bankruptcy Proceedings. The address of Mr. Kannel and Mr. Bleck is Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111. Mr. Kannel's

2

UMB 01103

telephone number is (617) 348-1665; E-mail: wkannel@mintz.com.  Mr. Bleck's telephone number is (617) 348-4498; E-mail: dbleck@mintz.com.

## FUTURE EVENTS

The Trustee will periodically communicate with Bondholders through written notice of material events of a public nature which the Trustee has knowledge.  To facilitate such communications, any beneficial holder who wishes to receive such written notices directly may send its notice address to the Trustee, including its claimed holdings for the Bonds held (with CUSIP numbers, DTC participant name and denominations, if applicable), a contact person, address, telephone number and e-mail address.

Please note that the Trustee, may conclude that a specific response to particular inquiries from individual Bondholders is not consistent with equal and full dissemination of information to all Bondholders. Bondholders should not rely on the Trustee, or on counsel or other advisors retained by the Trustee, as their sole source of information.  The Trustee makes no recommendations nor gives any investment advice herein or as to the Bonds generally.

## COMMUNICATIONS TO TRUSTEE

If you wish to contact the Trustee regarding the Bonds or the contents of this Notice, we ask that you do so in writing directed to:

UMB Bank, N.A., as Trustee
Corporate Trust Division
2401 Grand Blvd.
Kansas City, MO 64108-2551
Attn:  Anthony Hawkins
Vice President

Or you may contact either William Kannel or Daniel Bleck.

Very truly yours,


UMB Bank, N.A.,
As Trustee

UMB  01104

Dated: May 1, 2006

**NOTICE REGARDING MOTION BY DELTA AIRLINES, INC.
TO REJECT FACILITIES LEASE AND RELATED DOCUMENTS**

Notice #6

**NOTICE TO THE HOLDERS OF THE $419,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES A (DELTA AIR LINES, INC. PROJECT) AND THE $19,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES B (DELTA AIR LINES, INC. PROJECT)**

| Series | Interest Rate | Maturity Date | CUSIP No. [1] |
|--------|---------------|---------------|------------|
| Series A | 7.500% | 2/1/2012 | 491026JF8 |
| Series A | 7.500% | 2/1/2020 | 491026JG6 |
| Series A | 7.125% | 2/1/2021 | 491026JK7 |
| Series A | 6.125% | 2/1/2022 | 491026JH4 |
| Series B | 7.250% | 2/1/2022 | 491026JJ0 |

**(COLLECTIVELY, THE "BONDS")**

**NOTE: THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE REGISTERED AND BENEFICIAL OWNERS OF THE BONDS. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS, AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO BENEFICIAL OWNERS OF THE BONDS IN A TIMELY MANNER.**

Dear Bondholder:

This notice (the "Notice") is given to you by UMB Bank, N.A., as successor trustee to Star Bank, N.A. n/k/a U.S. Bank National Association (the "Trustee") under the Trust Indenture dated as of February 1, 1992 (the "Indenture") between the Kenton County Airport Board (the "Issuer") and the Trustee in your capacity as a holder of the Bonds (the "Bondholders").

This Notice and other information will be posted on www.kentoncountybondholders.com, a website established by the Trustee for the purpose of making publicly available certain information which may be of interest to Bondholders. Delta Air Lines, Inc. ("Delta") and certain of its affiliated companies have also provided information for dissemination and have posted certain financial and other information pertaining to their bankruptcy filing (as referenced below) on their website, www.deltadocket.com.

**CHAPTER 11 FILING OF DELTA AIR LINES, INC., ET. AL.**

As the Trustee previously notified you, on September 14, 2005, Delta and certain of its affiliates filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Proceedings"). The bankruptcy petition and other related documents filed in these cases are available on the Court's website www.nysb.uscourts.gov or at the Clerk's office at the following address:

---

[1] The Trustee makes no representation as to the accuracy of the CUSIP numbers.

Clerk of United States Bankruptcy Court
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

Additionally, certain documents are available at www.deltadocket.com.

## DELTA AIR LINES, INC. MOVES TO REJECT FACILITIES LEASE AND RELATED AGREEMENTS

As the Trustee has notified you in previous notices, Delta is a party to a certain Lease Agreement with the Kenton County Airport Board ("KCAB"), dated as of February 1, 1992 that provides, inter alia, that throughout its term, Delta shall pay, or cause to be paid, rental amounts equal to those amounts due under the Bonds (the "Facilities Lease").

As the Trustee has also indicated in previous notices, Delta publicly announced in December 2005 that it was considering a rejection of the Facilities Lease and, in accordance with a Stipulation approved in the Bankruptcy Proceedings on January 6, 2006, KCAB, the Trustee, and certain bondholders negotiated with respect to amending the terms of the Facilities Lease and Delta's continued occupancy of some or all of the facilities included under the Facilities Lease (the "Facilities").

As discussed in previous notices, certain Bondholders have joined an unofficial Bondholders' committee (the "Bondholders' Committee"). Bondholders participating in such a group could be restricted in their ability to trade their Bonds. In addition, Delta has required that Bondholders who receive information from Delta enter into a confidentiality agreement which may not only restrict the ability of such Bondholders to trade the Bonds, but also the other securities of Delta.

On April 28, 2006, Delta filed a motion in the Bankruptcy Proceedings to reject the Facilities Lease (the "Rejection Motion"). The Rejection Motion also seeks to reject certain other agreements that relate to the Bonds to the extent they are "executory contracts" or "unexpired leases" (as those terms are used in the Bankruptcy Code) including, inter alia, ground leases which relate to the land where the Facilities are located, and a Guaranty Agreement pursuant to which Delta unconditionally guaranteed the full and prompt payment of the principal, premium, and interest on the Bonds. If the Rejection Motion is allowed, the Facilities Lease and other agreements described in the Rejection Motion will be rejected effective January 19, 2006. A copy of the Rejection Motion is attached to this Notice.

In a press release dated April 28, 2006, Edward H. Bastian, Delta's executive vice president, chief financial officer and head of the company's in court restructuring efforts stated, "We valued our business relationship with KCAB and plan to work closely with KCAB going forward. Our goal is to negotiate new agreements that are cost-effective, provide flexibility and support our transformation plan objectives for the use of these facilities."

The Rejection Motion is scheduled for a hearing in the Bankruptcy Proceedings on June 1, 2006 at 1:30 p.m. eastern time, with any objections due May 25, 2006 at 4:00 p.m. eastern time. The Bondholders' Committee and the Trustee are currently evaluating the Rejection Motion, and will issue a further notice or notices to holders regarding the Rejection Motion as appropriate.

UMB 01106

**This Notice should not be considered to be a substitute for a careful and thorough reading of the Rejection Motion.** Any questions concerning the Rejection Motion can be directed to counsel to the Trustee, Mr. Kannel or Mr. Bleck (each of their contact information is listed below).

## RETENTION OF COUNSEL

The Trustee has retained the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., and specifically Mr. William W. Kannel and Mr. Daniel S. Bleck of that firm, to represent it in connection with the Bankruptcy Proceedings. The address of Mr. Kannel and Mr. Bleck is Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111. Mr. Kannel's telephone number is (617) 348-1665; E-mail: wkannel@mintz.com. Mr. Bleck's telephone number is (617) 348-4498; E-mail: dbleck@mintz.com.

## FUTURE EVENTS

The Trustee will periodically communicate with Bondholders through written notice of material events of a public nature which the Trustee has knowledge. To facilitate such communications, any beneficial holder who wishes to receive such written notices directly may send its notice address to the Trustee, including its claimed holdings for the Bonds held (with CUSIP numbers, DTC participant name and denominations, if applicable), a contact person, address, telephone number and e-mail address.

Please note that the Trustee, may conclude that a specific response to particular inquiries from individual Bondholders is not consistent with equal and full dissemination of information to all Bondholders. Bondholders should not rely on the Trustee, or on counsel or other advisors retained by the Trustee, as their sole source of information. The Trustee makes no recommendations nor gives any investment advice herein or as to the Bonds generally.

## COMMUNICATIONS TO TRUSTEE

If you wish to contact the Trustee regarding the Bonds or the contents of this Notice, we ask that you do so in writing directed to:

UMB Bank, N.A., as Trustee
Corporate Trust Division
2401 Grand Blvd.
Kansas City, MO 64108-2551
Attn: Anthony Hawkins
Vice President

Or you may contact either William Kannel or Daniel Bleck.

Very truly yours,

UMB Bank, N.A.,
As Trustee

3

UMB 01107

Objection Deadline: May 25, 2006 at 4:00 p.m. (prevailing Eastern Time)
Hearing Date (if necessary): June 1, 2006 at 1:30 p.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Fax: (212) 450-6539
Sharon Katz (SK 4911)
Marshall S. Huebner (MH 7800)
James I. McClammy (JM 5592)

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x

In re:                                                        :

                                                                  :    **Chapter 11 Case No.**

                                                                  :

**DELTA AIR LINES, INC., et al.,**            :    **05-17923 (ASH)**

                                                                  :

                                                                  :    **(Jointly Administered)**

Debtors.                                                   :

                                                                  :

                                                                  :

------------------------------------- x

### DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND AUTHORIZING THE ABANDONMENT OF CERTAIN PERSONAL PROPERTY

Delta Air Lines, Inc. ("**Delta**") and those of its subsidiaries that are debtors and

debtors in possession in these proceedings (collectively, the "**Debtors**")[1] respectfully

represent:

---

[1] The Debtors are the following entities: ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services,

UMB 01108

### Background and Jurisdiction

1.      On September 14, 2005 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered.

2.      The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Bankruptcy Court. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

3.      By this motion (the "**Motion**"), the Debtors seek approval of (i) pursuant to section 365(a) of the Bankruptcy Code and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the rejection of certain executory contracts and unexpired leases relating to facilities at Cincinnati/Northern Kentucky International Airport (the "**Airport**") as set forth on Exhibit A attached hereto, including, as defined below, the Facilities Agreement, the Associated Agreements, the Subordinate Agreements and the Space Use Arrangements (deemed rejected by operation of law), and all amendments, supplements, other modifications and side letters thereto (collectively, the "**Rejected Agreements**"), and (ii) pursuant to section 554(a) of the Bankruptcy Code,

---

LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

UMB 01109

the abandonment of certain personal property as set forth on Exhibit A attached hereto (the "**Expendable Property**").

4.    In addition, the Debtors request that this Court order that the holder of any claim for damages arising from the rejection of any Rejected Agreement or the abandonment of any Expendable Property be required to file a proof of claim on account of such claim against the Debtors in accordance with any order pursuant to Bankruptcy Rule 3003(c) establishing a deadline by which pre-petition general unsecured claims must be filed, and that absent a timely filing, such claim irrevocably be barred.

5.    The Debtors further request that the rejection and abandonment with respect to the Facilities Agreement (and certain of the Associated Agreements, Subordinate Agreements and Space Use Arrangements, as specified in Exhibit A) take effect as of January 19, 2006, as provided for in the stipulation among Delta, the Kenton County Airport Board ("**KCAB**") and UMB Bank, N.A. (the "**Bond Trustee**"), dated December 30, 2005, entered by the Court on January 17, 2006, and attached hereto as Exhibit B (the "**Stipulation**").[2] If an objection is timely filed, a hearing will be held to consider only the rejection of the Rejected Agreements or abandonment of Expendable Property subject to such timely-filed objection.[3]

6.    The Debtors further request that, consistent with the limitations imposed by section 362 of the Bankruptcy Code and any other applicable law, if any Debtor has

---

[2] As discussed below, on February 17, 2006, the Stipulation's Negotiation Period was extended to May 1, 2006. A copy of this extension agreement is attached hereto as Exhibit C.

[3] Though no hearing may be required for the rejection of certain Rejected Agreements or abandonment of certain Expendable Property for which there is no timely-filed objection, Delta intends to have the rejection of all Rejected Agreements and abandonment of all Expendable Property entered on the same date. At this time, Delta does not seek rejection of certain Rejected Agreements or abandonment of certain Expendable Property unless all Rejected Agreements are rejected.

3

UMB 01110

deposited monies as a security deposit or pursuant to another similar arrangement, or if any Debtor is owed any amount by another party to an agreement, such party shall not be permitted to set off, recoup, deduct, abrogate, withhold, or otherwise use the monies from such deposit or other similar arrangement, or from any other amount owed to any Debtor, whether under a Rejected Agreement or any other agreement, without prior order of the Court.

### Basis for Relief

(a)    *The Rejection*

7.    Delta and KCAB are parties to a Lease Agreement dated February 1, 1992 (the "**Facilities Agreement**"), [4] pursuant to which Delta occupies certain facilities at the Airport, including, principally, Terminal 3, Concourse B and the automated guideway transit. The Facilities Agreement requires Delta to make payments equal to the debt service on bonds (the "**Bonds**") issued in the aggregate principal amount of $438,000,000 (of which approximately $413,570,000 remains outstanding), the proceeds of which were used to finance improvements to certain facilities at the Airport. The Bonds were issued by KCAB, concurrently with entry into the Facilities Agreement. In connection with the issuance of the Bonds, KCAB and Star Bank, N.A., predecessor-in-interest to the Bond Trustee, entered into a Trust Indenture (the "**Indenture**") dated February 1, 1992, pursuant to which KCAB assigned to the Bond Trustee, as collateral for the Bonds, certain of its rights under the Facilities Agreement, including the right to receive facility rental payments made by Delta under the Facilities Agreement. Delta, in the exercise of

---

[4] In connection with the rejection of the Facilities Agreement, Delta is also rejecting certain Associated Agreements, to the extent they are subject to rejection, including (i) a related Tax Certificate, dated February 27, 1992, and (ii) a related Guaranty Agreement, dated February 1, 1992.

4

UMB 01111

its business judgment, has decided to reject the Facilities Agreement. Requiring Delta to continue to make the payments required by the Facilities Agreement would impose a severe drain on Delta's cash flow and would impair Delta's restructuring efforts. The effective rate that Delta is paying for the space covered by the Facilities Agreement is substantially higher than the rates being paid to KCAB by other airlines occupying other facilities at the Airport and also higher than the current fair market rental rate for the space.[5] Also, as the discussion below of the "Vacated Premises" and "Non-Vacated Premises" illustrates, Delta has already determined that its current operations do not warrant retaining occupancy of all the space covered by the Facilities Agreement.[6] Finally, the Facilities Agreement runs through 2015. The airline industry is undergoing and will continue to undergo significant change, and Delta's prospects for success upon emergence from chapter 11 require flexibility to adjust its facilities needs at the Airport sooner than nine years from now.

---

[5] For purposes of this Motion, the Debtors are treating the Facilities Agreement as a "true lease" obligation within the meaning of 11 U.S.C. § 365, and not a financing arrangement. In doing so, however, Delta expressly reserves all of its rights, claims, and defenses under all relevant agreements and applicable law on all issues, including, but not limited to, whether the obligations under this lease or any other agreement captioned as a lease to which any Debtor is a party are true lease obligations or pre-petition financing obligations. This Motion shall not constitute a waiver or be invoked as an admission or otherwise affect, limit, or impair rights, claims and interests of any Debtor or its bankruptcy estate with respect to such issue. Thus, Delta rejects the Facilities Agreement to the extent it is an executory contract or unexpired lease without waiving its right to argue that the obligation imposed by the Facilities Agreement to make payments designated for the debt service on the outstanding Bonds is not a "true lease" obligation. *See, e.g., Int'l Trade Admin. v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 748 (2d Cir. 1991) (stating that the controlling inquiry is whether "the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship" in a particular agreement).

[6] Delta also notes that the extent of its flight operations at the Airport (and the consequential need for space) are significantly linked to Comair's operations there. Comair's own cost restructuring effort may have a substantial effect on the size of its business, which in turn will influence the level of operations and the facilities requirements for both Comair and Delta at the Airport, and is another reason why Delta needs to have flexibility to adjust its facilities needs at the Airport.

5

UMB 01112

8.      In addition to the Facilities Agreement, Delta and KCAB are parties to certain other agreements governing Delta's use and occupancy of certain facilities at the Airport. These include, but are not limited to: (i) a Terminal Building Complex Ground Lease dated February 1, 1992; (ii) a Parking Lot Facility Ground Lease dated February 1, 1992; (iii) a Bulk Storage and Dispensing Ground Lease Agreement dated December 21, 1970; (iv) a Maintenance and Operations Services Agreement dated February 1, 1992; and (v) a Sublease Agreement for the Delta Employee Parking Lot dated November 1, 2002, in each case together with all amendments, supplements, other modifications and side letters thereto (the "**Associated Agreements**").[7]

9.      Each Associated Agreement is linked to the Facilities Agreement by, among other things, provisions that would obligate Delta to make the payments due under the Facilities Agreement or certain cross-default or cross-termination provisions that purport to trigger or permit termination of such Associated Agreement in the event that Delta rejects the Facilities Agreement.[8]  As a result, Delta, in the exercise of its business judgment, has chosen to reject the Associated Agreements as discussed below.

10.     In addition to the Facilities Agreement and the Associated Agreements, Delta is party to other agreements which are related or subordinate to the Facilities

---

[7] As indicated, the Facilities Agreement and the Associated Agreements relate only to Delta's use and occupancy of certain facilities at the Airport. Delta's use and occupancy of other Airport facilities are governed by agreements that are not affected by this Motion. Another Debtor, Delta's wholly-owned regional carrier Comair, Inc. ("**Comair**"), also leases facilities at the Airport in connection with its flight services there. No Comair leases are affected by this Motion.

[8] These specific provisions include: (i) Sections IV.C and V.C of the Terminal Building Complex Ground Lease; (ii) Sections IV.C and V.C of the Parking Lot Facility Ground Lease; (iii) Article III, last paragraph, of the Third Supplement to the Bulk Storage and Dispensing Ground Lease Agreement; (iv) Section IV.C of the Maintenance and Operations Services Agreement; (v) Section 2 of the Sublease Agreement for the Delta Employee Parking Lot; and (vi) Article IV, last paragraph, of the Third Supplement to the Bulk Storage and Dispensing Ground Lease Agreement.

UMB 01113

Agreement or one or more of the Associated Agreements and which Delta, in the exercise of its business judgment, has chosen to reject (the "**Subordinate Agreements**"). The Subordinate Agreements, as more particularly described in Exhibit A, include an occupancy of space license with U.S. Cargo Sales Joint Venture, LLC and a throughput agreement with DHL Airways, Inc.

        11.    Delta also has certain space use arrangements with Northwest Airlines, Inc. and Continental Airlines, Inc. (the "**Space Use Arrangements**") under which those airlines occupy or use certain Delta facilities covered by the Facilities Agreement. Each Space Use Arrangement was the subject of negotiations between Delta and the relevant counterparty, but was never reduced to a writing signed by all parties. The Space Use Arrangements relate to space occupied by Delta both under the Facilities Agreement and under other agreements that are not the subject of, nor affected by, this Motion. To the extent that the Space Use Arrangements relate to space occupied by Delta pursuant to the Facilities Agreement, the rejection of the Facilities Agreement will result in the deemed rejection of the Space Use Arrangements. *See In re Child World*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) ("the sublease depends upon the continuing viability of the prime lease, and the rejection of the prime lease also results in the rejection of the sublease"); *In re J.T. Moran Financial Corp.*, 124 B.R. 924, 925 (Bankr. S.D.N.Y. 1991). To the extent the Space Use Arrangements may not be deemed rejected in their entirety as a result of the rejection of the Facilities Agreement, Delta has chosen, in the exercise of its business judgment, to reject the Space Use Arrangements.

(b)    *The Stipulation*

UMB 01114

12.    In late 2005, Delta informed KCAB and the Bond Trustee that Delta expected to reject the Facilities Agreement and certain other executory agreements and unexpired leases. To give the parties additional time to negotiate issues associated with the facilities and Delta's potential rejection, Delta, KCAB and the Bond Trustee agreed to the Stipulation on December 30, 2005.

13.    Under the Stipulation, the parties agreed to a sixty-day period (the "**Negotiation Period**") "for the parties to attempt to reach a consensual agreement on issues related to the Facilities Agreement and Delta's potential rejection thereof." Stip. at 2-3. The parties also agreed that any motion filed prior to the expiration of the Negotiation Period to approve the rejection of the Facilities Agreement and various other agreements would, if and when approved by the Court, have an effective date of January 19, 2006. On February 17, 2006, the parties agreed to extend the Negotiation Period from March 1, 2006 to May 1, 2006 in order to provide the parties additional time to attempt to negotiate a consensual resolution.

14.    Delta has notified KCAB and the Bond Trustee "that it is currently prepared to continue in most of the [f]acilities at the Airport after rejection and to make payments consistent with applicable law." Stip. at 2.

15.    Delta has engaged in negotiations with KCAB and the Bond Trustee and certain Bondholders holding more than fifty (50) percent of the outstanding principal amount of the Bonds. Delta's representatives met with representatives of KCAB on November 22, December 2 and December 20, 2005 and March 9 and 28, 2006. Representatives of the Bond Trustee were present at the December 20, 2005 meeting, and Representatives of the Bond Trustee and certain Bondholders were present at the March

UMB  01115

2006 meetings. To date, the parties have been unable to reach an agreement. The Debtors have determined that filing this motion is a necessary step towards their realization of reduced facility costs and increased flexibility at the Airport.

(c)    *Vacated Premises*

16.    The Debtors have determined that a portion of the terminal facilities occupied by Delta under the Facilities Agreement (including without limitation certain ticketing space, back office space, and operations space) is not required for the Debtors' current operations at the Airport and will therefore be vacated (the "**Vacated Premises**"). Delta is willing to enter into a new agreement with KCAB concerning the reduced space within the terminal facilities formerly covered by the Facilities Agreement that Delta will continue to occupy (the "**Non-Vacated Premises**"). In addition, Delta does not intend to vacate any premises covered by any of the Associated Agreements (with the exception of the facilities covered by the Parking Lot Facility Ground Lease and the Sublease Agreement for the Delta Employee Parking Lot). With respect to the Non-Vacated Premises, Delta expects to pay a fair market rate. Delta and KCAB have exchanged drawings identifying (i) the Vacated Premises, and (ii) the Non-Vacated Premises.[9] Delta expects to be able to reach agreement with KCAB with respect to drawings depicting the Vacated Premises prior to approval of this Motion. Before filing this Motion, Delta representatives discussed with representatives of KCAB, the Bond Trustee and certain Bondholders Delta's plans to reject the Facilities Agreement and various Associated Agreements and to vacate the Vacated Premises.

---

[9] The drawings also identify concession space. Although such space is covered by the Facilities Agreement, Delta does not occupy such space. Delta does not intend to occupy or otherwise use any of the concession space after rejection of the Facilities Agreement.

UMB  01116

(d)  *Rejection Is Supported By the Debtors' Business Judgment and Should Be Approved By the Court*

17.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). The Bankruptcy Code allows a debtor in possession to avail itself of the rejection remedy so that a debtor may relieve itself of burdensome obligations. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993). "[I]n reviewing such a decision the bankruptcy court merely 'reviews the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate.'" *In re Mark Levon Helm*, 2006 Bankr. LEXIS 19, *27 (Bankr. S.D.N.Y. Jan. 9, 2006) (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095 at 1099).

18.    Courts generally defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and, upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts); *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (same); *In re Minges*, 602 F.2d 38, 42-43 (2d Cir. 1979) (same); *In re Balco Equities Ltd.*, 323 B.R. 85, 98-99 (Bankr. S.D.N.Y. 2005) (same); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (approving rejection of license by debtor because such rejection satisfied the "business

10

judgment" test); *In re Child World, Inc.*, 142 B.R. at 89 (stating that a debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment").

19.    Delta has examined its putative obligations under the Facilities Agreement and the Associated Agreements and has determined, in the exercise of its business judgment, that: (a) payments under the Facilities Agreement with respect to the $413,570,000 in Bonds create a severe drain on Delta's cash flow, and the obligation to continue to make such payments is a significant obstacle to Delta's restructuring; (b) payments required under the Facilities Agreement substantially exceed the fair market rate for the space covered by the Facilities Agreement and substantially exceed rates paid to KCAB by other airlines occupying other facilities at the Airport; and (c) the lengthy term of the Facilities Agreement and certain of the Associated Agreements prevents Delta from flexibly altering the size of its footprint at the Airport. The Debtors have therefore determined in the exercise of their sound business judgment that rejection is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

20.    Delta will work closely with KCAB with respect to the turnover of the Vacated Premises.

21.    In light of the foregoing, the Debtors respectfully ask the Court to approve the rejection of the Rejected Agreements under section 365(a) of the Bankruptcy Code in the manner requested herein and in Exhibit A as a sound exercise of their business judgment.

(e)    *Expendable Property Is of Inconsequential Value and of No Benefit to the Debtors and Abandonment Should Be Approved By the Court*

11

UMB 01118

22.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtors seek approval of the abandonment of the Expendable Property, but only insofar as such Expendable Property is located in the Vacated Premises. The Expendable Property is of inconsequential value and of no benefit to the Debtors' estates.

23.    Section 554(a) of the Bankruptcy Code provides in relevant part that a debtor in possession "[a]fter a notice and hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon property is, except for certain exceptions inapplicable in the present case, unfettered. *In re Midlantic Nat'l Bank*, 474 U.S. 494, 502 (1986).

24.    By the time the Court enters the attached order, the Debtors will have vacated the Vacated Premises and will have taken from the Vacated Premises all personal property of value or use to the Debtors.

25.    The Debtors have determined that the Expendable Property at the Vacated Premises, if any, primarily consists of fixtures, furnishings, equipment, and tenant improvements.  The Expendable Property will be abandoned to KCAB.

26.    Rule 6007-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") requires that a notice of a proposed abandonment describe the property to be abandoned, state the reason for the proposed abandonment, and identify the entity to whom the property is proposed to be abandoned. The Debtors submit that the description and discussion herein of the Expendable Property, coupled with the information on Exhibit A, satisfy the foregoing requirements.

**Notice**

12

UMB 01119

27.    No trustee or examiner has been appointed in these chapter 11 cases. Consistent with the procedures described in the Court's Order Approving Notice, Case Management and Administrative Procedures entered October 6, 2005 (the **"Case Management Order"**), the Debtors have served notice of this Motion on (i) the Core Parties (as that term is defined in the Case Management Order), (ii) the Non-ECF Service List (as the term is defined in the Case Management Order); (iii) each counterparty to each of the Rejected Agreements; and (iv) the Bond Trustee.

28.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[The remainder of this page is intentionally blank.]*

13

UMB 01120

WHEREFORE the Debtors respectfully request the Court grant the

Debtors the relief requested herein and such other and further relief as is just and proper.

Dated:    April 28, 2006
          New York, New York


                          By:    /s/ Sharon Katz
                                 _____
                                 Sharon Katz (SK 4911)
                                 Marshall S. Huebner (MH 7800)
                                 James I. McClammy (JM 5592)

                          DAVIS POLK & WARDWELL
                          450 Lexington Avenue
                          New York, New York 10017
                          Telephone: (212) 450-4000
                          Facsimile: (212) 450-6539


14

UMB 01121

EXHIBIT A

| Contract Name | Debtor's Party to the Lease or Executory Agreement to be Rejected | Counterparties to the Lease or Executory Contract to be Rejected | Lease or Executory Contract Number | Date of Lease or Executory Contract | Location of Real Property that is the Subject of the Lease or Executory Contract to be Rejected | Description and Location of Expendable Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Lease Agreement by and between Kenton County Airport Board and Delta Air Lines, Inc. (Facilities Agreement) | Delta Air Lines, Inc. | Kenton County Airport Board | CVG 39118 | February 1, 1992 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky. Airport facilities and improvements covered by the Lease Agreement that were acquired and constructed by application of the proceeds of the 1992 Series A and B Bonds | Any furniture, furnishings, equipment, fixtures and tenant improvements remaining at the Vacated Premises (if any). | January 19, 2006 |

---

[1] Expendable Property will be abandoned to KCAB.

| Contract Name | Debtor Party to the Lease or Inventory Contracts to be Rejected | Counterparts to the Lease or Executory Contracts to be Rejected | Lease or Executory Contract Number | Date of Lease or Executory Contract | Location of Real Property that is the Subject of the Lease or Executory Contract to be Rejected | Description of Personal Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Company's Tax Certificate and Compliance Agreement (Associated Agreement)[2] | Delta Air Lines, Inc. | n/a | n/a | February 27, 1992 | n/a | n/a | January 19, 2006 |
| Guaranty Agreement (Associated Agreement)[3] | Delta Air Lines, Inc. | UMB Bank, N.A. (successor to Star Bank, N.A.) | n/a | February 1, 1992 | n/a | None | January 19, 2006 |

[2] Delta rejects this agreement to the extent that it is an executory contract or unexpired lease.

[3] Delta rejects this agreement to the extent that it is an executory contract or unexpired lease.

2

UMB  01123

| Contract Name | Debtors Party to the Leases or Executory Contracts to be Rejected | Counterparties to the Leases or Executory Contracts to be Rejected | Lessee or Executory Contract Number | Date of the Lease or Executory Contract | Location of Real Property That is the Subject of the Lease or Executory Contract to be Rejected | Description and Location of Leased or Expendable Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Ground Lease between Kenton County Airport Board and Delta Air Lines, Inc. for Terminal Building Complex (Associated Agreement) | Delta Air Lines, Inc. | Kenton County Airport Board | CVG 39119 | February 1, 1992 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky  Three parcels of land located at the Airport, designated as Concourse E, Hub D and New Terminal D | None | January 19, 2006 |
| Ground Lease between Kenton County Airport Board and Delta Air Lines, Inc. for Parking Lot Facility (Associated Agreement) | Delta Air Lines, Inc. | Kenton County Airport Board | CVG 39120 | February 1, 1992 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky  A parcel of land located at the Airport containing 1,405,823 square feet | None | January 19, 2006 |

3

UMB 01124

Case 1:07-cv-03968-JGK   Document 17-6   Filed 06/22/2007   Page 24 of 40

| Contract Name | Debtor Party to the Lease or Inventory Contracts to be Rejected | Counterparty to the Lease or Inventory Contracts to be Rejected | Executory Contract Number | Date of Lease or Executory Contract | Location of Real Property that is the Subject of Lease or Executory Contract to be Rejected | Description and Location of the Executory Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Lease Agreement between Kenton County Airport Board and Delta Air Lines, Inc. for Bulk Storage and Dispensing Facilities (Associated Agreement) | Delta Air Lines, Inc. (as successor in interest to Epsilon Trading, Inc., which was successor in interest to Standard Oil Company) | Kenton County Airport Board | CVG 39121 | December 21, 1970 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky  A fuel bulk storage and dispensing facility at the Airport | None | January 19, 2006 |
| Maintenance and Operations Services Agreement between Kenton County Airport Board and Delta Air Lines, Inc. (Associated Agreement) | Delta Air Lines, Inc. | Kenton County Airport Board | CVG 38566 | February 1, 1992 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky | None | Upon entry of Court's order approving rejection |

4

UMB 01125

| Contract Name | Debtor Party to the Lease or Executory Contract to be Rejected | Counterparty to the Lease or Executory Contract to be Rejected | Lease or Executory Contract Number | Date of Lease or Executory Contract | Location of Real Property that is the Subject of the Lease or Executory Contract to be Rejected | Description and Location of Transferable Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Sublease Agreement for Delta Employee Parking Lot (Associated Agreement) | Delta Air Lines, Inc. | Kenton County Airport Board | CVG 77726 | November 1, 2002 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky<br><br>A parcel of land located at the Airport containing 1,405,823 square feet, currently used as an employee parking lot | None | January 19, 2006 |
| Space Use Arrangement with Northwest Airlines | Delta Air Lines, Inc. | Northwest Airlines, Inc. | CVG 79934 (oral agreement) | Northwest Airlines began occupying the premises on 11/1/2003 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky | None | January 19, 2006 |
| Space Use Arrangement with Continental Airlines | Delta Air Lines, Inc. | Continental Airlines, Inc. | CVG 80773 (written agreement signed by Continental, but not Delta) | Continental Airlines began occupying the premises on 4/1/2004 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky | None | January 19, 2006 |

5

UMB 01126

| Contract Name | Debtors Party to the Lease or Executory Contracts to be Rejected | Counterparts to the Lease or Executory Contracts to be Rejected | Lease or Executory Contract Number | Date of Lease or Executory Contract | Location of Real Property that is the Subject of the Lease or Executory Contract to be Rejected | Description and Location of Personal Property | Rejection Effective Date |
|---|---|---|---|---|---|---|---|
| Occupancy of Space License (Subordinate Agreement) | Delta Air Lines, Inc. | U.S. Cargo Sales Joint Venture, LLC | CVG 82078 | January 1, 2002 | East Wall Cube, 2nd Floor Admin. Offices, 3306 Kenton Road, Hebron KY | None | January 19, 2006 |
| Cincinnati Throughput Agreement (Subordinate Agreement) | Delta Air Lines, Inc. | DHL Airways Inc. d.b.a. DHL Worldwide Express | CVG 78265 and CVG 81941 | August 1, 1998 | Cincinnati/Northern Kentucky International Airport (CVG) Boone County, Kentucky<br><br>A fuel bulk storage and dispensing facility at the Airport | None | Upon entry of order approving rejection |

6

UMB 01127

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :
**In re:**                                     :
                                               :
                                               :  **Chapter 11 Case No.**
                                               :
**DELTA AIR LINES, INC., et al.,**             :  **05-17923 (ASH)**
                                               :
                                               :  **(Jointly Administered)**
**Debtors.**                                   :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER APPROVING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND AUTHORIZING THE ABANDONMENT OF CERTAIN PERSONAL PROPERTY

Upon the motion dated April 28, 2006 (the "**Motion**") of Delta Air Lines,

Inc. ("**Delta**") and those of its subsidiaries that are debtors and debtors in possession

(collectively, the "**Debtors**"),[1] pursuant to sections 365(a) and 554(a) of the Bankruptcy

Code and rule 6006 of the Bankruptcy Rules, for an order approving (i) the rejection of

certain executory contracts and unexpired leases as set forth on Exhibit A attached to the

Motion, and (ii) the abandonment of certain of the Debtors' personal property as set forth

on Exhibit A attached to the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing

Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.); and

---

[1] The Debtors are the following entities: ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

consideration of the Motion and the requested relief being a core proceeding the

Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided pursuant to the Court's Order Approving

Notice, Case Management and Administrative Procedures entered October 6, 2005; and it

appearing that no other or further notice need be provided; and the relief requested in the

Motion being in the best interests of the Debtors and their estates and creditors; and the

parties having failed to reach a negotiated resolution under the stipulation among Delta,

the Kenton County Airport Board and UMB Bank, N.A., entered by the Court on January

17, 2006; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and upon all of the proceedings

had before the Court and after due deliberation and sufficient cause appearing therefore,

it is

       ORDERED that the relief requested in the Motion is hereby granted; and it

is further

       ORDERED that the rejection of each executory contract and unexpired

lease listed on Exhibit A attached hereto (with the exception of Space Use Arrangement

with Northwest Airlines[2] and the Space Use Arrangement with Continental Airlines (the

"**Rejected Space Use Arrangements**")), and all amendments, supplements, other

modifications and side letters thereto (together, the "**Rejected Agreements**"), is

authorized and approved pursuant to section 365(a) of the Bankruptcy Code and the

---

     [2] Capitalized terms used in this Order shall have the meanings assigned to them in the Motion and Exhibit A attached thereto, unless otherwise defined herein.

2

UMB 01129

Debtors are under no obligation to comply with the Rejected Agreements. Each Rejected Agreement is hereby rejected by the Debtor party thereto effective as of the effective rejection date therefor noted on Exhibit A; and it is further

ORDERED that the Rejected Space Use Arrangements are deemed rejected, by operation of law, upon the rejection of the Facilities Agreement. To the extent the Rejected Space Use Arrangements may not be deemed rejected by operation of law in light of the rejection of the Facilities Agreement, the rejection of the Rejected Space Use Arrangements is authorized and approved pursuant to section 365(a) of the Bankruptcy Code. The Debtors are under no obligation to comply with the Rejected Space Use Arrangements. Each Rejected Space Use Arrangement is hereby deemed rejected and/or is hereby rejected by the Debtor party thereto effective as of the effective rejection date therefor noted on Exhibit A; and it is further

ORDERED that the abandonment of the expendable property listed on Exhibit A hereto (the "**Expendable Property**") is authorized pursuant to section 554 of the Bankruptcy Code. All Expendable Property is hereby abandoned by the Debtors effective as of the effective date of rejection of the associated Rejected Agreement; and it is further

ORDERED that the holder of any claim for damages arising from the rejection of the Rejected Agreements or the abandonment of the Expendable Property is required to timely file a proof of claim on account of such claim against the Debtors in accordance with any order pursuant to Bankruptcy Rule 3003(c) establishing a deadline by which pre-petition general unsecured claims must be filed. Any claim not so filed shall be irrevocably barred; and it is further

3

ORDERED that if any Debtor has deposited monies as a security deposit or pursuant to another similar arrangement, or if any Debtor is owed any amount by another party to an agreement, such party shall not be permitted to set off, recoup, deduct, abrogate, withhold, or otherwise use the monies from such deposit or other similar arrangement, or from any other amount owed to any Debtor, whether under a Rejected Agreement or any other agreement, without prior order of this Court.

ORDERED that the description of Expendable Property in the Motion, coupled with the information provided in Exhibit A attached thereto, satisfy Local Rule 6007-1.

Dated: _____, 2006
       White Plains, New York

_____
UNITED STATES BANKRUPTCY JUDGE

4

UMB 01131

**EXHIBIT B**

UMB 01132

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                              :

In re:                           :

                              :        **Chapter 11 Case No.**

**DELTA AIR LINES, INC., et al.,**    :

                              :        **05-17923 (PCB)**

    **Debtors.**                    :

                              :        **(Jointly Administered)**

---------------------------------------------------------x

**STIPULATION**

      Delta Air Lines, Inc. ("Delta") and the other debtors and debtors-in-possession in these jointly administered cases (the "Debtors"), Kenton County Airport Board ("KCAB") and UMB Bank, N.A. as successor indenture trustee, ("UMB"), hereby stipulate and agree, as follows:

**A. Background.**

      1.      Delta is a party to that certain Facilities Lease Agreement dated as of February 1, 1992 (the "Facilities Lease"). The Facilities Lease relates to certain facilities (the "Facilities") at the Cincinnati-Northern Kentucky International Airport (the "Airport"). KCAB owns the Airport, and has assigned certain of its rights under the Facilities Lease to UMB. UMB is the successor trustee for the $419,000,000 Kenton County Airport Board, Special Facility Revenue Bonds, 1992 Series A (Delta Air Lines, Inc. Project) and the $19,000,000 Kenton County Airport Board, Special Facilities Revenue Bonds, 1992 Series B (Delta Air Lines, Inc. Project) (the "Bonds"). Under the Facilities Lease, Delta pays directly to UMB certain amounts (the "Facility Rentals").

      2.      On September 14, 2005 (the "Petition Date") the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

UMB 01133

3.      Delta has informed KCAB and UMB that it is considering a rejection of the Facilities Lease and various other agreements.  Delta has also indicated that it is currently prepared to continue in most of the Facilities at the Airport after rejection and to make payments consistent with applicable law.

4.      Given the potential negotiations surrounding the issues associated with the potential rejection of the Facilities Lease, the parties have determined that it is in their respective best interests to enter into this Stipulation to allow the parties an opportunity to explore a potential consensual resolution of this matter.

5.      As set forth more fully below, this Stipulation contemplates, inter alia, payment of the pro-rated amount of Facility Rentals under the Facilities Lease for the post-petition period, a sixty (60) day period for the parties to attempt to reach a consensual agreement on issues related to the Facilities Lease and Delta's potential rejection thereof.

**B. Stipulation.**

6.      Subject to the entry of an order by this Court approving this Stipulation, the Debtors, UMB, and KCAB agree as follows:

(a)      For a period of 60 days commencing December 30, 2005 and ending on March 1, 2006 (the "Negotiation Period"), the parties shall attempt to negotiate a consensual agreement with respect to Delta's occupancy of some or all of the Facilities after any rejection of the Facilities Lease.  The parties may extend this Negotiation Period by written agreement of the parties without further order of the Court at any time prior to March 1, 2006.

(b)      The parties agree that, in light of Delta's bankruptcy filing, it is proper for Delta to and Delta will tender and pay to UMB an amount equal to $11,088,352 on February 1, 2006 (the "February 1 Facility Rental Payment"), which represents 76.11% of the amount that could otherwise have been payable to UMB under Section 4.03(a) of the Facilities Lease on February 1, 2006 for the period from August 1, 2005 through January 31, 2006 (i.e., the pro-rated portion of the amount payable to UMB for the post-petition period from September 14, 2005 through January 31, 2006).  The parties further agree that the February 1 Facility Rental Payment is the full amount owed on February 1, 2006 under Section 4.03(a) of the

2

UMB 01134

Facilities Lease for the period between September 14, 2005 through January 31, 2006 and such payment shall be irrevocable and not subject to avoidance, setoff or counterclaim for any reason.

(c)   Ground rents and other fees and charges payable by Delta to KCAB under existing leases and other agreements shall continue to be paid by Delta to KCAB as required by applicable law, and such payments shall be irrevocable and not subject to avoidance for any reason.

(d)   The Debtors may, but shall not be required to, file a motion to reject the Facilities Lease and various other agreements (a "Rejection Motion"). In the event that the Debtors file a Rejection Motion prior to the expiration of the Negotiation Period, as such period may be extended as provided for in this Stipulation, and if the Court grants such Rejection Motion at any time thereafter, the parties agree that the effective date of such rejection shall be January 19, 2006; provided, however, that the effective date of any such rejection by Delta shall be January 19, 2006 (i) with respect to the Facilities Lease only if Delta has complied with paragraph 6(b); and (ii) with respect to any other agreements only if Delta has complied with paragraph 6(c).

(e)   The parties agree that no provision of or characterizations or defined terms within this Stipulation or any order regarding it shall be construed as consent by UMB or KCAB to any rejection of the Facilities Lease, nor prejudice or restrict any objections or other arguments UMB or KCAB may have concerning any aspect of any Rejection Motion; provided, however, that notwithstanding the foregoing and notwithstanding any other provision to the contrary in this Stipulation, UMB and KCAB shall not claim or argue that the continued occupancy by Delta (or any other party occupying through Delta) of any portion of the Facilities on or after January 19, 2006 is a basis for denying the Rejection Motion.

(f)   This Stipulation is entered into solely for the purpose of avoiding litigation. Neither this Stipulation nor any provision, characterization or defined term contained herein shall be construed as (i) a restriction on any claims UMB or KCAB may have against the Debtors, including claims under the Facilities Lease or other claims related to the Facilities (except for any claims that would be inconsistent with paragraph 6(b) or the proviso set forth in paragraph 6(e)), nor the Debtors' ability to object to such claims, or (ii) an acknowledgment by the Debtors or KCAB that UMB has any right to participate in Delta's negotiations with KCAB regarding Delta's continued use and occupancy of the Facilities or the Airport after any rejection, or that UMB has any rights or entitlements under the Facilities Lease, or that any obligations imposed by the Facilities Lease are true lease obligations within the meaning of 11 U.S.C. § 365.

7.    The parties further stipulate that this Court shall retain jurisdiction to interpret and enforce this Stipulation and to resolve any dispute regarding the interpretation of this Stipulation.

3

UMB 01135

Dated:   December 30, 2005
         New York, NY


**Kenton County Airport Board**                  **Delta Air Lines, Inc., et. al**


By: /s/ Selinda A. Melnik                        By: /s/ Thomas A. Tormey
    Selinda A. Melnik                                Sharon Katz
    EDWARDS, ANGELL, PALMER & DODGE, LLP            Juliet Cain
    750 Lexington Avenue                            Thomas A. Tormey
    New York, NY 10022                              DAVIS POLK & WARDWELL
             *and*                                  450 Lexington Avenue
    919 North Market Street                         New York, NY 10017
    Wilmington, DE 19801                            Tel: 212-450-4000
    Tel: 302-425-7103                               Fax: 212-450-3800
    Fax: 302-777-7263


**UMB Bank, N.A., as successor trustee**


By: /s/ William W. Kannel
    William W. Kannel
    Daniel S. Bleck
    Ian A. Hammel
    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
        AND POPEO P.C.
    One Financial Center
    Boston, MA 02111
    Tel: 617-542-6000
    Fax: 617-542-2241


SO ORDERED 1/5/2006

/s/ Prudence Carter Beatty
_____
Hon. Prudence Carter Beatty


4

UMB 01136

**EXHIBIT C**

UMB 01137

**AGREEMENT EXTENDING THAT CERTAIN STIPULATION
DATED DECEMBER 30, 2005**

Delta Air Lines, Inc. ("Delta") and the other debtors and debtors-in-possession in the jointly administered chapter 11 cases (Case No. 05-17923 (Bankr. S.D.N.Y.)) (the "Debtors"), Kenton County Airport Board ("KCAB") and UMB Bank, N.A. as successor indenture trustee for the $419,000,000 Kenton County Airport Board, Special Facility Revenue Bonds, 1992 Series A (Delta Air Lines, Inc. Project) and $19,000,000 Kenton County Airport Board, Special Facilities Revenue Bonds, 1992 Series B (Delta Air Lines, Inc. Project) ("UMB", collectively with Delta and KCAB, the "Parties"), parties to that certain stipulation between Delta, KCAB and UMB dated December 30, 2005 (the "Stipulation"), and approved by the Bankruptcy Court on January 5, 2006, agree as follows:

1.      Unless otherwise defined, capitalized terms used herein have the meanings assigned to them in the Stipulation.

2.      Pursuant to paragraph 6(a) of the Stipulation, the Parties hereby agree to extend the Negotiation Period from March 1, 2006 to May 1, 2006.

3.      This Agreement does not, and is not intended to, modify the Stipulation other than with respect to the Negotiation Period as set forth in paragraph 2 above and all other terms and provisions of the Stipulation shall remain in effect.

4.      This Agreement may be executed by one or more counterparts, all of which shall

be deemed one original document.

Dated:  February 17, 2006

DELTA AIR LINES, INC.

By: _____
Name:  JAY A. TURNEY
Title:  DIRECTOR - CORPORATE
        REAL ESTATE

KENTON COUNTY AIRPORT BOARD

By: _____
    Name:
    Title:

UMB BANK, N.A., As Successor Indenture Trustee for the Bonds

By: _____
    Name:
    Title:

-2-

UMB 01139

Feb-17-06   12:40pm   From-KCAB Finance (Warnken)                8597878289        T-91   NO. 683 /08   P. 3   ZIEGLER & SCHNEIDER

4.       This Agreement may be executed by one or more counterparts, all of which shall be deemed one original document.

Dated:   February 17, 2006

DELTA AIR LINES, INC.

By:_____
Name:
Title:

KENTON COUNTY AIRPORT BOARD

By: _____
Name:
Title:

UMB BANK, N.A., As Successor Indenture Trustee for the Bonds

By: _____
Name:
Title:

-2-

UMB 01140

4.    This Agreement may be executed by one or more counterparts, all of which shall be deemed one original document.

Dated:  February 17, 2006

DELTA AIR LINES, INC.

By:_____
Name:
Title:

KENTON COUNTY AIRPORT BOARD

By:_____
Name:
Title:

UMB BANK, N.A., As Successor Indenture Trustee for the Bonds

By:_____
Name:  Frank C. Bramwell
Title:  Sr. Vice Pres.

- 2 -