```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF NEW YORK
 2
                                         .
 3   IN RE:                              .  Case No. 05-17923 (ASH)
                                         .
 4   DELTA AIR LINES, INC., et al,       .  (Jointly Administered)
                                         .
 5                  Debtors.             .  New York, New York
                                         .  Thursday, April 19, 2007
 6   . . . . . . . . . . . . . . .          2:37 p.m.

 7      TRANSCRIPT OF MOTION TO APPROVE CVG SETTLEMENT AGREEMENT
                   BEFORE THE HONORABLE ADLAI S. HARDIN
 8                    UNITED STATES BANKRUPTCY JUDGE

 9   APPEARANCES:    (On the Record)

10   For the Debtors:                 Marshall S. Huebner, Esq.
                                      James I. McClammy, Esq.
11                                    DAVIS, POLK & WARDWELL
                                      450 Lexington Avenue
12                                    New York, New York 10038


13
     For the Official Committee
14   of Unsecured Creditors:          Abid Qureshi, Esq.
                                      AKIN, GUMP, STRAUSS, HAUER
15                                       & FELD, LLP
                                      590 Madison Avenue
16                                    New York, New York 10022


17

18   (Appearances Continued)


19
     Audio Operator:                  Electronically Recorded
20                                    by Court Personnel

21   Transcription Company:           Rand Transcript Service, Inc.
                                      80 Broad Street, Fifth Floor
22                                    New York, New York 10004
                                      (212) 504-2919
23                                    www.randtranscript.com


24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

```
 1  APPEARANCES:   (Continued)

 2  For the Kenton County
    Airport Board (KCAB):
 3                                  Selinda A. Melnik, Esq.
                                    EDWARDS, ANGELL, PALMER
 4                                   & DODGE, LLP
                                    919 North Market Street
 5                                  15th Floor
                                    Wilmington, Delaware 19801
 6
    For U.M.B. Bank, N.A.,
 7  as Trustee:                     William W. Kannel, Esq.
                                    MINTZ, LEVIN, COHN, FERRIS,
 8                                   GLOVSKY & POPEO, P.C.
                                    One Financial Center
 9                                  Boston, Massachusetts 02111

10  For the Ad Hoc Committee
    of KCAB Bondholders:            John K. Cunningham, Esq.
11                                  Rudolph A. Aragon, Esq.
                                    Ileana Cruz, Esq.
12                                  WHITE & CASE, LLP
                                    Wachovia Financial Center
13                                  200 South Biscayne Boulevard
                                    Suite 4900
14                                  Miami, Florida 33131

15

16

17

18

19

20

21

22

23

24

25
```

1  shy, retiring, unheard violet.
2              I take it that there is -- we're not dealing here with
3  any issue of fact.  This is -- these are legal issues.  Am I
4  not correct in that?
5              MR. CUNNINGHAM:  I believe they are legal issues.  We
6  do have, as Mr. Aragon mentioned to Your Honor, very short
7  deposition transcripts that go to the relevant documents and
8  which we believe constitute admissions to aid the Court and for
9  the record, so we'll be putting that on.  I think they're just
10 statements, but I don't believe --
11             THE COURT:  All right.  I'll hear it.  It will be
12 difficult and in the event that some witness, either
13 intelligently or inadvertently, says something that's in
14 conflict with what a document says, it seems to me it's going
15 to be hard for me to base a ruling on that.
16             MR. CUNNINGHAM:  Understood, Your Honor.
17             THE COURT:  I trust you wouldn't disagree with that.
18             MR. CUNNINGHAM:  I agree, Your Honor.
19             THE COURT:  With regard to subject matter, there's no
20 issue that I have subject matter jurisdiction under Rule 9019
21 to pass upon a proposed settlement.  That's really not an
22 issue, is it?  There's a whole Point A of Mr. Huebner's
23 memorandum that seems to me to be basically unarguable.  Courts
24 pass upon settlement agreements all the time.
25             MR. CUNNINGHAM:  Yes, Your Honor.  We made mention --

1  I think the reason they put that in is we made mention that we
2  believe that there was a question of subject matter
3  jurisdiction and I can address that. I won't belabor the
4  Court's time and take too much on the issue of subject matter
5  jurisdiction.
6      Of course, Your Honor, we agree Your Honor, under 28
7  U.S.C. 1334(b) and 157, would have subject matter jurisdiction
8  to rule on a 9019 motion such as this and to entertain it --
9      THE COURT: Resolving claims.
10     MR. CUNNINGHAM: Because the only difference that we
11 had made was that -- because we had challenged whether or not
12 the proper parties were before the Court, we know it's the
13 debtors' motion so arguably technically the other settling
14 parties are not parties, they're not the ones who filed the
15 motion, but we did have issues. They go more to the merits and
16 I think the power and authority of the Court, so I agree, Your
17 Honor, we don't have to get into a long dissertation on, you
18 know, this Court's related to jurisdiction or power over part.
19 We really do believe the thrust of the argument is to the power
20 and the authority of the Court to grant the settlement motion
21 that has been filed by the debtors.
22     THE COURT: All right. Another sort of prefatory
23 point: You haven't, as Mr. Huebner pointed out, taken any
24 issue with the basic -- well, two basic propositions: one, the
25 approval of settlement agreements, barring some legal defect,

1  bondholders may disagree. Obviously, the debtors have
2  represented that they believe a majority, not all but a
3  majority, think this is a good settlement for them, but we do
4  not believe it's a good settlement for us and we don't believe
5  it's a good settlement for all bondholders.
6      THE COURT: Would you want to be carved out? Do your
7  clients want to be carved out of the settlement so that they
8  take no benefit from the settlement but are at liberty to
9  litigate with the debtor? It's just a question.
10     MR. CUNNINGHAM: The answer is yes. We wanted an
11 opportunity to opt out of that settlement and keep our bonds
12 and keep our rights and be able to pursue our rights and
13 remedies against, you know, with respect to the debtor, within
14 this bankruptcy case, with respect to the trustee or KCAB, you
15 know, based on what our legal rights are. We wanted to keep
16 them. Yes, we wanted to opt out.
17     THE COURT: You want to opt out?
18     MR. CUNNINGHAM: Yes.
19     THE COURT: Because I didn't discern that from your
20 pleadings.
21     MR. CUNNINGHAM: We've asked --
22     THE COURT: Mr. Huebner has risen portentously.
23     MR. HUEBNER: Just to help, Your Honor, as you know, I
24 think it's fair to say that we have found a lot of very
25 creative corporate solutions to problems like this. An opt out

1  is really not feasible here because, first of all, what they
2  really want to do is retain their right to sue the airport and
3  the trustee and, of course, we have indemnification obligations
4  and the airport is a pass-through vehicle and we're ninety
5  percent of their traffic, so really any opt out is an
6  opportunity to try to sue Delta for hundreds of dollars on pre-
7  petition bonds because clearly we get a discharge, the only two
8  people left are the trustee and the airport.
9          We've also been advised, because we asked, that the
10 trustee does not have it believes the ability or the readiness
11 or the willingness to do a deal in which some bondholders can
12 participate and some others can't.  Frankly, I would have been
13 very happy to take the risk of we'll litigate later, whether
14 there's one claim or two, whether it's capped or not because we
15 think, as you would have heard, that this is an unbelievably
16 generous settlement and that there's a reason why 97.35 percent
17 of the bondholders, with weeks of notice, exactly, I might
18 note, as set forth and predicted in the disclosure statement as
19 to mechanic, voted in favor of this.  But on this one, I
20 actually don't think it's going to work because the place that
21 it's going to round trip is ultimately back to reorganized
22 Delta and we need to buy finality which is frankly why we paid
23 so very handsomely.
24         THE COURT:  All right.  Okay.  Well, if I could ask
25 some questions, you'll help me I'm sure with some of the points

1    and I'm actually going to give you a simple answer because I've
2    got a lot of binders here and even more tape flags.
3        Is KCAB liable on the bonds? You got kind of a
4    complex answer. I'm just going to read from the document.
5    Section 2.05.
6        "The bonds shall not constitute a debt liability or
7        obligation or pledge of the faith and credit of the
8        issuer, Kenton County, Kentucky, or the Commonwealth,
9        on any political subdivision thereof, within the
10       meaning of any constitutional or statutory provision
11       whatsoever, but shall be limited in special
12       obligations of the issuer, payable solely from the
13       trust estate" --
14       Which is, of course, specifically defined in a way --
15   I'm sure you can guess what it's defined as.
16       "The bonds shall not be payable from or charged upon
17       any funds other than the trust estate pledged to the
18       payment thereof, nor shall the issuer be subject to
19       any pecuniary liability thereof. No holder or holders
20       of the bonds shall ever have the right to compel any
21       exercise of the taxing power of the issuer, or any
22       other unit of government to pay the bonds or the
23       interest thereon, nor to enforce payment thereof,
24       against any property of the issuer, nor shall such
25       bonds constitute a charge, lien or encumbrance, legal

1    or equitable, upon any property of the issuer.  The
2    statutory mortgage lien provided for under KRS 103-251
3    is hereby waived by the issuer, and the trustee shall
4    not be applicable to the project facilities or
5    constitute security for the payment of the 1992 Series
6    A or B bonds."
7    Put that one up on the screen.
8        MR. CUNNINGHAM:  I'm going to put it up on the screen
9    right now, Your Honor.  The tennis match keeps going.  Let's
10   put up KCAB's reply brief, Page 10.  This is direct from KCAB.
11   There's the Kentucky law at issue here, Your Honor.
12       MR. HUEBNER:  That's not the section we said you could
13   put up on the screen.  Put it up on the screen.
14       MR. CUNNINGHAM:  I'm arguing.
15       MR. HUEBNER:  205.  That's what you said.  Put it up.
16       MR. CUNNINGHAM:  I'm going through this statutory
17   provision because KCAB also put it up.  This is from their
18   brief, Your Honor.
19       They say, in one, the title is application of revenue,
20   changes for use.  They say, at one, and Delta, you know, tries
21   to argue, as well, on this, that at or before the issuance of
22   the bonds, that's their highlighting, the city legislator or
23   body or fiscal court or county, as the case may be, shall, by
24   ordinance resolution, set aside and pledge the income and
25   revenue of the industrial building, including the airport