# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

Ian A. Hammel | 617 348 1724 | iahammel@mintz.com

March 9, 2007

**VIA FEDEX**

Bloomberg Municipal Repository
100 Business Park Drive
Skillman, NJ  08558

DPC Data Inc.
One Executive Drive
Fort Lee, NJ  07024

Standard & Poor's Securities Evaluations, Inc.
55 Water Street, 45th Floor
New York, NY  10041

FT Interactive Data
Attn:  NRMSIR
100 William Street, 15th Floor
New York, NY  10038

Re:   NOTICE TO THE HOLDERS OF THE $419,000,000 KENTON COUNTY
      AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES
      A (DELTA AIR LINES, INC. PROJECT) AND THE $19,000,000 KENTON
      COUNTY AIRPORT BOARD, SPECIAL FACILITIES REENUE BONDS, 1992
      SERIES B (DELTA AIR LINES, INC. PROJECT) (the "Bonds")

To Whom It May Concern:

Enclosed is a notice to holders of the referenced Bonds dated March 9, 2007.

Very truly yours,

Ian A. Hammel

IAH/jbl
Enclosure

cc:   Daniel S. Bleck
      William W. Kannel

3991663v.1

## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

Dated: March 9, 2007

**NOTICE OF (I) SETTLEMENT WITH DELTA AIR LINES, INC. REGARDING 1992 SERIES A AND 1992 SERIES B BONDS; (II) PROCEDURES CONCERNING COURT APPROVAL OF SETTLEMENT AND RELATED DEADLINES; AND (III) HEARING ON MOTION TO APPROVE SETTLEMENT**

**Notice #16**

**NOTICE TO THE HOLDERS OF THE $419,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES A (DELTA AIR LINES, INC. PROJECT) AND THE $19,000,000 KENTON COUNTY AIRPORT BOARD, SPECIAL FACILITIES REVENUE BONDS, 1992 SERIES B (DELTA AIR LINES, INC. PROJECT)**

| Series | Interest Rate | Maturity Date | CUSIP No.[1] |
|--------|--------------|---------------|-----------|
| Series A | 7.500% | 2/1/2012 | 491026JF8 |
| Series A | 7.500% | 2/1/2020 | 491026JG6 |
| Series A | 7.125% | 2/1/2021 | 491026JK7 |
| Series A | 6.125% | 2/1/2022 | 491026JH4 |
| Series B | 7.250% | 2/1/2022 | 491026JJ0 |

**(COLLECTIVELY, THE "BONDS")**

**This notice contains important information that is of interest to the registered and beneficial owners of the Bonds. If applicable, all depositories, custodians, and other intermediaries receiving this notice are requested to expedite re-transmittal to beneficial owners of the Bonds in a timely manner.**

Dear Bondholder:

This notice (the "Notice") is given to you by UMB Bank, N.A., as successor trustee to Star Bank, N.A. n/k/a U.S. Bank National Association (the "Trustee") under the Trust Indenture dated as of February 1, 1992 (the "Indenture") between the Kenton County Airport Board (the "KCAB") and the Trustee in your capacity as a holder of the Bonds (the "Bondholders").

**SETTLEMENT WITH DELTA AIR LINES, INC.**

As the Trustee has previously notified Bondholders, a settlement has been reached to resolve all claims the Trustee and/or Bondholders may have associated with the Bonds (the "Settlement"). Subject to approval by the United States Bankruptcy Court and other conditions, the Settlement will

---

[1]      The Trustee makes no representation as to the accuracy of the CUSIP numbers.

resolve all claims the Trustee and/or Bondholders may have against Delta Air Lines, Inc. ("Delta") and/or KCAB in connection with the Bonds. Without limitation, the Settlement would resolve a pending motion by Delta to reject various agreements that relate to the Bonds as part of its pending Chapter 11 bankruptcy proceedings (the "Rejection Motion").

Among other things, this Notice describes (i) the Settlement; (ii) the procedures for making objections to the Settlement; and (iii) the date, time and location scheduled for a hearing on the Settlement.

Copies of certain documents associated with the Settlement, including a settlement agreement (the "Settlement Agreement"), motion to approve the Settlement Agreement (the "Settlement Motion"), and the proposed form of order concerning the Settlement (the "Settlement Order" and, collectively with the Settlement Agreement and Settlement Motion, the "Settlement Documents") are attached to this Notice (excluding, however, the exhibits to the Settlement Documents). All of the Settlement Documents (including the exhibits) have been posted at www.kentoncountybondholders.com. Bondholders may also request copies of the Settlement Documents from the Trustee and its counsel using the contact information that appears below.

## CHAPTER 11 FILING OF DELTA AIR LINES, INC., ET. AL.

As the Trustee has previously notified Bondholders, Delta and certain of its affiliates filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on September 14, 2005 (the "Bankruptcy Proceedings"). The bankruptcy petition and other related documents filed in these cases are available at www.deltadocket.com, on the Court's website www.nysb.uscourts.gov or at the Clerk's office at the following address:

Clerk of United States Bankruptcy Court
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

## OUTLINE OF PRINCIPAL TERMS OF SETTLEMENT

The Trustee previously notified Bondholders of the primary terms of the Settlement. The following is a general outline and overview of the Settlement Agreement. The Trustee urges Bondholders to read this entire Notice and the Settlement Documents to obtain a more full and complete understanding of the Settlement.

- *Bankruptcy Claim.* An allowed general unsecured claim in the Bankruptcy Proceedings in the face amount of $260 million (as discussed below, Delta has estimated that the range of recovery on allowed general unsecured claims is 62% to 78%, which will be paid in the form of New Delta Common Stock);

- *Claim for Voting Purposes.* An allowed general unsecured claim for voting purposes in the amount of $260 million;

2

- *Note.* A promissory note payable to the Trustee with equal monthly payments through December 1, 2015 (the "Note");

- *Payments Prior to Note Issuance.* Until the Note is issued, Delta shall continue to make payments to the Trustee in the amount of $1,125,000 per month, payable on the first day of each month (together with payments already received under the Forbearance Agreement (as defined below), the "Forbearance Payments"); and

- *Note Value.* The Note shall be in the original principal amount of $85 million, less the Forbearance Payments, and will bear fixed interest at the rate of eight percent (8%) per annum. Under the terms of the Settlement Agreement, Delta retains the right to prepay some or all of the balance due on the Note.

The Settlement also contemplates reimbursement by Delta of up to $2 million of the fees and expenses of the Trustee, including legal and professional fees of its attorneys and consultants, incurred in connection with the Bankruptcy Proceedings. The Official Unsecured Creditors' Committee in the Bankruptcy Proceedings is continuing to review the terms of the Settlement, but Delta anticipates that it will receive such approval.

## DIRECTION FROM AND PARTICIPATION BY MAJORITY OF HOLDERS

As the Trustee has previously notified Bondholders, the Trustee has received a written and binding direction (the "Settlement Direction") from holders of a majority in aggregate principal amount of the Bonds (the "Directing Bondholders") to enter into the Settlement. The Settlement Direction directed the Trustee to enter into the Settlement, and take all such further actions necessary or appropriate to consummate the Settlement. The Settlement Direction was given by holders of approximately sixty percent (60%) of the outstanding principal amount of the Bonds.

## TERMS OF THE SETTLEMENT

Under the Settlement, the Trustee, for the benefit of Bondholders, will receive an allowed general unsecured claim against Delta in the amount of $260,000,000 (the "Allowed Claim"). Under the "Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" dated February 7, 2007 (the "Plan") and related Disclosure Statement (the "Disclosure Statement"), Delta has estimated a recovery in the range of 62% to 78% for holders of allowed general unsecured claims, payable in New Delta Common Stock (as that term is defined in the Plan). To the extent Delta has accurately estimated the recovery range for general unsecured claims in its Disclosure Statement, the recovery on the Allowed Claim is estimated at between $161,200,000 and $202,800,000.[2]

---

[2]    The Disclosure Statement and Plan were prepared by Delta and its professionals. The Trustee has not verified the provisions and statements contained in those documents and is not responsible for the contents or accuracy thereof. The Disclosure Statement and Plan anticipate that holders of general unsecured claims will receive New Delta Common Stock. The valuation methodology used to determine the value of such securities and risks associated therewith are described in the Disclosure Statement. Further, the valuation methodology assumes confirmation of the Plan in its current form. References to claim values herein are made solely for the purpose of allowing Bondholders to evaluate the Settlement.

Under the Settlement, the Trustee, for the benefit of Bondholders, will also receive the Note. The Note shall have an original principal amount of $85 million and bear interest at a fixed rate equal to eight percent (8%) per annum. The principal amount of the Note is subject to a reduction equal to the dollar amount of payments Delta has made or may make under a Forbearance Agreement dated July 16, 2006 (the "Forbearance Agreement"). As described in prior notices, the Trustee, KCAB and Delta entered into the Forbearance Agreement for the purposes of continuing discussions among the Trustee, Delta and KCAB regarding a settlement with respect to the Rejection Motion. Under the Forbearance Agreement, Delta agreed to make certain payments to the Trustee. After an initial payment on August 1, 2006 of $9,000,000 under the Forbearance Agreement, the Trustee has received additional monthly payments of $1,125,000 each commencing on September 1, 2006. As of the date of this Notice, Delta has made 7 payments of $1,125,000; thus the total payments Delta has made under the Forbearance Agreement currently is $16,875,000 (a portion of which has previously been distributed to Bondholders as set forth in prior notices). To the extent, and for purposes of an example only, if the Note were issued as of the date of this Notice, the original principal amount of the Note would be $68,125,000 (i.e., $85,000.000 less payments of $16,875,000). Delta, under the terms of the Settlement, has also reserved the right to prepay all or any portion of the Note prior to or any time after, its issuance (as set forth more fully in the Settlement Documents).

In addition to the Allowed Claim and the Note, Delta has agreed to reimburse up to $2 million of the fees and expenses of the Trustee, including legal and professional fees of the Trustee's attorneys and consultants, incurred in connection with, among other things, the Bankruptcy Proceedings. The Indenture provides that prior to any distribution of funds to Bondholders, funds held or received by the Trustee under the Indenture are to be used first for the fees and costs incurred or to be incurred by the Trustee in performing its duties. This includes, inter alia, compensation for time spent and the fees and costs of counsel and other professionals retained by the Trustee to pursue remedies or other actions to protect the interests of Bondholders. The Trustee reserves all rights to apply any funds held by the Trustee for its costs and expenses. The practical effect of Delta's agreement to reimburse certain fees and expenses of the Trustee is to increase the monies available for distribution to Bondholders.

The Settlement is in addition to the $11,088,352 Delta paid to the Trustee, for the benefit of the Bondholders on or about February 1, 2006. That payment was reported to Bondholders in a notice dated February 1, 2006, which is available at www.kentoncountybondholders.com and from the Trustee and its counsel.

Based upon the Plan, the Disclosure Statement and the terms of the Settlement Agreement, within 3 business days of the Plan's Effective Date, the Settlement Agreement will close, on which date the Indenture for the Note will be executed and the 1992 Bonds will be cancelled (the "Closing Date"). On the initial distribution date under the Plan, Delta will distribute New Delta Common Stock to the Trustee. Shortly thereafter the Trustee will make a distribution to Bondholders of record as of the Closing Date of: (i) certain cash held under the 1992 Trust Indenture as of the Closing Date and (ii) the New Delta Common Stock. Interests in the Note, and any future distributions of cash or New Delta Common Stock, will be delivered or made to the Bondholders of record as of the Closing Date. Interests in the Note are expected to be issued and delivered several weeks after the Closing Date. Payments on the Note will be made monthly to the holders thereof, as provided in the new trust indenture for the Note.

The Settlement shall be deemed to fully satisfy any and all obligations or liabilities of Delta and KCAB to the Trustee and Bondholders with respect to the Bonds and contemplates that effective on the Closing[3], Delta, KCAB, the Trustee and each Bondholder shall be deemed, on behalf of itself, and each of their respective present and former parents, subsidiaries, affiliates, divisions, successors, transferees, partners, principals, officers, directors, employees, agents, attorneys, and assigns (collectively, the "Releasing Parties"), to have forever released, discharged, waived and abandoned any and all claims against one or the other, or their respective properties or assets, arising from, in any way based upon or in any way related to the following: the entry into the Settlement Agreement and/or the Implementing Agreements; the 1992 Bond Agreements; the 1992 Bond Facilities; any payments received from Delta under the 1992 Bond Agreements prior to the Bankruptcy Proceedings; and the Forbearance Agreement, but excluding any claims brought under or to enforce the terms of the Settlement Agreement, the New Lease, the New Indenture, the Note, the other Implementing Agreements or any claims of the Trustee against the trust corpus for the Bonds or any indemnification claim of the Trustee against any Bondholder.

Among the conditions for the Settlement to be effective are that (i) the Settlement must be approved by the Bankruptcy Court; (ii) Delta's Plan must be confirmed; and (iii) Delta's Plan must become effective. The Settlement Order to be entered by the Bankruptcy Court must contain various provisions, as set forth more fully in the Settlement Agreement, including the following:

- as of the Closing Date, the Rejected Agreements shall be deemed rejected as of the Rejection Dates and the parties to each of the respective Rejected Agreements and other 1992 Bond Agreements agree, with the exception of certain provisions of the 1992 Trust Indenture, that such agreements shall be deemed automatically terminated and cancelled as of the Closing Date;

- the Guaranty and Tax Certificate are pre-petition obligations of Delta that, as such, upon the Closing shall be fully discharged in connection with Delta's exit from bankruptcy. Neither KCAB, the Trustee nor the Bondholders shall be allowed any claim in the Bankruptcy Cases, other than the Allowed Claim, with respect to the Guaranty or the Tax Certificate except as set forth in the Settlement Agreement;

- the Trustee, as trustee and on behalf of the Bondholders, shall have an allowed general unsecured claim in the Bankruptcy Case in the amount of $260,000,000, as set forth in the Settlement Agreement (i.e. the Allowed Claim as previously defined);

- the Note issued pursuant to the Settlement Agreement will be issued pursuant to Sections 1145 and 1146 of the United States Bankruptcy Code so that the Note will be exempt from registration under the Securities Act and there shall not be any stamp or similar tax associated with the issuance of the Note;

- Delta is authorized to reimburse the fees and costs of the Trustee consistent with the provisions in the Settlement Agreement;

- the compromise and settlement set forth in the Settlement Agreement is fair and reasonable to, and is in the best interest of, Delta and its creditors, KCAB, the Trustee, and the

---

[3]     Unless otherwise defined in this Notice, terms used herein shall be as defined in the Settlement Agreement.

Bondholders, and that, in entering into the Settlement Agreement, Delta, KCAB, the Trustee and the Directing Bondholders have exercised their rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances;

- the execution and delivery of the Settlement Agreement by the Parties and the settlement and compromise set forth in the Settlement Agreement are approved;

- the mutual releases contained in the Settlement Agreement shall be effective as of the Closing;

- the applicable Parties are directed and authorized to enter into the New Lease and the other the Implementing Agreements to which they are a party;

- the Settlement Order and Settlement Agreement are and shall be binding on Delta, KCAB, the Trustee and the Bondholders (and any and all predecessors and successors thereto);

- the Settlement Order shall be binding on the Trustee solely in its capacity as a trustee with respect to the Bonds and not in any other capacity, including, but not limited to, its capacity as a holder of any claim against Delta and/or its affiliates unrelated to the 1992 Bond Agreements or as the trustee with respect to any other bonds related to Delta and/or its affiliates;

- the Settlement Order shall be binding on each Bondholder solely in such bondholder's capacity as a Bondholder, and not in any other capacity, including, but not limited to, its capacity as the holder of any other claim against Delta and/or its affiliates unrelated to the 1992 Bond Agreements or the holder of any bond other than the Bonds related to Delta or its affiliates;

- the Trustee shall be entitled in its sole discretion to establish one or more record dates for the Bondholders for the purposes of distributions on the Bonds including distributions on the Bankruptcy Claim; and

- upon the Closing, each of the Releasing Parties shall be deemed to have released and to be permanently enjoined from asserting, pursuing or prosecuting any and all Released Claims against any of the Releasing Parties including, but not limited to, claims arising from the entry into the Settlement Agreement and/or the Implementing Agreements.

**The foregoing summary should not be considered to be a substitute for a careful and thorough reading of the Settlement Documents.  Bondholders are urged to carefully review the Settlement Documents in their entirety for a complete understanding of the terms of the Settlement Agreement.  In the event there are any discrepancies between the foregoing description and the Settlement Documents, the Settlement Documents shall govern.**

**Each Bondholder is encouraged to consult with their own tax advisor about the tax treatment of the consideration received under the Settlement, which may vary depending on a Bondholder's particular tax attributes.**

## REASONS FOR SETTLEMENT

In assessing the Settlement, the Trustee and the Directing Bondholders considered several material issues relating to the matters that will be resolved if the Settlement is approved, including, without limitation, the following:

- *Potential Outcomes Concerning Rejection Motion.* As indicated above and in prior notices to Bondholders, Delta has filed the Rejection Motion in the Bankruptcy Proceedings. The Rejection Motion seeks to reject certain agreements relating to the Bonds, including the "Facilities Lease" and "Guaranty" that require Delta to make the payments that are used to make debt service on the Bonds. The Trustee believes there are various bases to challenge the Rejection Motion. Those bases are detailed in the Trustee's objection to the Rejection Motion, which was filed in the Bankruptcy Proceedings and is posted at www.kentoncountybondholders.com. Despite these objections, Delta's Rejection Motion could still be allowed and thus the Trustee's right to future lease revenues from Delta and/or reletting revenues from other airlines is uncertain. Additionally, if the Rejection Motion were allowed, the Trustee's recoveries from Delta could be substantially less than the payments contemplated by the Settlement, as discussed more fully in this section.

- *Potential Limits on Claims Against Delta.* If the Rejection Motion were allowed, any rejection claim related to the Facilities Lease and Guaranty might be subject to certain limits imposed by Section 502(b)(6) of the Bankruptcy Code. This provision limits claims relating to real property lease agreements. In general, claims based on the rejection of a lease of non-residential real property are limited to the greater of (a) one years' rent, without acceleration; or (b) fifteen percent of the rent reserved for the remaining term of the lease, subject to the further limitation that this amount cannot exceed the next three years' rent. The Trustee has reserved all arguments that Section 502(b)(6) does not apply to the Facilities Lease or Guaranty. To the extent this cap applied to claims under the Facilities Lease, however, the recovery on claims based on the Facilities Lease would be substantially and significantly less than the value of the Settlement. Absent the Settlement, the Trustee would argue that based upon the Guaranty the limitations of Section 502(b)(6) do not apply. Absent the Settlement, Delta would argue that the Guaranty is a guaranty of the Facilities Lease and thus the limits imposed by Section 502(b)(6) of the Bankruptcy Code apply. The potential arguments of the parties, in part, are set forth more fully in the Settlement Motion.

- *Continued Litigation.* Continued litigation regarding, inter alia, the Rejection Motion the Trustee's claims in the Bankruptcy Proceedings, and related matters would involve time, expense, and risks of future legal appeals even if the Trustee obtained a favorable disposition on those issues in the Bankruptcy Proceedings or elsewhere.

The Trustee and the Directing Bondholders concluded, after reviewing the various risks and consulting with its legal advisors and industry consultant, that the Settlement represents a fair and reasonable resolution of all claims associated with the Rejection Motion and the Bonds.

**FILING OF SETTLEMENT MOTION**

Before the Settlement becomes effective, certain conditions must be met. Among the conditions to the effectiveness of the Settlement are the approval of the Settlement Agreement by the Bankruptcy Court.

On March 8, 2007, Delta filed the Settlement Motion. As noted above, copies of the Settlement Motion and the other Settlement Documents will be posted at www.kentoncountybondholders.com. Holders may also request copies of the Settlement Documents from the Trustee or the Trustee's counsel using the contact information described in this Notice below.

**HEARING ON SETTLEMENT MOTION; PROCEDURES FOR SUBMITTING RESPONSES, OBJECTIONS**

A hearing on the Settlement Motion has been scheduled for April 19, 2007 at 2:30 p.m. prevailing eastern time. The hearing will take place before the Honorable Adlai Hardin in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court").

Objections, if any, to the Settlement Motion and the relief sought therein must be made in writing and filed and served so as to be actually received by no later than 4:00 p.m. on April 12, 2007 (prevailing Eastern time). Bondholders should refer to the Order Approving Notice, Case Management and Administrative Procedures in the Bankruptcy Proceedings (the "Case Management Order"), a copy of which is available at www.deltadocket.com for specific requirements relating to the form, filing requirements and service requirements for such a response.

In addition to serving those parties upon which any court papers must be served under the Case Management Order, any Objection must be served upon: (i) the attorneys for Delta, Davis Polk & Wardwell, 450 Lexington Avenue, New York, NY 10017, Attn: Marshall S. Huebner, Esq. and James I. McClammy, Esq.; (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, NY 10004, Attn: Greg M. Zipes, Esq.; (iii) the attorneys for the Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, Attn: William W. Kannel, Esq. and Daniel S. Bleck, Esq.; (iv) the attorneys for KCAB, Edwards Angell Palmer & Dodge LLP 750 Lexington Avenue New York, NY 10022, Attn: Selinda Melnik and Ziegler & Schneider, P.S.C., 541 Buttermilk Pike, P.O. Box 175710, Covington, KY 41017 Attn: Wilbert Ziegler, Esq. and Matthew Smith, Esq.; (v) the attorneys for the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, 590 Madison Avenue, New York, NY 10022, Attn: Daniel H. Golden, Esq., Lisa G. Beckerman, Esq., and David H. Botter, Esq., and (vi) Bankruptcy Services LLC, 757 Third Avenue, New York, NY 10017, Attn: Robert Saraceni.

**APPROVAL OF DISCLOSURE STATEMENT; VOTING ON PLAN; HEARING ON PLAN**

As you were previously notified, on **February 7, 2007**, the Bankruptcy Court entered an order approving the Disclosure Statement, as amended. Copies of the Plan and Disclosure Statement are available at www.deltadocket.com.

The Plan has been submitted to creditors for a vote. As you were previously notified, the Bankruptcy Court has ordered that the record date for determining Bondholders entitled to vote on the Plan is **February 1, 2007**. Bondholders should receive a solicitation package containing, among other things, copies of the Plan, the Disclosure Statement, and ballots for voting on the Plan.

**The voting deadline on the Plan is 4:00 p.m. on April 9, 2007. Persons entitled to vote must deliver their ballots to the voting agent or to their nominee holder by mail, overnight mail, or personal delivery so that the voting agent or nominee, as the case may be, can submit ballots by the voting deadline. The Trustee encourages each holder of the Bonds to carefully examine the solicitation package and voting procedures contained therein before voting on the Plan to ensure compliance with the specific voting requirements. Pursuant to the terms of the Settlement Motion, the Settlement Agreement shall be deemed incorporated into the Plan.**

As referenced above, in accordance with the Settlement, the Trustee, for the benefit of Bondholders, will have an allowed general unsecured claim of $260,000,000. Given this allowed claim, the Bond Trustee and Delta have agreed that solely for the purposes of voting, each Bondholder shall be treated as holding a temporarily allowed unsecured claim in an amount equal to 62.867% of the principal amount of the Bonds held by such Bondholder (such amount being calculated as $260,000,000 divided by $413,570,000 (the principal amount of Bonds outstanding)).

A hearing on the confirmation of the Plan has been set for **2:30 p.m. on April 25, 2007**. Any objections to confirmation of the Plan must be filed with the Bankruptcy Court on or before **4:00 p.m. on April 9, 2007**. Any party who files an objection to confirmation must appear at the April 25, 2007 hearing.

**RETENTION OF COUNSEL**

The Trustee has retained the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., and specifically Mr. William W. Kannel and Mr. Daniel S. Bleck of that firm, to represent it in connection with the Bankruptcy Proceedings. The address of Mr. Kannel and Mr. Bleck is Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111. Mr. Kannel's telephone number is (617) 348-1665; E-mail: wkannel@mintz.com. Mr. Bleck's telephone number is (617) 348-4498; E-mail: dbleck@mintz.com.

**ADDITIONAL INFORMATION**

This Notice and other information will be posted on www.kentoncountybondholders.com, a website established by the Trustee for the purpose of making publicly available certain information which may be of interest to Bondholders. Delta and certain of its affiliated companies have also provided information for dissemination and have posted certain financial and other information pertaining to the Bankruptcy Proceedings on their website, www.deltadocket.com.

## FUTURE EVENTS

The Trustee will periodically communicate with Bondholders through written notice of material events of a public nature which the Trustee has knowledge. To facilitate such communications, any beneficial holder who wishes to receive such written notices directly may send its notice address to the Trustee, including its claimed holdings for the Bonds held (with CUSIP numbers, DTC participant name and denominations, if applicable), a contact person, address, telephone number and e-mail address.

Please note that the Trustee may conclude that a specific response to particular inquiries from individual Bondholders is not consistent with equal and full dissemination of information to all Bondholders. Bondholders should not rely on the Trustee, or on counsel or other advisors retained by the Trustee, as their sole source of information. The Trustee makes no recommendations nor gives any investment advice herein or as to the Bonds generally.

## COMMUNICATIONS TO TRUSTEE

If you wish to contact the Trustee regarding the Bonds or the contents of this Notice, we ask that you do so in writing directed to:

UMB Bank, N.A., as Trustee
Corporate Trust Division
2401 Grand Blvd.
Kansas City, MO 64108-2551
Attn: Anthony Hawkins
Vice President

Or you may contact either William Kannel or Daniel Bleck.

Very truly yours,


UMB Bank, N.A.,
As Trustee

## SETTLEMENT AGREEMENT

This settlement agreement (the "**Agreement**") is made and entered into as of March 8, 2007, by and among Delta Air Lines, Inc. ("**Delta**"), a Delaware Corporation, on behalf of itself and its chapter 11 estate, Kenton County Airport Board ("**KCAB**"), a public and governmental body corporate and politic created under the provisions of Chapter 183 of the Kentucky Revised Statutes, and UMB Bank N.A., as trustee under the 1992 Bond Indenture referenced below (the "**Bond Trustee**") (collectively, the "**Parties**").

### RECITALS

WHEREAS, Delta and KCAB are parties to a Lease Agreement dated as of February 1, 1992 (the "**Facilities Agreement**"), pursuant to which Delta uses and occupies certain facilities and improvements (the "**Facilities**") at the Cincinnati/Northern Kentucky International Airport (the "**Airport**");

WHEREAS, most of the Facilities were constructed with the proceeds of certain tax-exempt special facilities revenue bonds issued by KCAB (the "**1992 Bonds**," as more fully defined below), which were issued under a certain Trust Indenture (the "**1992 Bond Indenture**"), dated as of February 1, 1992, as amended or supplemented as of the date hereof, between KCAB and the Bond Trustee, as successor to Star Bank, N.A., as trustee ("**Star**");

WHEREAS, Delta and the Bond Trustee, as successor to Star, are parties to a Guaranty Agreement dated as of February 1, 1992 (the "**Guaranty**");

WHEREAS, KCAB and Delta are parties to an Airport Use Agreement (as defined below) and Delta has agreed to assume its obligations under the same;

WHEREAS, on September 14, 2005, Delta and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of United States Code (the "**Bankruptcy Cases**") with the United Stated Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");

WHEREAS, on April 28, 2006, Delta filed a motion (the "**Rejection Motion**") with the Bankruptcy Court to approve, *inter alia*, its rejection of the Facilities Agreement and certain other agreements listed in Exhibit A hereto (such agreements, together with the Facilities Agreement, the "**Rejected Agreements**"), and its abandonment of certain property at the Airport (Docket No. 2477);

WHEREAS, Delta, KCAB, the Bond Trustee and certain 1992 Bondholders (as defined below) are parties to a Forbearance Agreement dated as of July 17, 2006, as amended by agreement on November 29, 2006, December 29, 2006, and by Paragraph 3.02(b)(i) hereof, (the "**Forbearance Agreement**") pursuant to which KCAB, the Bond Trustee and such Bondholders, as set forth

therein, agreed to forbear from enforcing rights and remedies under the 1992 Bond Agreements (as defined below) and Delta, as set forth therein, agreed to forbear from prosecuting the Rejection Motion, to allow the negotiation of a new lease and related documents to proceed without forcing a hearing on the Rejection Motion prior to the conclusion of such negotiations;

WHEREAS, Delta and KCAB have reached agreement on the terms of a New Lease, as defined below; and

WHEREAS, the Parties have reached a settlement and compromise with respect to all claims and controversies against one another and the 1992 Bondholders (as defined below) related to or arising from the Rejection Motion, the 1992 Bond Agreements (as defined below), and the 1992 Bond Facilities (as defined below), all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the promises and the mutual agreements contained herein, the Parties agree as follows:

## ARTICLE 1
### INCORPORATION OF RECITALS

The recitals set forth above are true and correct and are hereby incorporated herein by this reference.

## ARTICLE 2
### DEFINITIONS

In this Agreement, the following capitalized terms shall have the meanings assigned to them below or in the preamble or Recitals set forth above (each meaning to be equally applicable to the singular and plural forms of the respective terms so defined):

"1992 Bondholders" means the former, present and future holders of record and of beneficial interests in the 1992 Bonds.

"1992 Bonds" means the $419,000,000 Kenton County Airport Board Special Facilities Revenue Bonds, 1992 Series A (Delta Air Lines, Inc. Project), of which $397,360,000 remains outstanding as of the date hereof, and the $19,000,000 Kenton County Airport Board Special Facilities Revenue Bonds, 1992 Series B (Delta Air Lines, Inc. Project), of which $16,210,000 remains outstanding as of the date hereof.

"1992 Bond Agreements" means the Facilities Agreement, the 1992 Bonds, the 1992 Bond Indenture, the Guaranty, the Tax Certificate, the Rejected Agreements and all other documents related thereto that were in existence prior to the date of this Agreement.

"1992 Bond Facilities" means the "Project Facilities," as defined in the Facilities Agreement.

"1992 M&O Agreement" means that certain Maintenance and Operations Services Agreement between KCAB and Delta dated as of February 1, 1992.

"Airport Use Agreement' means the Lease of Terminal Facilities dated as of November 15, 1971 between KCAB and Delta, as amended by the First Supplement thereto dated as of January 1, 1975, the Second Supplement thereto dated as of December 1, 1980, the Third Supplement thereto dated as of November 1, 1981, the Fourth Supplement thereto dated as of November 15, 1991, the Fifth Supplement thereto dated as of January 1, 1992, and any and all modifications, alterations, amendments, supplements and extensions thereof made hereafter in accordance with the provisions thereof.

"Bankruptcy Claim" has the meaning assigned to it in Section 3.02(d) of this Agreement.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bulk Storage Facilities Lease" shall mean the Bulk Storage Facilities Lease between KCAB and Delta dated as of the Closing Date, in form and substance substantially in the form attached hereto as Exhibit B.

"Closing" means execution and closing of the Implementing Agreements.

"Closing Date" means the date on which the Closing shall occur, which date shall be as soon as reasonably practicable after the Effective Date of the Plan, but in no event later than the earlier of (i) one (1) business day prior to the Initial Distribution Date, as defined in the Plan or (ii) three (3) business days after the Effective Date, unless Delta, the Bond Trustee and KCAB otherwise agree.

"Delta Note" shall mean the note issued by Delta, having an aggregate principal amount equal to the Delta Note Value on the Issuance Date and bearing fixed interest at the rate of 8% per annum, the basic terms of which are set forth in Section 3.02(c), below, and which in form and substance shall be substantially in the form attached hereto as Exhibit C, and which shall be governed by the New Indenture.

"Delta Note Value" means $85 million less (i) any and all amounts paid by Delta to the Bond Trustee under the Forbearance Agreement during the period from August 1, 2006 through the Issuance Date and (ii) any and all amounts paid

by Delta to the Bond Trustee in accordance with Section 3.02(c)(iii) below. The Delta Note Value shall become a fixed amount as of the Issuance Date.

"Effective Date" means the date on which the Plan shall become effective, as set forth in the Plan.

"Final" means, with respect to an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to subject matter, that such order has not been reversed, stayed, modified, or amended, and that the time to appeal or seek certiorari with respect to such order has expired and no appeal or petition for certiorari has been timely taken, or that in the event that any appeal that has been taken or any petition for certiorari that has been or may be filed with respect to such order, there has not been a stay of such order, or such appeal or petition for certiorari has been withdrawn or dismissed or has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

"Implementing Agreements" means those agreements that are necessary to the implementation of this Agreement, and are not inconsistent with the terms of this Agreement or those agreements that serve as part of the settlement consideration (which agreements shall also be considered Implementing Agreements), including the New M&O Agreement, the Bulk Storage Facilities Lease, New Lease, Delta Note, New Indenture, and a Sixth Supplement to the Airport Use Agreement, attached hereto as Exhibit D.

"Issuance Date" shall mean the date the Delta Note is issued, which date shall be the Closing Date, or at Delta's sole election, a date that shall not be later than fifteen (15) business days after the Closing Date. In the event that, in accordance with the provisions of Section 3.02(c) of this Agreement, the Delta Note is not issued, then the Issuance Date shall be deemed to be the date that is the date on which the Delta Note Value is reduced to $0.00.

"New Indenture" means the indenture governing the Delta Note, which shall be in form and substance substantially similar to the form attached hereto as Exhibit E.

"New Lease" means the Lease Agreement dated as of the Closing Date and effective as of January 19, 2006, between KCAB and Delta, which shall be in form and substance substantially similar to the form attached hereto as Exhibit F, and any and all modifications, alterations, amendments, supplements and extensions thereof hereafter made in accordance with the provisions thereof.

"New M&O Agreement" means the Maintenance and Operations Services Agreement dated as of the Closing Date and effective as of January 1, 2007 between KCAB and Delta and any and all modifications, alterations, amendments, replacements, supplements and extensions thereof hereafter made in

accordance with the provisions thereof, which shall be in form and substance substantially similar to the form attached hereto as <u>Exhibit G</u>.

"<u>Plan</u>" means the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated February 7, 2007, as it may be amended, to the extent not inconsistent with the terms of this Agreement.

"<u>Rejection Dates</u>" means the rejection dates set forth in Exhibit A hereto on which the Rejected Agreements shall be deemed rejected.

"<u>Released Claims</u>" has the meaning assigned to it in Section 3.02(f) of this Agreement.

"<u>Releasing Parties</u>" has the meaning assigned to it in Section 3.02(f) of this Agreement.

"<u>Settlement Materials</u>" has the meaning assigned in Section 6.01(a)(i) of this Agreement.

"<u>Settlement Motion</u>" means the motion to be filed by Delta pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Sections 363 and 365 for an order authorizing, *inter alia*, entry into this Agreement with KCAB and the Bond Trustee which shall be in form and substance substantially similar to the form attached hereto as <u>Exhibit H.</u>

"<u>Settlement Order</u>" means a Final order entered in the form attached hereto as <u>Exhibit H</u> or in such form as may otherwise be agreed by the Parties.

"<u>Tax Certificate</u>" shall mean the Company's Tax Certificate and Compliance Agreement, dated as of February 27, 1992, executed by Delta with respect to the 1992 Bonds.


ARTICLE 3
SETTLEMENT CONSIDERATION AND COMPROMISE

Section 3.01. *Settlement and Compromise.*  Subject to and expressly conditioned upon (i) the entry by the Bankruptcy Court of the Settlement Order approving this Agreement as provided in Article 4, (ii) the confirmation of the Plan, and (iii) the occurrence of the Effective Date, this Agreement settles and resolves all disputes among Delta, KCAB, the Bond Trustee, and the 1992 Bondholders with respect to the Rejection Motion and any causes of action, claims, claim for damages or other relief resulting from, related to, or arising out of (a) the Rejected Agreements, including the rejection thereof, (b) the 1992 Bond Agreements, and (c) the 1992 Bond Facilities, including Delta's prior and continued occupancy thereof.  Except as the Parties may otherwise agree, all

provisions of this Agreement are essential, non-severable terms of this Agreement and except as the parties to the agreements that are exhibits hereto may otherwise agree, all provisions of such agreements are essential, non-severable terms of this Agreement.

Section 3.02.  *Settlement Consideration.*

(a)  *New Lease and Certain Implementing Agreements.*  On the Closing Date, Delta and KCAB shall enter into the New Lease and the other Implementing Agreements to which they are to be a party.  Delta agrees that the New Lease is a lease of nonresidential real property as contemplated by Section 365 of the Bankruptcy Code and Delta hereby waives any right or ability it may have to recharacterize the New Lease as a financing in any future bankruptcy case.

(b)  *Payments Made Prior to the Issuance Date.*  Prior to the Issuance Date, Delta shall continue to make monthly payments in accordance with the terms of the Forbearance Agreement.  KCAB and the Bond Trustee acknowledge and agree that Delta has made all such monthly payments due through the date hereof.  It is further agreed that:

(i)  The term of the Forbearance Period (as defined in the Forbearance Agreement) shall be extended until the earlier of: (a) the Issuance Date; or (b) the termination of this Agreement as set forth in Section 4.05 hereof.

(ii)  All payments made by Delta under the Forbearance Agreement prior to the Issuance Date shall be in full satisfaction of Delta's payment obligations under the Forbearance Agreement, and the Parties hereto agree not to terminate the Forbearance Period so long as Delta continues to make payments in accordance with the terms of the Forbearance Agreement.  All payments made under the Forbearance Agreement shall not be subject to offset, recoupment, deduction, counterclaim or objection, of any kind or nature, by any party.  In the event the Settlement Motion is denied and the Settlement Order is not entered, if the Forbearance Period is terminated by any party thereto, then Delta shall be entitled to the benefit of the cure provisions set forth in Paragraph 5 of the Forbearance Agreement.

(iii)  The Parties agree that immediately upon the Issuance Date the Forbearance Agreement shall be deemed terminated and no longer of any force or effect.

(c)  *Delta Note.*  On the Closing Date, Delta and the Bond Trustee, as trustee under the New Indenture, shall execute the New Indenture and the other Implementing Agreements to which they are to be a party.  Delta shall have the

option, at its sole discretion, to delay the issuance of the Delta Note for up to fifteen (15) business days after the Closing Date.[1]

      (i)      The Delta Note, unless the Delta Note Value is reduced to $0.00 prior thereto, shall be issued in the principal amount equal to the Delta Note Value on the Issuance Date, shall be payable in equal monthly installments, with the last installment being due on December 1, 2015. The terms and conditions of the Delta Note shall be as set forth in the Delta Note and the New Indenture.

      (ii)      The Delta Note, unless the Delta Note Value is reduced to $0.00, shall be issued under, and in accordance with, the Plan. Pursuant to 11 U.S.C. §§ 1145 and 1146, the Delta Note shall qualify for exemption from any Federal or State law requiring registration for offer or sale of a security and shall be exempt from any stamp or similar tax.

      (iii)      From and after the Closing Date and prior to the issuance of the Delta Note, Delta shall have the option to pay, in whole or in part, the Delta Note Value on the date of such payment in cash to the Bond Trustee. If Delta makes one or more such cash payments during such 15 business day period, the Delta Note Value shall be deemed to ratably decrease and, notwithstanding anything to the contrary in this Agreement or in the Implementing Agreements, Delta's obligation to issue the Delta Note shall be in the principal amount of the then applicable Delta Note Value after giving effect to such cash payment(s). If, following such cash payments, the Delta Note Value is reduced to $0.00, then, notwithstanding anything to the contrary contained in this Agreement or in the Implementing Agreements, Delta shall have no obligation to issue the Delta Note and the Delta Note and the New Indenture shall become automatically null and void.

      (d)    *Bankruptcy Claim.* Upon Closing, but effective as of the Effective Date, the Bond Trustee, as trustee and on behalf of all of the 1992 Bondholders, shall have an allowed pre-petition, non-priority, unsecured claim against Delta in its Bankruptcy Case in the amount of $260,000,000, not subject to offset, recoupment, deduction, counterclaim or objection, of any kind or nature, by any party (the "Bankruptcy Claim"), which allowed Bankruptcy Claim shall be treated at least as favorably as any unsecured claim in Delta Class 4 under the Plan. Except as set forth in the immediately preceding sentence and except with respect

---

[1] The Delta Note and the payments of amounts under Section 3.02(c)(iii) of this Agreement are provided in consideration of (i) the consent to certain relief sought in the Rejection Motion as modified by the terms of this Agreement, and (ii) the release of all claims with respect to Delta's post-rejection occupancy of the 1992 Bond Facilities, including any purported rights to receive relet proceeds.

to the Delta Note and the Bond Trustee's rights set forth in this Agreement and the Implementing Agreements to which the Bond Trustee is a party, the Bond Trustee, as trustee, and the 1992 Bondholders, shall not have any other claim in the Bankruptcy Cases with regard to the 1992 Bond Agreements whatsoever, including without limitation any bankruptcy or other claim of any type or amount with respect to the 1992 Bond Agreements or under any other agreement or law with respect to the 1992 Bonds or 1992 Bond Facilities, except as set forth in this Agreement. Notwithstanding anything to the contrary in the Plan, the appropriate initial distribution under the Plan with respect to the Bankruptcy Claim shall be made to the Bond Trustee, after or at Closing, on the Initial Distribution Date, as defined in the Plan.

(e)     *Full Satisfaction.* The Delta Note, together with the Bankruptcy Claim and the other consideration provided in this Agreement shall be deemed to fully satisfy any and all past, present, and/or future obligations or liabilities of Delta to the Bond Trustee and/or the 1992 Bondholders with respect to the 1992 Bond Agreements and Delta's continued use and/or occupancy of all, or any part of, the 1992 Bond Facilities.

(f)     *Releases.* Effective as of the Closing, each of Delta, KCAB, the Bond Trustee, and each 1992 Bondholder shall, as set forth in the Settlement Order, be deemed, on behalf of itself, and each of its present and former parents, subsidiaries, affiliates, divisions, successors, transferees, partners, principals, officers, directors, employees, agents, attorneys, and assigns (collectively, the "**Releasing Parties**"), to have forever released, discharged, waived and abandoned any and all claims, whether direct or representative, (including, but not limited to, any claim for indemnification and any avoidance or preference action brought by or on behalf of Delta or its creditors), rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on federal, state, local statutory or common law, rule or regulation, by contract or in equity, and whether directly, representatively or in any other capacity, that it may have, as of the Closing Date, against one or the other, or their respective properties or assets, arising from, in any way based upon or in any way related to the following:  the negotiation of or entry into this Agreement and/or the Implementing Agreements; the 1992 Bond Agreements; the 1992 Bond Facilities; any payments received from Delta under the 1992 Bond Agreements prior to the Bankruptcy; and/or the Forbearance Agreement, but excluding any claims brought under or to enforce the terms of this Agreement, the New Lease, the New Indenture, the Delta Note, the other Implementing Agreements or any indemnification claim of the Bond Trustee against any 1992 Bondholder (collectively, the "**Released Claims**").

(g)     *Rejection Motion and Rejected Agreements.* The objections of the Bond Trustee and KCAB to the Rejection Motion shall be deemed withdrawn and the Rejection Motion shall be approved by the Bankruptcy Court as set forth in

Section 4.02 below.  Further, the parties agree that the Rejected Agreements and any other 1992 Bond Agreement, with the exception of the 1992 Bond Indenture, shall be deemed automatically terminated and cancelled by the parties thereto as of the Closing Date.

(h)    *The 1992 Bond Indenture.*  Notwithstanding the foregoing or anything else in this Agreement or the Plan to the contrary, the 1992 Bond Indenture shall continue in effect solely for the purposes of:  (a) allowing the Bond Trustee to apply funds and make distributions as provided for in the 1992 Bond Indenture with respect to distributions relating to the consideration provided under this Agreement related to the Bankruptcy Claim, pre-payment of all or part of the Delta Note obligation, funds held by the Bond Trustee under the 1992 Bond Indenture, and to perform such other necessary administrative functions with respect thereto, (b) permitting the Bond Trustee to maintain and assert any right to any charging liens it may have against the trust corpus, as such trust corpus may be limited by the terms of this Agreement, for its fees, costs, expenses (including, without limitation, attorneys' fees) and indemnification under the 1992 Bond Indenture; and (c) continuing in effect the provisions therein that provide protection to the Bond Trustee with respect to the 1992 Bondholders; provided that this provision (c) shall not be construed as providing for the survival of any claim against Delta or KCAB that is released pursuant to this Agreement.  Except as set forth in this subparagraph (h) (and in all events as to both Delta and KCAB), the 1992 Bond Indenture shall be deemed terminated and cancelled as of the Closing Date.

(i)    *The Guaranty and Tax Certificate.*  It is agreed among the Parties that the Guaranty and Tax Certificate are pre-petition obligations of Delta that, as such, shall be fully discharged and terminated upon the Closing in connection with Delta's exit from bankruptcy.  Upon the Closing, neither KCAB, the Bond Trustee nor the 1992 Bondholders shall be allowed any claim in the Bankruptcy Cases with respect to the Guaranty or the Tax Certificate, except as set forth in this Agreement.

(j)    *Fees.*  Within 30 days of the date on which Delta receives invoices for actual fees, costs and expenses (provided that the Settlement Order has been entered by the Bankruptcy Court), Delta shall reimburse the Bond Trustee an amount equal to the actual and reasonable fees and expenses of the Bond Trustee, as trustee for the 1992 Bonds, including the fees and expenses of the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Wyatt, Tarrant & Combs, LLP, Kaye Scholer LLP and SH&E International Air Transport Consultancy, incurred in connection with the 1992 Bonds, the settlement contemplated in this Agreement, and the Bankruptcy Cases, provided that such reimbursement, in the aggregate, shall not exceed $2,000,000.

(k)    *Assumption of Airport Use Agreement.*  As of the Closing Date, Delta will be deemed to have assumed the Airport Use Agreement, including

prepetition and postpetition obligations pursuant thereto, and shall make a payment of of $52,321.12 in satisfaction of prepetition amounts owed under such agreement.

## ARTICLE 4
### SETTLEMENT ORDER

Section 4.01. *Contingency.* With the exception of the obligations set forth in Sections 3.02(b) and 4.03, which shall be immediately binding upon the Parties' execution of this Agreement, the effectiveness of this Agreement shall be conditioned upon the entry by the Bankruptcy Court having jurisdiction over the Bankruptcy Cases of the Settlement Order, and the Settlement Order becoming Final.

Section 4.02. *Settlement Order Findings.* Unless otherwise agreed in writing by the Parties, the Settlement Order shall, at a minimum, approve of the terms of this Agreement and the consideration therefor set forth in Section 3.02 above, and shall contain, in substance, the following findings and/or orders:

(a)  The manner in which notice of the Settlement Motion was provided to all parties entitled to such notice, including the 1992 Bondholders, is adequate, appropriate, reasonable and sufficient for all purposes and is approved;

(b)  Notice of the Settlement Motion and proposed Settlement Order was issued at least thirty (30) days prior to the objection deadline for the Settlement Motion as provided for in this Agreement, and the Settlement Order is and shall be binding on Delta, KCAB, the Bond Trustee, and any and all predecessors or successors thereto, and the 1992 Bondholders;

(c)  The Settlement Order and the Settlement Agreement incorporated therein is and shall be binding on Delta, KCAB, the Bond Trustee and the 1992 Bondholders, and each of their predecessors or successors.

(d)  The execution and delivery of this Agreement by the Parties and the settlement and compromises set forth in this Agreement are approved;

(e)  Each of Parties hereto is directed and authorized to enter into each of the Implementing Agreements to which it is a party;

(f)  As of the Closing Date, the Rejected Agreements shall be deemed rejected as of the Rejection Dates and the parties to each of the respective Rejected Agreements and other 1992 Bond Agreements agree that such agreements shall be deemed automatically terminated and cancelled as of the Closing Date, with the exception of the 1992 Trust Indenture;

(g)    The 1992 Trust Indenture shall remain in effect solely as set forth in Section 3.02(h) hereof;

(h)    The Guaranty and Tax Certificate are pre-petition obligations of Delta that, as such, upon the Closing shall be fully discharged and terminated in connection with Delta's exit from bankruptcy.  Neither KCAB, the Bond Trustee nor the 1992 Bondholders shall be allowed any claim in the Bankruptcy Cases, other than the Bankruptcy Claim, with respect to the Guaranty or the Tax Certificate;

(i)    The Bond Trustee, as trustee and on behalf of the 1992 Bondholders, shall have, upon Closing, but effective as of the Effective Date, an allowed claim in the Bankruptcy Case, as set forth in Section 3.02(d) above;

(j)    Delta is authorized to pay fees consistent with the provisions of Section 3.02(j) above;

(k)    Delta is authorized to issue the Delta Note pursuant to the Plan.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of the Delta Note is exempt from registration under the Securities Act.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of the Delta Notes shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, FAA filing or recording fee or other similar tax or governmental assessment in the United States.

(l)    The compromises and settlement set forth in this Agreement are fair and reasonable to, and are in the best interest of, Delta and its creditors, KCAB, the Bond Trustee, and the 1992 Bondholders, and that, in entering into this Agreement, Delta, KCAB the Bond Trustee and those 1992 Bondholders irrevocably directing the Bond Trustee to enter into this Agreement have exercised their rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances;

(m)    The mutual releases contained in this Agreement shall be effective as of the Closing;

(n)    The Settlement Order shall be binding on the Bond Trustee solely in its capacity as a trustee with respect to the 1992 Bonds, and not in any other capacity, including, but not limited to, its capacity as a holder of any claim against Delta and/or its affiliates unrelated to the 1992 Bond Agreements or as the trustee with respect to any other bonds related to Delta and/or its affiliates;

(o)    The Settlement Order shall be binding on each 1992 Bondholder solely in such bondholder's capacity as a 1992 Bondholder, and not in any other

capacity, including, but not limited to, its capacity as the holder of any other claim against Delta and/or its affiliates unrelated to the 1992 Bond Agreements or the holder of any bond other than the 1992 Bonds related to Delta or its affiliates;

(p)     The Bond Trustee shall be entitled in its sole discretion to establish one or more record dates for the 1992 Bondholders for the purpose distributions on the 1992 Bonds including distributions on the Bankruptcy Claim; and

(q)     Upon the Closing, each of the Releasing Parties shall be deemed to have released and to be permanently enjoined from asserting, pursuing or prosecuting in any manner and in any forum any and all Released Claims against any of the Releasing Parties, including, but not limited to, claims arising from the negotiation of or entry into this Agreement and/or the Implementing Agreements.

Section 4.03.  *Support for Settlement.*  From and after the date of the execution of this Agreement, (i) each of Delta, the Bond Trustee and KCAB shall support the settlement and compromise as set forth in this Agreement and (ii) KCAB and the Bond Trustee based on their own judgment, the advice of their professionals and, with respect to the Bond Trustee, the irrevocable direction of a majority of the 1992 Bondholders, shall recommend acceptance of the settlement and compromise set forth in this Agreement, including to the 1992 Bondholders and the Bankruptcy Court, as a reasonable compromise and resolution of the Rejection Motion and all claims and matters related to the 1992 Bond Agreements and Delta's continued use and/or occupancy of all, or any part of, the 1992 Bond Facilities (such recommendations may, in the sole discretion of the Bond Trustee, include references to any directions received prior to the date hereof from any of the 1992 Bondholders).  It shall be the obligation of the Bond Trustee and Delta to provide notice of the Settlement Motion to the Bondholders in the manner set forth in Section 6.01.

Section 4.04.  *Plan of Reorganization.*  The Plan, as filed and when coupled with the Settlement Order, is acceptable to the Parties and shall be deemed to incorporate this Agreement.  Delta agrees that it shall not propose or support any amendment to the Plan that eliminates, amends or alters in any way this Agreement and/or the Settlement Order.

Section 4.05  *Denial of Settlement Motion.*  If the Bankruptcy Court shall (i) deny the Settlement Motion or refuse to enter the Settlement Order in a form acceptable to the Parties, or (ii) if the Settlement Order fails to become Final by July 15, 2007, or is reversed or modified on appeal, then any of the Parties may terminate this Agreement by providing three (3) business days written notice of termination to the other Parties and without need for further action, whereupon this Agreement shall be null and void and all Parties shall be released of their obligations hereunder and shall be returned to their respective legal positions as of the time immediately prior to execution of this Agreement except to the extent expressly provided for in Section 3.02(b).  Provided that the Parties have used

good faith efforts to seek the entry of such Settlement Order and to support it on appeal, if any, then no Party shall have any liability to any other Party, and shall be deemed to have waived the right to assert any claim on account of the inability to obtain the entry of such Settlement Order.

## ARTICLE 5
### CLOSING

The Closing shall occur on the Closing Date.

## ARTICLE 6
### ADDITIONAL PROVISIONS

Section 6.01. *Bondholder Notice.* (a)  The Bond Trustee agrees to and shall provide notice to the 1992 Bondholders at least thirty (30) days prior to the objection deadline for the Settlement Motion, with the exception of publication notice, which shall be made in accordance with subsection (ii) below, in the following manner:

(i)     Mailing by U.S. Mail, postage prepaid, or sending by electronic mail to each 1992 Bondholder that has provided such contact information to the Bond Trustee of a package including copies of the Bond Trustee's notice to Bondholders, in the form attached hereto as Exhibit I, this Agreement (without Exhibits), the Settlement Motion and the proposed Settlement Order with the deadlines for objections to the Settlement Motion and a notice that the Exhibits to this Agreement (such exhibits, together with the Settlement Motion and proposed Settlement Order, the "**Settlement Materials**") will be posted on the website of the Bond Trustee related to the 1992 Bonds prominently displayed in the notice; and

(ii)     publication of a notice to 1992 Bondholders, in the form attached hereto as Exhibit J, in the following publications on or about March 16, 2007:

Publications

Wall Street Journal, National Edition
Cincinnati Enquirer

(iii)     posting of the notice to 1992 Bondholders, attached as Exhibit H, on the website of the Bond Trustee related to the 1992 Bonds, together with copies of the Settlement Materials; and

(iv)    mail by U.S. Mail or other appropriate means to the following Nationally Recognized Municipal Securities Information Repositories ("NRMSIR"):

**Bloomberg Municipal Repository**
100 Business Park Drive
Skillman, NJ 08558
Phone: (609) 279-3225
Fax: (609) 279-5962

**DPC Data Inc.**
One Executive Drive
Fort Lee, NJ 07024
Phone: (201) 346-0701
Fax: (201) 947-0107

**Standard & Poor's Securities Evaluations, Inc.**
55 Water Street
45th Floor
New York, NY 10041
Phone: (212) 438-4595
Fax: (212) 438-3975

**FT Interactive Data**
Attn: NRMSIR
100 William Street, 15th Floor
New York, NY 10038
Phone: (212) 771-6999
Fax: (212) 771-7390

(b)    Delta agrees to and shall:

(i)    serve notice of the Settlement Motion in accordance with the Case Management Order;

(ii)    deliver by U.S. Mail the Settlement Materials to record holders of the 1992 Bonds including, without limitation, brokers, dealers, banks and other agents or nominees (collectively, the "Nominees") together with instructions to the Nominees to forward the Settlement Materials to the beneficial holders of the 1992 Bonds within three (3) business days of the filing of the Settlement Motion and agreeing that Delta will reimburse the Nominees for the Nominees' reasonable and customary out-of-pocket expenses associated with the distribution of the Settlement Materials;

(iii)    post the Settlement Materials on the Delta Air Lines, Inc. Restructuring Information website, available at http://www.deltadocket.com; and

(iv)    file a report on Form 8-K with the Securities and Exchange Commission, which report shall indicate that the Settlement Materials are available at http://www.deltadocket.com, at least thirty (30) days prior to the objection deadline for the Settlement Motion.

Section 6.02. *Representations*. (a) The Bond Trustee represents and warrants as of the Closing Date that it has been duly and irrevocably authorized to execute and deliver this Agreement and the other agreements contemplated by this Agreement to which it is or will be a party, that the Bond Trustee has been directed by a majority in aggregate principal amount of the 1992 Bonds to enter into this Agreement and the other agreements contemplated by this Agreement to which it is or will be a party, and that, assuming proper authorization, execution

and delivery by the designated counterparties to such agreements, that based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other agreements contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of the Bond Trustee, enforceable against the Bond Trustee in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors and by equitable principles, including, but not limited to, judicial discretion in appropriate cases. The Bond Trustee further represents and warrants that, as of the date hereof and the Closing Date, it is (in its capacity as the Bond Trustee) the lawful owner of all right, title and interest in and to all of the claims and other interests contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person in any manner, including by way of operation of law or otherwise.

(b)    KCAB represents and warrants as of the Closing Date that it has been duly authorized to execute and deliver this Agreement and the other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement shall constitute, and the other agreements contemplated by this Agreement to which it is or shall be a party shall constitute, the legal, valid and binding obligation of KCAB, enforceable against KCAB in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors and by equitable principles, including, but not limited to, judicial discretion in appropriate cases. KCAB further represents and warrants that, as of the date hereof and the Closing Date, it is the sole and lawful owner of all right, title and interest in and to all of the claims and other interests contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person, including any of its affiliates, in any manner, including by way of operation of law or otherwise.

(c)    Delta represents and warrants as of the Closing Date to the Bond Trustee and KCAB that it has been duly authorized to execute this Agreement and the other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other agreements contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of Delta, enforceable against Delta in accordance with its terms except

as the enforceability thereof may be limited, in proceedings other than the present Bankruptcy Cases, by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors and by equitable principles, including, but not limited to, judicial discretion in appropriate cases. Delta further represents and warrants to the Bond Trustee and KCAB that it is the sole and lawful owner of all right, title and interest in and to all of the claims contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person in any manner, including by way of operation of law or otherwise.

ARTICLE 7
MISCELLANEOUS

Section 7.01. *Notices.* All notices and other communications under this Agreement, excluding any notice required under Section 6.01 of this Agreement, which shall be given as set forth therein, shall be deemed duly given (a) when delivered personally or by prepaid overnight courier, with a record of receipt, (b) when received, if mailed by certified mail, return receipt requested, or (c) the day of transmission, if sent by facsimile to the following facsimile numbers during regular business hours or the day after transmission, if sent after regular business hours (with a copy promptly sent by prepaid overnight courier with record of receipt or by certified mail, return receipt requested), to the Parties at the following addresses or facsimile numbers (or to such other address or facsimile number as a Party may have specified by notice given to the other Parties pursuant to this provision):

In the case of Delta:

> Delta Air Lines, Inc.
> Admin. Bldg. – Law Department 981
> 1030 Delta Boulevard
> Atlanta, GA 30354-1989
> Attention: Joe Zang
> Fax: 404-715-2233

> Delta Air Lines, Inc.
> Admin. Bldg. – Department 877
> 1030 Delta Boulevard
> Atlanta, GA 30354-1989
> Attention: Jay Turney
> Fax: 404-714-9335

With a copy to:

    Davis Polk & Wardwell
    450 Lexington Avenue
    New York, NY 10017
    Attention: James I. McClammy
    Fax: 212-450-3800


In the case of KCAB:

    Kenton County Airport Board
    P.O. Box 752000
    Cincinnati, OH 45275-2000
    Attention: Sheila R. Hammons, Secretary/Treasurer
    Fax: 859-767-3269

With a copy to:

    Ziegler & Schneider, P.S.C.
    541 Buttermilk Pike, Suite 500
    Covington, KY 41017-5710
    Attention: Wilbert L. Ziegler
    Fax: 859-426-1350

In the case of the Bond Trustee:

    UMB Bank, N.A.
    Corporate Trust Division
    2401 Grand Boulevard
    Kansas City, MO 64108
    Attention: Anthony Hawkins
    Fax: 816-860-3029

With a copy to:

    Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
    One Financial Center
    Boston MA 02111
    Attention: William W. Kannel
          Daniel S. Bleck
    Fax: 617-542-2241

    Section 7.02. *No Consequential or Punitive Damages.* The Parties shall only be liable hereunder for direct or compensatory damages. No Party (or its affiliates) shall, under any circumstance, be liable to any other Party (or its

affiliates) for any indirect, consequential, exemplary, special, incidental, punitive or moral damages or lost revenue, lost income, lost profits, cost of capital or loss of business reputation or opportunity claimed by such other Party under the terms of or due to any breach of this Agreement.

Section 7.03. *Further Assurances.* Each of the Parties hereto agrees to promptly execute such additional documents or instruments – to the extent such additional documents or instruments do not conflict with or are not inconsistent with the terms of this Agreement, the New Lease, the New M&O Agreement, the Bulk Storage Facilities Lease, the Delta Note or the New Indenture – as are necessary or desirable to evidence the settlements, releases and other transactions set forth in this Agreement. From time to time, as and when requested by a party hereto, any other party hereto shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other action (subject to any limitations set forth in this Agreement), as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Agreement, all at the sole cost and expense of the requesting party.

Section 7.04. *Disputes.* As of the Closing Date, except as otherwise provided in this Agreement, each Party agrees that it shall not commence or proceed with any litigation against any other Party related to the subject matter of this Agreement, the 1992 Bond Facilities, the 1992 Bonds, or the 1992 Bond Agreements nor shall it take any action inconsistent with the terms of this Agreement. The Parties hereto agree that the jurisdiction of Bankruptcy Court shall be concurrent with the jurisdiction of such other courts as shall have jurisdiction to hear claims arising from the enforcement of this Agreement, the other agreements contemplated herein, and the Settlement Order.

Section 7.05. *No Concessions or Admissions.* It is expressly understood that no party to this Agreement concedes any liability of any kind whatsoever and that this settlement is made as a compromise and voluntary agreement in order to dispose of matters of contention and possible contention between the Parties hereto. All negotiations, proceedings, agreements, documents and statements made in connection with this Agreement shall not be deemed or construed to be evidence or an admission by any party of any act, matter or proposition and shall not be used in any manner or for any purpose in any action or proceeding.

Section 7.06. *No Inducement; Construction.* Each of the Parties hereby states to the others that except as expressly set forth herein, no one has made any representations of any kind to induce them to enter into this Agreement, and that it was entered into freely because they believed it to be in their best interests. This Agreement shall be deemed drafted by all Parties hereto and any ambiguity herein shall not be construed against any party solely by virtue of its participation in the drafting process. Each of the Parties has had advice of counsel of its own choosing in connection with this Agreement.

Section 7.07. *Amendment.* No variation or amendment of this Agreement shall be valid unless it is in writing and signed by or on behalf of all Parties to this Agreement.

Section 7.08. *Waivers.* No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

Section 7.09. *Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

Section 7.10. *Governing Law.* This Agreement shall be interpreted, construed and governed according to the laws of the State of New York without regard to its conflicts of laws rules. The New Lease and the other Implementing Agreements shall be interpreted, construed and governed as set forth in such agreements.

Section 7.11. *Acknowledgments.* The Parties acknowledge that this Agreement is being entered into in good faith, is the product of arm's-length negotiations, and that good and sufficient consideration has been provided for all of the obligations set forth herein.

Section 7.12. *Binding Effect.* This Agreement shall be binding upon the Parties, their successors, assigns, and/or transferees.

Section 7.13. *Specific Performance.* The Parties acknowledge and agree that a breach of the provisions of this Agreement by any Party would cause irreparable damage to the other Parties and that such other Parties would not have an adequate remedy at law for such damage. Therefore, the obligations of the Parties and their respective affiliates set forth in this Agreement shall be enforceable by a decree of specific performance issued by any court of competent jurisdiction, and appropriate injunctive relief may be applied for and granted in connection therewith. Such remedies shall, however, be cumulative and not exclusive and shall be in addition to any other remedies that the Parties may have under this Agreement or otherwise.

Section 7.14. *Acceptance of Facsimile Signatures.* Delivery of an executed signature page of this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart hereof.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective authorized officers as of the date first written above.

**DELTA AIR LINES, INC.**                          **KENTON COUNTY AIRPORT BOARD**

By: _____                     By: _____
Title:                                            Title:

Date: _____ ___, 2007

                                                  Attested by:_____
                                                  Title

                                                  Date: _____ ___, 2007


- and -


**UMB BANK, N.A., as trustee**

By: _____
Title:

Date: _____ ___, 2007