IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEMPER INVESTORS LIFE INSURANCE
COMPANY,
an Illinois corporation,
individually and as Representative
of a Class of Those Similarly
Situated,

                    Plaintiff,

        v.

LAS COLINAS CORPORATION, a Texas
corporation; SOUTHLAND FINANCIAL
CORPORATION, a Delaware
corporation; BEN H. CARPENTER;
and JOHN W. CARPENTER III,

                    Defendants.

**DOCKETED**

JUN 2 9 1989

No. 88 C 9152

Hon. M. Shadur

## FINDINGS OF FACT,
## CONCLUSIONS OF LAW AND ORDER

THIS CAUSE COMES on the Complaint of Kemper Investors Life Insurance

Company, individually and as representative of a class of those similarly situated

(hereinafter referred to as "Kemper" or "Class Representative") and on the Joint Motion

for Approval of Compromise and Settlement of Disputes (the "Joint Motion"), for a

declaratory judgment as to the rights of the Class with regard to a proposed resolution of

a defaulted Note Issue between and among Las Colinas and the Class of Noteholders, as

described in the Joint Motion, and below. Kemper, as Class Representative, originally

instituted this action to obtain payment on the defaulted Notes and generally sought

relief in the form of payment on the defaulted Notes, damages for certain actions taken

by the Defendants which the Complaint alleges adversely affected the interests of the

Class, and the imposition of equitable liens and constructive trusts on certain real



property, legal title to which is held by Las Colinas Corporation, a Defendant herein. Thereafter, as the result of extensive negotiations, a settlement was reached between the parties on the defaulted Notes. It is the opinion of this Court after examining the relevant pleadings, reviewing the exhibits thereto, and hearing and considering the arguments of counsel and interested parties, that it is just, proper and appropriate to enter an order giving approval of the fairness of the terms of the Proposed Settlement, described below, and authorizing and directing the parties to consummate the Proposed Settlement thereby providing a method of payment to the Noteholders for the defaulted Notes they hold. Accordingly, this Court, being fully advised in the premises and having examined and considered all of said matters, does hereby find and conclude that:

## FINDINGS OF FACT

1.    Plaintiff Kemper Investors Life Insurance Company ("Kemper") is a corporation incorporated under the laws of the State of Illinois having its principal place of business in Chicago, Illinois.  Pursuant to 28 U.S.C. §1332(c), Kemper is a citizen of Illinois.

2.    Defendant Las Colinas Corporation ("Las Colinas") is a corporation incorporated under the laws of the State of Texas, having its principal place of business in Irving, Texas.  For the purposes of 28 U.S.C. §1332(c), Las Colinas is a citizen of Texas.

3.    Defendant Southland Financial Corporation ("Southland") is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Irving, Texas.  For the purposes of 28 U.S.C. §1332(c), Southland is a citizen of Delaware and Texas.

4.    Defendant Ben H. Carpenter ("Ben Carpenter") is a citizen of the State of Texas.

-2-

5.     Defendant John W. Carpenter III ("John Carpenter") is a citizen of the State of Texas.

6.     Jurisdiction of this action is based upon Section 322(b) of the Trust Indenture Act of 1939 (the "TIA"), 15 U.S.C. §77vvv, and involves a federal question under 28 U.S.C. §1331, in that this is an action to, inter alia, enforce liabilities and duties created by the TIA, including but not limited to Section 314(c) of the TIA, 15 U.S.C. §§77nnn(c).

7.     Jurisdiction in this action is also based upon 28 U.S.C. §1332 in that there is complete diversity of citizenship between Kemper, as Plaintiff, and Las Colinas, Southland, Ben Carpenter and John Carpenter, as Defendants, and the amount in controversy exceeds $10,000, exclusive of interest and costs.

8.     Jurisdiction of this action is in accordance with 28 U.S.C. §§2201 and 2202, Ill. Rev. Stat. ch. 17, §1665, and Ill. Rev. Stat. ch. 110, §2-701, in that the Complaint in this action and the Joint Motion seek a declaratory judgment as to the rights of the Noteholders, described below, with respect to a defaulted Note Issue and the proposed resolution thereof, as more fully described below.

9.     Jurisdiction of this action, to the extent it is not based on statutory grants of jurisdiction based upon the presence of diversity of citizenship, federal question or declaratory judgment, is also based upon principles of pendent and ancillary jurisdiction, in that those causes of action alleged in the Complaint which arise under state law arise out of a common nucleus of operative facts with those causes of action alleged in the Complaint which arise under federal law.

10.    This Court has in personam jurisdiction over the Defendants, Las Colinas, Southland, Ben Carpenter and John Carpenter, pursuant to Ill. Rev. Stat. ch. 110, §2-209 (West Supp. 1988), in that each of the Defendants has transacted business within this State.

-3-

11.   Venue for this action is proper in this District pursuant to Section 322(b) of the TIA, 15 U.S.C. §77vvv(b), in that sales of the Notes, described below, occurred in this District, and in that, because of the mailings, solicitations, sales, telephone calls, meetings, and negotiations described in the Complaint, the Defendants individually and through agents, have transacted business within this District.

12.   Venue for this action is further proper in this District pursuant to 28 U.S.C. §1391, in that the claims of Kemper occurred in part in this District, the claims of Kemper arose in this District, and the Defendants have transacted business in this District.

13.   Kemper is one of the holders of those certain 12-1/2% First Mortgage Notes due September 1, 1992 (the "Notes) issued in the aggregate principal amount of $200,000,000 pursuant to an Indenture dated as of September 1, 1985 (the "Indenture"), by and between Las Colinas and MBank Dallas, National Association, as Trustee ("MBank") (MBank, together with its successor in interest, MTrust Corp., National Association ("MTrust"), is hereinafter referred to as the "Indenture Trustee"). A true and correct copy of the Indenture, and Exhibit A thereto, is attached to the Complaint as Exhibit 1.

14.   Kemper is a beneficial owner of Notes in the principal amount in excess of $25,000,000. Kemper and its affiliates and the mutual funds which it and its affiliates manage beneficially own Notes in the aggregate principal amount in excess of $61,000,000.

15.   Section 5.01 of the Indenture requires Las Colinas to "pay the principal of and interest on the Securities [Notes] on the dates and in the manner provided in the Securities [Notes]." The Notes, the form of which is attached as Exhibit A to the Indenture, require Las Colinas to make interest payments of 12-1/2% per annum to the Noteholders on March 1 and September 1 of each year. Section 5(a) of

-4-

the Notes requires Las Colinas to redeem $50,000,000 principal amount of the Notes on both September 1, 1990 and September 1, 1991. The Notes further require Las Colinas to pay all outstanding Notes on September 1, 1992.

16. In order to secure its obligations under the Indenture, Las Colinas executed a Deed of Trust, Assignment, Security Agreement and Financing Statement ("Old Deed of Trust"), dated as of September 1, 1985, by and among Las Colinas and David T. Obergfell, Trustee ("Mortgage Trustee"), and the Indenture Trustee as beneficiary. The Old Deed of Trust granted to the Mortgage Trustee, for the ultimate benefit of the Noteholders, a first, valid and perfected security interest in approximately 775 acres of real property in the Las Colinas Project, as that term is defined in the Complaint, together with all improvements thereto and any and all fixtures and personal property located thereon. The Old Deed of Trust was recorded on September 9, 1985 at Volume 85176, Pages 2312-2457 of the Deed Records of Dallas County, Texas. A true and correct copy of the Old Deed of Trust is attached to the Indenture as Exhibit A.

17. The Complaint in this action was filed on October 27, 1982, and alleges, among other things, that: (a) Las Colinas breached certain provisions of the Indenture with regard to the nonpayment of interest and the failure of Las Colinas to provide substitute collateral; (b) that Las Colinas breached its duty to the Noteholders under Section 314(d) of the Trust Indenture Act of 1939; (c) that Las Colinas breached its duty of good faith and fair dealing to the Noteholders; (d) that Las Colinas engaged in fraudulent conduct in dealing with the Indenture Trustee in certain matters relating to the appraisal and substitution of collateral; and (e) that Southland, Ben Carpenter and John Carpenter breached certain fiduciary duties to Las Colinas and the Noteholders and tortiously interfered with the contract between Las Colinas and the Noteholders.

18. The Complaint seeks unspecified damages and seeks to place a constructive trust or equitable liens upon (i) real property in the Las Colinas Project

which the Complaint alleges should have been subjected to the recorded mortgage of the Indenture, and was "Collateral" for the Notes, and (ii) certain loan and sale proceeds relating to such property and certain other property released from the lien of the Indenture, as well as specific performance of the obligations of Las Colinas to substitute collateral for the Notes and other declaratory and injunctive relief.

19.    On October 31, 1988, Kemper filed a notice of "lis pendens" (the "Lis Pendens Notice"). The Lis Pendens Notice states that the filing was made in order to give constructive notice to prospective purchasers of any land in the Las Colinas Project or potential lenders that (i) Kemper purports to have an interest in an aggregate of approximately 880 acres of land in the Las Colinas Project and that (ii) a purchaser or a mortgagee takes such land subject to the outcome of this litigation.

20.    Las Colinas and Kemper have entered into certain stipulations approved by this Court which, while reserving all of Kemper's other rights and the rights of Las Colinas under the Lis Pendens Notice and this action, provided for the release of certain parcels under contract for sale from the Lis Pendens Notice and this action, thus permitting a closing of such sales, provided that the net sales proceeds were put into escrow pending final disposition or settlement of this action.    Pursuant to such stipulations there is approximately $11.7 million subject to an escrow account at LaSalle National Bank, Chicago, Illinois (the "Lis Pendens Escrow Account").

21.    By Order of this Court, dated as of May 12, 1989, (i) this action was certified as a class action pursuant to Rule 23(b)(1)(A), (b)(1)(B) and (b)(2) of the Federal Rules of Civil Procedure, (ii) Kemper was designated as the Class Representative, and (iii) Chapman and Cutler was named as Class Counsel.

22.    On September 1, 1987, and thereafter, Las Colinas failed to make the semi-annual payment of interest due as required under Section 5.01 of the Indenture, and these defaults have continued for thirty days, thereby constituting Events of Default under Section 7.01(1) of the Indenture.

-6-

23.    Under current circumstances, Las Colinas is unable to meet its principal and interest obligations on the Notes when due. Additionally, substantially all of the other creditors of Las Colinas are currently entitled to demand immediate repayment of their indebtedness and to initiate foreclosure proceedings with respect to the land securing their indebtedness. Since June 1988, demand for immediate repayment has been made at various times with respect to an aggregate of approximately $140 million of indebtedness, and approximately 900 acres of land in the Las Colinas Project, as that term is defined in the Complaint, have been posted for foreclosure. Creditors who have posted land for foreclosure and certain other creditors have agreed to postpone foreclosure sales for periods continuing at least until July 4, 1988. Las Colinas intends to request such creditors to postpone these foreclosure sales beyond such dates, although there can be no assurance that such creditors will agree to such postponements if the settlement of this litigation is not approved.

24.    Las Colinas has represented that it has reached an understanding with its other creditors as to a possible debt restructuring of the obligations owed by Las Colinas to those creditors, subject to an appropriate resolution of the defaults presently existing under the Indenture.

25.    Prior to the institution of this action, Las Colinas indicated to the Noteholders, including Kemper, that in the event that an appropriate percentage of the Noteholders accelerated the indebtedness pursuant to Section 7.02 of the Indenture, Las Colinas would not be able to pay the full amount of the accelerated indebtedness and extensive litigation may ensue. In addition, Las Colinas indicated that it might be forced to seek relief under Title 11 of the United States Code ("Bankruptcy Code"). Such litigation or such a case under the Bankruptcy Code involve, without limitation, the determination of the amount, priority and extent of the equitable lien and constructive trust claims asserted by Kemper against certain unencumbered property, legal title to

-7-

which is currently held by Las Colinas (the "Unencumbered Property"), which Kemper asserts should have been subjected to the recorded mortgage of the Indenture, and was "Collateral" for the Notes, and would probably include litigation regarding whether the alleged subordination contained in the Indenture applies to the Unencumbered Property as well as whether such contractual subordination has been waived or is barred by the actions of certain other creditors of Las Colinas.

26.    The parties, taking into account the uncertainties and expense of continued litigation, have agreed to settle all claims that have been or could have been asserted in this action on the terms and conditions set forth in the Joint Motion (the "Proposed Settlement).

27.    For the purposes of the Proposed Settlement, Las Colinas proposes, upon the terms and subject to the conditions set forth in the proposed Prospectus (as contained in Form S-4, dated as of May 23, 1989, and as filed in definitive form with the Securities and Exchange Commission on May 25, 1989, and as sent to all Noteholders by Las Colinas on or about May 25, 1989) (the "Prospectus") as supplemented (the "Prospectus Supplement", dated as of June 7, 1989, and as filed in definitive form with the Securities and Exchange Commission on June 8, 1989, and as sent to all Noteholders by Las Colinas on or about June 8, 1989) pursuant to certain subsequent agreements reached between the parties on or about June 2, 1989, to enter in an exchange offer with the Noteholders.  A true and correct copy of the Prospectus and the Prospectus Supplement were filed with the Court on June 5, 1989 and June 12, 1989, respectively. The settlement generally provides for (i) the exchange for each $1,000 principal amount of the Notes either (a) for up to an aggregate principal amount of $100 million of Notes, $1,000 principal amount of Conduit Mortgage Pass Through Certificates (the "Certificates"), each representing a fractional undivided interest in a trust (the "Trust") into which a Secured Non-Recourse Real Estate Note due June 30, 2009 of Las Colinas

-8-

(the "Master Note") will be deposited, or (b) for up to an aggregate principal amount of $100 million of Notes, $600 in cash (the "Exchange Offer"), and (ii) the payment of the fees and expenses of Kemper incurred due to the defaults on the Notes and the fees and expenses of Kemper to be incurred pursuant to the implementation of the Proposed Settlement, including the fees and expenses of Class Counsel and any and all experts, consultants, and auditors of Kemper. The terms and conditions of the Proposed Settlement consist of (i) the Exchange Offer, (ii) the Notice, and the terms thereof, sent to all Noteholders advising such holders of the proposed settlement of this action, (iii) the Master Note, described herein, (iv) the Intercreditor Agreement, described herein, and (v) all jointly filed pleadings and all documents filed with the Court relating to the implementation of the Proposed Settlement. The most current draft of the agreement governing the Trust (the "Trust Agreement"), which is subject to further negotiations between the parties, was filed with the Court on or about June 27, 1989.

27. Noteholders who validly tender their Notes pursuant to the Exchange Offer shall receive, for each month after March 31, 1989 until the date of acceptance of the Notes for exchange pursuant to the Exchange Offer (the "Closing Date"), either (i) $8.33 of additional Certificates for each $1,000 principal amount of Notes exchanged for Certificates or (ii) $5.00 of additional Certificates for each $1,000 principal amount of Notes exchanged in the case of Notes exchanged for cash, in either event as adjusted on a pro rata basis if such Closing Date is on a date other than the last day of the month (alternatively, the "Additional Certificates").

28. If more than $100 million in aggregate principal amount of Notes is validly tendered (and not properly withdrawn) by Noteholders requesting that such Notes be exchanged for Certificates, such Certificates will be distributed on a pro rata basis to such holders based on the principal amount of Notes validly tendered in exchange for Certificates (and not property withdrawn), and such holders will receive cash ($600 in

-9-

cash for each $1,000 principal amount of Notes) to the extent they do not receive Certificates. If more than $100 million in aggregate principal amount of Notes is validly tendered (and not properly withdrawn) by Noteholders requesting that each $1,000 of such Notes be exchanged for cash, such cash will be distributed on a pro rata basis to such holders based on the principal amount of Notes validly tendered in exchange for cash (and not properly withdrawn), and such holders will receive Certificates ($1,000 in principal amount of Certificates for each $1,000 principal amount of Notes) to the extent they do not receive cash.

30.     The Master Note will be secured by a deed of trust (the "Deed of Trust") that grants the trustee of the Deed of Trust (the "Trustee") a co-first lien on approximately 1,790 net acres of land in the Las Colinas Project (the "1790 Acre Parcel"). The most current draft of the Deed of Trust, which is subject to further negotiations between the parties, was filed with the Court on or about June 27, 1989. The 1790 Acre Parcel will also be subject to a deed of trust that grants a co-first lien in favor of Teachers Insurance and Annuity Association of America ("Teachers") (the "Teachers Deed of Trust"). The Deed of Trust will also grant the Trustee a co-second lien on approximately 390 net acres of land in the Las Colinas Project (the "390 Acre Parcel"), which parcel will be subject to a co-second lien in favor of Teachers and first liens in favor of certain other creditors of Las Colinas (the "Land Lenders"). Upon consummation of the Restructuring, the 390 Acre Parcel will be subject to the liens of the Land Lenders as security for their restructured loans which will in the aggregate equal approximately $91.5 million in principal amount. A form of the Master Note was filed with the Court on or about June 9, 1989.

31.     Pursuant to the Restructuring, as that term is defined in the Prospectus, certain assets of Las Colinas shall be purchased by the Land Partnership, as that term is defined in the Prospectus, assuming the obligations of Las Colinas on a non-

recourse basis under the Master Note as set forth therein. An Intercreditor agreement shall be executed by Teachers, the Trustee and the Land Partnership (the "Intercreditor Agreement") and such Intercreditor Agreement will govern the respective rights of the Trustee and Teachers with respect to the Deed of Trust and other matters relating to the Master Note. A form of the Intercreditor Agreement was filed with the Court on or about June 9, 1989.

32. Las Colinas also proposes to solicit consents to the adoption of certain amendments (the "Indenture/Mortgage Amendments") to (a) the Indenture and (b) the Deed of Trust to eliminate from the Indenture and the Deed of Trust substantially all of the covenants contained therein and certain events of default, including provisions in the Indenture which would otherwise prohibit the transactions contemplated by the Restructuring. The Prospectus contains a detailed description of the Indenture/Mortgage Amendments. The Indenture/Mortgage Amendments are subject to the modifications contained in the Master Note and Intercreditor Agreement which incorporate the recent settlement terms reached by the parties on or before June 2, 1989 as set forth in the Prospectus Supplement filed with the Court on or about June 12, 1989.

33. In connection with the Exchange Offer, Las Colinas is also soliciting acceptances from the Noteholders as well as its other creditors, of a proposed "prepackaged" plan of reorganization (the "Prepackaged Plan") of Las Colinas under Chapter 11 of the United States Bankruptcy Code. The Prospectus contains a detailed description of the Prepackaged Plan. The acceptance of the Exchange Offer, and the effectiveness thereof, is subject to the Notice sent to all Noteholders describing the Proposed Settlement and Court approval of the terms and conditions of the Proposed Settlement since the institution of any bankruptcy proceeding at this time by Las Colinas may adversely affect the rights and interests of the Class and may adversely alter the basic terms and conditions whereby certain of the Noteholders may have accepted the

Exchange Offer. The Notice sent to all Noteholders describing the Proposed Settlement namely assumed, and the Joint Motion specifically stated at Paragraph 24, that Las Colinas, and its successors and assigns, would not seek relief at this time under the federal bankruptcy laws or other similar laws for the relief of debtors.

34.     If the Proposed Settlement becomes an Effective Settlement, as described below, it shall constitute for all holders of the Notes (I) consent to the Indenture/Mortgage Amendments, (ii) the release of Las Colinas and its successors or assigns from any and all claims with respect to or arising out of their investments in the Notes, including, among other things, claims arising under the federal securities law, (iii) waiver of nonpayment defaults under the Indenture and compliance with the provisions under the Indenture regarding notice and other procedures for payments of accrued but unpaid interest to the Noteholders, and (iv) acceptance of the Prepackaged Plan; provided, however, that each of the foregoing is consistent with the terms and conditions of the Proposed Settlement, including without limitation, the receipt by Kemper of adequate assurances reasonably satisfactory to Class Counsel that Las Colinas, and its successors and assigns, will not seek relief under the federal bankruptcy laws or other similar laws for the relief of debtors. The Prospectus contains detailed descriptions of the Indenture/Mortgage Amendments, the Exchange Offer, the Restructuring and the Prepackaged Plan.

35.     If the Proposed Settlement becomes an Effective Settlement the Indenture Trustee and the Class, and their successors and assigns, shall be deemed to have released all rights and claims that have been or might have been brought in this action arising from or relating, directly or indirectly, in any way to their investments in the Notes including without limitation, any subject matter of any allegation in the Complaint, whether any of such claims arise under the federal securities laws, other statutory law or the common law, against any Defendant, their respective subsidiaries or

-12-

affiliates or any of their officers, directors, agents (including, without limitation, any financial advisor to any Defendant), successors or assigns.

36.     The Proposed Settlement shall not be effective and this action shall not be dismissed with prejudice until (i) the consummation of all of the actions contemplated by the Proposed Settlement, the Exchange Offer, the Prospectus, and the Restructuring, by all necessary and appropriate parties and (ii) the receipt by Kemper of adequate assurances reasonably satisfactory to Class Counsel by means of an officer's certificate executed by an appropriate officer of Las Colinas, or its successors or assigns, that (a) valid settlements have been consummated with all secured creditors and all other creditors necessary to effectuate the purposes of the Proposed Settlement, (b) Las Colinas, and its successors and assigns, can pay all of its restructured debt as it matures (with respect to which such officer may rely upon an opinion of outside appraisers) and (c) Las Colinas does not intend to file for protection under Chapter 11 of Title 11, United States Code, or any other similar laws for the relief of debtors for at least one (1) year and one (1) day from the date upon which the Proposed Settlement becomes an Effective Settlement, defined below (collectively, the "Conditions Precedent"). Upon fulfillment of all Conditions Precedent, the Proposed Settlement shall be an "Effective Settlement".

37.     The Proposed Settlement is further set forth in certain settlement documents (hereinafter collectively referred to as the "Settlement Documents") including without limitation, the Prospectus, the Prospectus Supplement, the Master Note, the Intercreditor Agreement, the Trust Agreement, and the Deed of Trust, which have all been submitted to and are on file with the Court and the Court has reviewed the Settlement Documents.

38.     The Proposed Settlement, as outlined in the Settlement Documents, has been accepted by the Defendants herein.

-13-

39. The Proposed Settlement, as outlined in the Settlement Documents, has been accepted by Kemper, individually and as Class Representative.

40. Kemper, individually and as a Class Representative, does not know of any other available alternative resolution of these problems which is a better resolution for the Noteholders than the Proposed Settlement. Kemper especially believes the Proposed Settlement to be superior to the acceleration of the indebtedness under the Indenture.

41. On or about June 6, 1989 and June 7, 1989, Kemper mailed to all holders of record the Notice in the form attached as Exhibit A to the Order Approving Notice, dated as of June 6, 1989, and on or about June 12, 1989 and June 13, 1989, to certain beneficial owners, all as evidenced by the Certificate of Transmittal of Notice of Hearing which has been filed with this Court. The Notice notified all holders of record and certain other beneficial owners as to the time and place of the hearing on the fairness of the Proposed Settlement (the "Fairness Hearing"), informed each recipient of their right to appear at the Fairness Hearing, and provided an adequate summary of the Proposed Settlement.

42. The Notice constitutes adequate and sufficient notice to Class Members and Noteholders of the proposed compromise of the class action, as required by Federal Rule of Civil Procedure 23(e). The Court finds that the Notice was given in compliance with the Court's Order of June 6, 1989, approving said Notice and that, giving due regard to the practicalities and exigent circumstances of this case, said Notice satisfied the requirements of due process and has given any Class Member or Noteholder who chooses to become actively involved, sufficient information and time to determine and prepare its position with regard to the Proposed Settlement. No further notice to Class Members is desirable or required given the existing circumstances of this cause.

43. The holders of the Notes have not been deprived of their right to sue

-14-

for principal and interest on the Notes within the meaning of Section 316(b) of the Trust Indenture Act, 15 U.S.C. 577ppp. This lawsuit is a suit, brought by Kemper on behalf of the Class of the Noteholders, for enforcement of the right to receive payment of principal and interest on the Notes pursuant to Section 316(b) of the Trust Indenture Act, 15 U.S.C. §§77ppp. The Proposed Settlement will constitute the best available payment of such principal and interest, and the Court has subjected the Proposed Settlement to judicial scrutiny. Individual lawsuits by Noteholders at this time would circumvent the best interest of the Noteholders as a whole and interfere with the rights of all the holders·and would lead to a race to judgment and quite possibly, to a reduced recovery for all Noteholders. Further, the approval of the Proposed Settlement and judgment against the Defendants would provide equal treatment for all Noteholders as opposed to the possible disparate and confusing treatment which may occur to those Noteholders who accept the Exchange Offer compared to those who do not accept the Exchange Offer. Such equal treatment shall provide an equitable and appropriate allocation of collateral and rights among all Noteholders.

44. The Class Representative, Kemper, has at all times acted properly and appropriately and in the best interests of the entire Class of Noteholders in negotiating and seeking approval of this Proposed Settlement. After participating in extensive settlement negotiations and assessing the situation to the best of its ability, Kemper believes that the Proposed Settlement is the most favorable resolution of the problems available to the Noteholders at this time. Kemper believes the Proposed Settlement to be fair to all Noteholders and to be superior to the acceleration of the indebtedness under the Indenture and the exercise of remedies, such as foreclosure and liquidation of Las Colinas. Kemper believes that it does not know of any other available alternative resolution of the problems which is achievable, a better resolution for the Noteholders, and acceptable to Las Colinas.

-15-

45.    Litigation and the possible case under the Bankruptcy Code which would result if this Proposed Settlement were not approved and the obligations of Las Colinas under the Indenture were accelerated, would involve substantial additional delay, expense and uncertainty to the Noteholders. Given the contingencies present in any such litigation, the Proposed Settlement is the best alternative available to the Noteholders and Las Colinas under the circumstances. The costs and delays of further litigation and a likely appeal therefrom outweigh any benefit which might accrue from such litigation or appeal.

46.    The terms and conditions of the Proposed Settlement are reasonable, fair and appropriate as to all Noteholders and all Class Members.

47.    The Proposed Settlement for resolution of the defaults on the Notes is a just and proper resolution of the defaults and is approved as being fair and, given the present existing circumstances, in the best interest of the Noteholders.

48.    There has been no improper control or influence by Kemper or by a majority of the Noteholders in proceeding to negotiate the Proposed Settlement.

49.    The Settlement Documents which have been prepared to effect the Proposed Settlement and which have been presented to the Court are reasonable, proper, and appropriate, adequately reflect the interests of the parties, and the execution of documents substantially similar to those presented to the Court is approved.

50.    The exchange of cash and Certificates provided for in the Proposed Settlement is intended by Las Colinas and the Noteholders to be a contemporaneous exchange for new value given to Las Colinas and such exchange is in fact a contemporaneous exchange for new value given to Las Colinas. The exchange of cash and Certificates provided for in the Proposed Settlement is an exchange whereby Las Colinas is receiving a reasonably equivalent value in exchange for the duties and obligations it shall assume and the security interests and liens it shall grant for the

benefit of the Trustee and the holders of the Certificates by and under the Proposed Settlement.  Upon consummation of the terms and conditions of the Proposed Settlement, including without limitation, the consummation of the terms and conditions of the Restructuring, Las Colinas shall have sufficient capital and resources and is a viable, solvent entity.  Further, upon consummation of the terms and conditions of the Proposed Settlement, including without limitation, consummation of the terms and conditions of the Restructuring, Las Colinas shall have the ability to pay its debts as they mature.

51.    Upon consummation of the Proposed Settlement the Master Note will be a valid, existing obligation of Las Colinas, and Las Colinas, and its successors and assigns, and all other necessary and appropriate parties are hereby authorized to take all necessary and appropriate action to execute and record all documents which are necessary and appropriate to give the Noteholders valid and perfected liens under the Deed of Trust on the collateral pledged to secure payment of the Master Note.

52.    Any finding of fact herein which is conclusion of law shall be deemed to be a conclusion of law as if fully set forth therein.

**THIS COURT FURTHER CONCLUDES AS A MATTER OF LAW:**

A.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332, 28 U.S.C. §§2201 and 2202, Ill. Rev. Stat. ch. 17, §1665, and Ill. Rev. Stat. ch. 110, §2-701.  This Court further has in personam jurisdiction over Defendants under Ill. Rev. Stat. ch. 110, §2-209.

B.    Venue for this action is proper in this District pursuant to 15 U.S.C. §77vvv(b) and 28 U.S.C. §1391.

C.    This action is properly one for adjudication by means of a declaratory judgment and is a real case and controversy. A declaratory judgment by the

-17-

Court approving the Proposed Settlement will terminate the controversy which gives rise to this proceeding. This proceeding does not involve a political question. Rowe v. Chesapeake & Potomac Telephone Co., 466 A.2d 538 (Md. App. 1983); Grossman v. State, 682 P.2d 1319 (Mont. 1984); Northwestern University v. State of Illinois, 56 Ill.App.3d 305 (1977); Roberts v. Roberts, 90 Ill.App.2d 184 (1967).

        D.     The Notice described herein, which was mailed to the Noteholders of record on June 6th and 7th, 1989, and to certain other Noteholders on June 12th and 13th, 1989, constitutes due and adequate notice to the Noteholders of the Proposed Settlement. Further, such Notice satisfies the requirements of due process and has given any Class Member or Noteholder who chooses to become actively involved in this litigation, sufficient information and time to determine and prepare its position with regard to the Proposed Settlement. Grunin v. International House of Pancakes, 513 F.2d 114, 121 (8th Cir. 1975), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); Maher v. Zapata Corp., 714 F.2d 436 (5th Cir. 1983); United States Founders Life Ins. Co. v. Consumers Nat. Life co., 447 F.2d 647 (7th Cir. 1971); Miller v. Republic Nat. Life Ins. Co., 559 F.2d 426 (5th Cir. 1977); MBank Dallas, National Association, as Successor Indenture Trustee v. LaBarge, Inc., No. 86 C 9583, N.D. Ill.; Harris Trust and Savings Bank, as Trustee v. Covenant Living Centers North, Inc., No. 80 C 1194, N.D. Ill.; LaSalle National Bank, as Trustee v. Butler Street Baptist Church, No. 81 C 6951, N.D. Ill.

        E.     Kemper has fairly and adequately represented all of the members of the Class and has at all times, both individually and as Class Representative, acted properly in this matter. The Class Representative, Kemper, has at all times acted properly and appropriately and in the best interest of all Class members in negotiating and seeking approval of this Proposed Settlement. Manual for Complex Litigation, Second, §30.43.

        F.     Kemper and Las Colinas have acted properly and within their

contractual rights and obligations in proceeding with the negotiation and consummation of the settlement approved in this Order. See, Donovan v. Estate of Fitzsimmons, 778 F.2d 298 (7th Cir. 1985); Armstrong v. Board of School Directors, 616 F.2d 305 (7th Cir. 1980); Patterson v. Stoval, 528 F.2d 108 (7th Cir. 1976).

      G.    The litigation and possible case under the Bankruptcy Code which would result if this Proposed Settlement were not approved and the obligations of Las Colinas under the indenture were accelerated, would involve substantial additional delay, expense and uncertainty to the Noteholders. Given the contingencies present in any such litigation, the Proposed Settlement is the best alternative available to the Noteholders and Las Colinas under the circumstances. The costs and delays of further litigation and the possible appeal therefrom outweigh the benefits which may accrue from such litigation or appeal. See, Donovan v. Estate of Fitzsimmons, 778 F.2d 298 (7th Cir. 1985); Palmer v. Bankers Trust Co., 12 F.2d 747 (8th Cir. 1926); Dickinson v. Burnham, 197 F.2d 973 (2d Cir. 1952), cert. denied, 344 U.S. 875 (1952).

      H.    The terms and conditions of the Proposed Settlement are reasonable, fair and appropriate as to all Noteholders and Class Members. Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 307-308 (7th Cir. 1985); Armstrong v. Board of School Directors, 616 F.2d 305 (7th Cir. 1980); Patterson v. Stoval, 528 F.2d 108, 114 (7th Cir. 1976). The Proposed Settlement for resolution of the default of the Notes is a just and proper resolution of the defaults and the Proposed Settlement is approved as being fair and given the present existing circumstances, in the best interest of the Noteholders. Id.

      I.    The holders of the Notes have not been deprived of their right to sue for payment of principal and interest within the meaning of Section 316(b) of the Trust Indenture Act, 15 U.S.C. §§77ppp. This lawsuit is a suit, brought by Kemper on behalf of the Class of the Noteholders, for enforcement of the right to receive payment of principal and interest on the Notes pursuant to Section 316(b) of the Trust Indenture Act,

15 U.S.C. §77ppp. The Proposed Settlement will constitute the best available payment of such principal and interest, and the Court has subjected the Proposed Settlement to judicial scrutiny. Individual lawsuits by Noteholders at this time would circumvent the best interest of all the Noteholders and interfere with the rights of all the holders and would lead to a race to judgment and quite possibly, to a reduced recovery for all Noteholders. Therefore, the Proposed Settlement does not violate or conflict with Section 318(b) of the Trust Indenture Act, 15 U.S.C. §§77ppp. House Committee Report No. 1016, 76th Congress, First Session, page 56.

J.     There has been and will be no improper control or influence by Kemper or by a majority of the Noteholders in proceeding to consummate the Proposed Settlement. See, In re. W.T. Grant Co., 699 F.2d 599 (2d Cir. 1983); KMC Co. Inc. v. Irving Trust Co., 757 F.2d 752 (1985); In re Process-Manz Press, Inc., 236 F. Supp. 333 (N.D. Ill. 1964), rev'd on other grounds, 369 F.2d 513 (1966); Farah Manufacturing Co. v. State National Bank, 678 S.W.2d 671 (Tex. 1984).

K.     The Settlement Documents which have been prepared to effect the Proposed Settlement and which have been presented to the Court, including the provision in the Joint Motion for payment of Kemper's fees and expenses, are reasonable, proper, and appropriate and adequately reflect the interests of the parties and the execution of documents substantially similar to those presented to the Court is approved. Stotts v. Memphis Fire Department, 679 F.2d 541 (6th Cir. 1982).

L.     The exchange of cash and Certificates provided for in the Proposed Settlement is intended by Las Colinas and the Noteholders to be a contemporaneous exchange for new value given to Las Colinas in the ordinary course of business. In re Magic Circle Energy Corp., 1986 CH Bank L.Rep. ¶71,444 (W.D. Okla. 1986).

M.     The terms and conditions of the Proposed Settlement are reasonable, fair and appropriate as to all Noteholders. The exchange of securities and cash

-20-

contemplated by the Proposed Settlement is fair and the securities to be issued in connection with the Proposed Settlement would otherwise be exempt from registration under Section 3(a)(10) of the Securities Act of 1933. Metlyn Realty Corp. v. Esmark, Inc., 763 F.2d 826 (7th Cir. 1985); SEC v. Blinder Robinson & Co., 511 F. Supp. 799 (D. Colo. 1981); Bleznak v. C.G.S. Scientific Corp., 387 F. Supp. 1184 (E.D. Pa. 1974); SEC v. Texas Int'l Corp., 498 F. Supp. 1231 (N.D. Ill. 1980); Merger Mines Corp. v. Grismer, 137 F.2d 335 (9th Cir. 1943); LIN Broadcasting Corp., SEC No-Action Letter, [1972-73 Transfer Binder] Fed. Sec. L. Re. (CCH) ¶79, 154 (November 8, 1972); VTR Inc., SEC No-Action Letter, [1971-72 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶78,518 (October 8, 1971).

N.    This action and the Joint Motion are brought under the Federal Declaratory Judgment Act, 28 U.S.C. §2201, seeking a declaration from this Court as to the rights of the Class with respect to the proposed resolution of a defaulted Note Issue. Such a declaration will serve a useful purpose in clarifying and settling the legal relationships between the Defendants and the Noteholders, and such a declaration will terminate the controversy and afford the Noteholders relief from uncertainty, insecurity and controversy. This action, therefore, constitutes a case or controversy within the meaning of Article III of the United States Constitution. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941); Lake Carriers' Association v. MacMullan, 406 U.S. 498 (1972); Alcan Aluminum v. Department of Revenue of the State of Oregon, 742 F.2d 1294 (7th Cir. 1984); Nuclear Engineering Co. v. Scott, 660 F.2d 241 (7th Cir.), cert. denied 455 U.S. 933 (1982); Maryland Casualty Company v. Rosen, 445 F.2d 1012 (2nd Cir. 1971); Serafin v. Sears, Roebuck & Co., Inc., 446 F.Supp. 611 (N.D. Ill. 1978).

O.    Upon consummation of the Proposed Settlement, the Master Note will be a valid, existing obligation of Las Colines and Las Colinas, and its successors and assigns, as well as other necessary and appropriate parties are hereby authorized and

-21-

directed to take all necessary and appropriate action to execute and record all necessary and appropriate documents to give valid and perfected liens to the Noteholders pursuant to the Deed of Trust on all of the collateral pledged to secure payment of the Master Note.

     P.    The effectiveness of this Proposed Settlement will require appropriate restructuring of the debt of other creditors. The Court will retain jurisdiction in this matter to ensure the effectiveness of this Proposed Settlement and the implementation thereof.

     Q.    Any conclusion of law which is finding of fact shall be deemed to be a finding of fact as if fully set forth therein.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

     1.    The compromise of this dispute as set forth in the Proposed Settlement and in the Settlement Documents is hereby approved by this Court as fair, adequate and reasonable under all of the circumstances, and accordingly, Kemper, Las Colinas, and the Class Members are authorized and directed to take all appropriate action to execute the Settlement Documents and consummate the Proposed Settlement.

     2.    The compromise of this dispute as set forth in the Proposed Settlement and in the Settlement Documents constitutes the best and highest result for all of the Noteholders, the Class Members, Las Colinas and all interested parties. Accordingly, all Noteholders and Class Members, including Kemper, and the Defendants, including Las Colinas, are bound by this order and declaratory judgment.

     3.    The Proposed Settlement shall not be an Effective Settlement and this action shall not be dismissed with prejudice until (i) the consummation of all of the actions contemplated by the Proposed Settlement, the Exchange Offer, the Prospectus, and the Restructuring, by all necessary and appropriate parties and (ii) the receipt by Kemper of adequate assurances reasonably satisfactory to Class Counsel by means of an

-22-

officer's certificate executed by an appropriate officer of Las Colinas, or its successors and assigns, which represents that (a) valid settlements have been consummated with all secured creditors and all other creditors necessary to effectuate the purposes of the Proposed Settlement, (b) Las Colinas, and its successor and assigns, can pay all of its restructured debt as it matures (with respect to with such officer may rely upon an opinion of outside appraisers), and (c) Las Colinas does not intend to file for protection under Chapter 11 of Title 11, United States Code, or any other similar laws for the relief of debtors for at least one (1) year and one (1) day from the date upon which the Proposed Settlement becomes an Effective Settlement (collectively, the "Conditions Precedent").

4.    Upon fulfillment of all Conditions Precedent, all duties, obligations, and liabilities of the Defendants under the Notes, the Indenture and the Old Deed of Trust shall become null, void and extinguished and such instruments shall be deemed to be cancelled to the extent such cancellation of said instruments is consistent with the terms and conditions of the new Deed of Trust to be executed pursuant to the terms and conditions of the Proposed Settlement: provided, however, that Sections 8.07 and 9.03 of the Indenture shall remain in full force and effect notwithstanding any of the above to the contrary.

5.    Upon fulfillment of all Conditions Precedent, the Indenture Trustee and the Class, and their successors and assigns, shall be deemed to have released all rights and claims that have been or might have been brought in this action arising from or relating, directly or indirectly, in any way to their investments in the Notes including without limitation, any subject matter of any allegation in the Complaint, whether any of such claims arise under the federal securities laws, other statutory law or the common law, against any Defendant, their respective subsidiaries or affiliates or any of their officers, directors, agents (including, without limitation, any financial advisor to any

Defendant), successors or assigns.

6.      Upon fulfillment of all Conditions Precedent, the Mortgage Trustee is hereby authorized and directed to execute and deliver in recordable form any and all documents which are necessary and appropriate to release all collateral subject to the lien of the Old Deed of Trust.

7.      Upon fulfillment of all Conditions Precedent, the Notes shall be deemed cancelled and the Noteholders sole recourse shall be the consideration offered pursuant to the Exchange Offer.

9.      Upon fulfillment of all Conditions Precedent, and subject to the obligations of the Defendants to pay the fees and expenses of Kemper incurred due to the defaults on the Notes and the fees and expenses of Kemper to be incurred due to the implementation of the Proposed Settlement, the Plaintiff is hereby authorized and directed to execute and deliver any and all documents which are necessary and appropriate to release all funds in the Lis Pendens Escrow Account to Las Colinas or any other such party as Las Colinas may direct; provided, however, that an amount shall remain on deposit in the Lis Pendens Escrow Account which shall be sufficient to pay all such expenses of Kemper and of LaSalle National Bank, as Exchange Agent, and as the Trustee for the Certificates.

10.     All Noteholders are directed to surrender their Notes for exchange on or before the Closing Date, as set forth below.

11.     The Closing Date is June 29, 1989. Additional Certificates shall be computed solely through the Closing Date and not through the date of any subsequent tender of any such Notes. All Certificates and cash consideration offered for exchange pursuant to the Exchange Offer which is not exchanged on the Closing Date shall be held in escrow on a pro rata basis for the benefit of all Noteholders who did not tender their Notes on or before the Closing Date. The exchange of such consideration held in escrow

-24-

for non-timely tendered Notes shall be on a "first come, first served" basis and shall not be subject to a pro rata distribution of Certificates and cash to any such Noteholder not tendering their Notes on or before the Closing Date.

12.    Within 30 days of the Closing Date Las Colinas shall cause a letter to be sent to all Noteholders who have not tendered their Notes pursuant to the Exchange Offer which (i) instructs and directs such holders to tender their Notes to LaSalle National Bank for exchange, (ii) inquires as to each Noteholder's election to receive cash or Certificates, or a combination thereof, (iii) informs such Noteholders that their election to receive cash or Certificates, or a combination thereof, is subject to the availability of such cash and Certificates held in escrow for such holders on a "first come, first served" basis, and (iv) instructs and directs such holders to tender their Notes for exchange within 30 days of receipt of said letter.

13.    This action is hereby dismissed without prejudice and with leave to reinstate if the terms and conditions of the Proposed Settlement, including without limitation, the terms and conditions of the Restructuring, are not consummated.  Any such reinstatement of this action and any and all rights, claims, and causes of action of the Class, including Kemper, shall relate back to the date the Complaint in this action was originally filed.

14.    Upon fulfillment of all Conditions Precedent, the parties hereto shall forthwith file a joint motion with this Court seeking dismissal of this action with prejudice.

15.    This Order approving the terms of this settlement is a final and appealable order and this Court finds that there is no just cause or reason for delay in any appeal in this Order.

-25-

16.    The Court retains jurisdiction to this case to enforce the terms of
the Proposed Settlement and implementation thereof, the debt restructuring of Las
Colinas, and to enter an order dismissing this case with prejudice.

Dated:   _June 27, 1989_

ENTER:

_Milton Shadur_

HONORABLE MILTON L. SHADUR

-26-

FILED

DEC 29 1986

H. Stuart Cunningham, Clerk
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MBANK DALLAS, National Association )
as Successor Indenture Trustee )
)
-and- )
)
CONTINENTAL ASSURANCE COMPANY, )
Individually and as representative )
of a class of those similarly )
situated, )
)            Case No. 86 C 9583
            Plaintiffs, )
)            Judge James B. Parsons
v. )
)
LaBARGE, INC. )
)
            Defendant. )

**DOCKETED**

JAN - 2 1987

### FINDINGS OF FACT,
### CONCLUSIONS OF LAW AND ORDER

THIS CAUSE COMES on the Complaint of MBank Dallas, National Associa-
tion as Successor Indenture Trustee (hereinafter referred to as "Trustee") and Conti-
nental Assurance Company, individually and as representative of a class of those similar-
ly situated (hereinafter referred to as "CNA") for a declaratory judgment as to their
rights and the rights of the class with regard to a proposed resolution of a defaulted
Debenture Issue between LaBarge, Inc. ("LaBarge"), the Trustee, and the Class of Deben-
tureholders, as described in the Complaint, Answer and below.  The Court has ordered
that this matter be heard on an expedited, emergency basis.  It is the opinion of this
Court after examining the relevant pleadings, hearing testimony and reviewing the
evidence and exhibits, hearing and considering the arguments of counsel and interested
parties, and reviewing and hearing objections filed with the Court, that it is just, proper
and appropriate to enter an order approving the terms of the Proposed Settlement of a

37

defaulted Debenture issue, as set forth below, and authorizing and directing the parties to consummate the proposed settlement thereby providing a method of payment to the Debentureholders for the defaulted Debentures they hold. Accordingly, this Court, being fully advised in the premises and having examined and considered all of said matters, does hereby find and conclude that:

### FINDINGS OF FACT

1.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1332. The Court further has jurisdiction over the parties to the action.

2.    This action is properly one for adjudication by means of a declaratory judgment, there is a real case and controversy, and it is in the public interest that this Court adjudge the rights of the parties. This proceeding does not involve a political question.

3.    The Trustee is the duly appointed, acting and qualified Successor Indenture Trustee under an Indenture dated as of October 15, 1983 (hereinafter "Indenture") between Mercantile Trust Company, National Association (hereinafter "Mercantile") as Trustee, and LaBarge as Obligor, pursuant to which LaBarge issued its 14.5% Subordinated Debentures due October 15, 1993 (hereinafter "Debentures"). A true and correct copy of the Trust Indenture was attached to Plaintiffs' Complaint as Exhibit A, PX 1. Plaintiffs' Trial Exhibits are referred to as "PX". Defendant's Trial Exhibits are referred to as "DX". The Trustee assumed the trusteeship under the Indenture pursuant to succession documents, PX Group 2.

4.    $20,000,000 of Debentures were issued by LaBarge pursuant to the Indenture on or about October 15, 1983.

-2-

5.    By Order of this Court dated December 12, 1986, this Court certified Count II of the Complaint as a plaintiff class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1)(A) and (B) and (b)(2), the class consisting of all holders of the Debentures (hereinafter called "Debentureholders" or "Class" or "Class Members").

6.    By Order of this Court dated December 12, 1986, this Court set an expedited hearing date on this matter for December 29, 1986 pursuant to Rule 57 of the Federal Rules of Civil Procedure and approved certain Notices to Debentureholders.

7.    On October 15, 1986, LaBarge failed to make the payment of interest required under Section 4.01 of the Indenture. This default has continued for 30 days, thereby constituting an Event of Default as defined in Section 6.01 of the Indenture.

8.    Upon the occurrence and continuance of an Event of Default, Section 6.02 of the Indenture provides that an Indenture Trustee (or the holder of not less than 25% in aggregate principal amount of the Debentures then outstanding) may declare the principal amount of all the Debentures to be due and payable immediately by notice in writing to LaBarge.

9.    MBank, as Trustee, sent a letter, Exhibit B to the Complaint, PX 3, dated October 29, 1986 to all Debentureholders whose names and addresses appeared on the records maintained by the prior Trustee, Mercantile, as registered Debentureholders. The October 29, 1986 letter gave notice of the existing default caused by LaBarge's failure to pay the interest payment due October 15, 1986 and informed the Debentureholders of certain of their rights under the terms of the Indenture. The October 29, 1986 letter also gave notice to the Debentureholders of a meeting of Debentureholders called by the Trustee pursuant to Section 11.06 of the Indenture to be held on November 6, 1986. The November 6, 1986 meeting was attended by over 20 representatives of the Debentureholders, holding over 64% of the principal amount of the Debentures. At the meeting, the situation regarding the defaults of LaBarge was described to and discussed

-3-

with the Debentureholders. LaBarge submitted a letter dated November 6, 1986 to be read to the Debentureholders at the meeting of November 6, 1986, Exhibit C to the Complaint, PX 4.

10.    The Indenture provides that the Debentures are subordinate to certain defined Senior Debt. Senior Debt means debt of LaBarge outstanding at any time, except debt that by its terms is not senior in right of payment to the Debentures. The Trustee and CNA, both individually and as class representative, claim that the subordination contained in the Indenture has been waived or is barred, given actions of certain other creditors of LaBarge.

11.    Pursuant to certain documents, including but not necessarily limited to the following: a Loan Agreement dated August 31, 1982 between Duralite Company, Inc., borrower (a subsidiary of LaBarge) and Chemical Bank ("Chemical"), lender, Promissory Note of Duralite Company, Inc. dated December 30, 1982 payable to Chemical in the principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000), Amended and Restated Security Agreement between Duralite Company, Inc. and Chemical dated December 30, 1982, Amended and Restated Guaranty Agreement dated December 30, 1982 between LaBarge and Chemical in the amount of $2,500,000, First Amendment dated as of September 28, 1983 to the said Loan Agreement between Duralite Company, Inc. and Chemical, Revolving Credit and Term Loan Agreement up to the amount of $8,000,000 dated September 30, 1982 between LaBarge and Mercantile Trust Company National Association ("Mercantile"), Security Agreement between LaBarge and Mercantile dated September 18, 1985, General Security Agreement between LaBarge and Chemical dated December 18, 1985, First Amendment to Security Agreement dated December 18, 1985 between LaBarge and Mercantile, Second Amendment to Loan Agreement dated November 27, 1985 between Omni Duralite and Chemical Bank, Inter-Creditor Agreement between Mercantile and Chemical dated

-4-

December 18, 1985, Guaranty of the Indebtedness of Omni Duralite Inc. to Chemical by LaBarge dated December 18, 1985 in the amount of $6,000,000 and the additional Guaranty dated January 31, 1985 which purports to be unlimited, Deed of Trust dated December 18, 1985 by LaBarge to Alan R. Milster as Trustee for the benefit of Mercantile, certain U.C.C. Financing Statements with Chemical as secured party, and Demand Line of Credit Letter Agreement as amended and supplemented between LaBarge and Mercantile, PX Group 21 and PX Group 22, Mercantile and Chemical claim that LaBarge is currently indebted to them in the approximate amount of $11,500,000 and $14,000,000 respectively, and a security interest in all personal and real property of LaBarge, whether now owned or hereafter acquired, wherever located, of every kind, nature and description, tangible and intangible, including but not limited to all accounts, instruments, documents, notes, claims, choses in action, money, contract rights, general intangible securities, stock, documents, chattel paper, credits, license agreements, machinery and equipment, furniture, fixtures, inventory, products, and the proceeds thereof.

12.    LaBarge has reached an understanding with various other of its creditors, including Mercantile and Chemical, as to a possible debt restructuring of the obligations owed by LaBarge to those creditors, subject to an appropriate resolution of the defaults presently existing under the Indenture.

13.    Without an appropriate resolution of the defaults presently existing under the Indenture, LaBarge is projected to be unable to meet its principal and interest obligations on the Debentures when due. LaBarge's Form 10-K for the fiscal year ending June 30, 1986, PX 18, indicates that LaBarge then had approximately a $13,500,000 negative shareholder equity on a consolidated basis. See also PX 19.

14.    Prior to the institution of this action, LaBarge indicated to the Trustee and other Debentureholders, including CNA, that in the event the Trustee accel-

-5-

erated the indebtedness pursuant to Section 6.02 of the Indenture, LaBarge would not be able to pay the full amount of the accelerated indebtedness and extensive litigation may ensue.  In addition, LaBarge indicated that it might be forced to seek relief under Title 11 of the United States Code ("Bankruptcy Code").  Such litigation or such a case under the Bankruptcy Code might involve, without limitation, the determination of the amount, priority and extent of any secured indebtedness, senior indebtedness or any guaranteed indebtedness, and would probably include litigation regarding whether the subordination contained in the Indenture has been waived or is barred by the actions of certain other creditors of LaBarge.

15.    Because of the potential adverse effect of liquidation of LaBarge, or the institution of litigation or the filing of a case under the Bankruptcy Code, and in an attempt to avoid expensive and time consuming litigation between LaBarge, Debentureholders, the Trustee and other creditors, the Trustee was directed by certain Debentureholders to engage in settlement discussions on behalf of the Debentureholders.

16.    On December 7, 1986, LaBarge and the Trustee tentatively agreed in principle upon a Proposed Settlement (hereinafter "Proposed Settlement"), subject to notice to all Debentureholders and Court approval. PX 6 and 7. The Proposed Settlement is described in a Statement of Settlement Term Sheet of December 7, 1986 in Order to Avoid Default Litigation (hereinafter "Term Sheet"), which was attached to the Complaint as Exhibit D, PX 5.  The Term Sheet provided that LaBarge would pay the Trustee's fees and expenses (including its counsels' and accountants' fees and expenses). Otherwise such would have been payable from the recovery to the Debentureholders under the terms of the Indenture which survives payment of the Debentures. The amount of Trustee's fees and expenses were negotiated separately after the Settlement Term was agreed to by the parties.  The Proposed Settlement has further been set forth in certain settlement documents (hereinafter collectively referred to as "Settlement Documents"), PX 8 through 15, including the following:

-6-

1.    Agreement of Settlement Between LaBarge, Inc. and MBank Dallas, National Association, as Successor Indenture Trustee, which is the document providing for the overall resolution of the disputes between the parties and specifies the rights and interests to be received by the Debentureholders, to be implemented by the specific documents attached as Exhibits to the Agreement of Settlement, PX 8.

2.    Indenture dated as of January 1, 1987 governing the terms and conditions under which the 10% Senior Debentures Series A and Series B are to be issued and outstanding, containing covenants requiring certain operating restrictions on the Company to protect the position of the holders of the Senior Debentures Series A and Series B, PX 9.

3.    Certificate of Designation, Preferences and Rights of Class A and Class B Cumulative Exchangeable Preferred Stock of LaBarge, Inc., which is the formal articulation under Delaware corporate law of the rights granted to the holders of and the circumstances under which the Class A and Class B Preferred Stock will be issued and outstanding, PX 10.

4.    Escrow Deposit Trust Agreement For Collateral Secured Demand Note, PX11, governing the circumstances under which the Collateral Secured Demand Note will be held by the Escrow Trustee and what action is to be taken by the Escrow Trustee under specified circumstances, which may lead to the redemption, cancellation, or demand upon the Collateral Secured Demand Note, PX 11A.

5.    Deed of Trust, Security Agreement and Fixture Filing, constituting the document in which a security interest in the collateral for the Collateral Secured Demand Note is granted, and which provides for a blanket encumbrance on all property of the Company, but grants to the Company the option to substitute specified collateral on which there are no prior liens, PX 12.

6.    Voting Trust Agreement, which is the document that governs the circumstances under which 50% (6,744,808 shares) of the common stock of the Company will be held for the term of the Voting Trust and the manner and method of voting this stock during the term of the Trust, PX 13.

7.    Option Agreement, which is the document governing the terms and conditions under which the Company may purchase the O.P. shares (4,744,808 shares), including restrictions on the method of effecting the purchase through financing by issuance of common stock and appropriate

-7-

details regarding the restrictions on the proceeds of any such stock issuance, PX 14.

      8.    Certificate of Amendment to Certificate of Incorporation, PX 15.

The Settlement Documents have all been submitted to and are on file with the Court and the Court has reviewed the Settlement Documents. By the terms of the Proposed Settlement, the Agreement of Settlement is controlling in the event of an ambiguity in the Settlement Documents.

      17.    The Proposed Settlement, as outlined in the Term Sheet and Settlement Documents, has been accepted by LaBarge, PX 6.

      18.    The Proposed Settlement, as outlined in the Term Sheet and Settlement Documents, has been accepted in principle by the holders of at least 64% in principal amount of the Debentures, to the Complaint. PX 7.

      19.    The Proposed Settlement involves payment of the Debentures by exchange of the Debentures for certain debt and equity securities of LaBarge. More particularly, LaBarge will be allowed to deem as paid $20,000,000 of Debentures in exchange for inter alia:

    (i) Certain assurances as to the majority of outside independent directors;

    (ii) The appointment of three new independent directors satisfactory to LaBarge, the Trustee and a majority of the Debentureholders;

    (iii) 140,000 shares of Class A Preferred Stock with a liquidation value of $7,000,000, which may be exchanged upon certain conditions for defined increments of senior Debenture Series A.

    (iv) 100,000 shares of Class B Preferred Stock with a liquidation value of $10,000,000, which may be exchanged upon certain conditions for defined increments of Senior Debenture Series B.

    (v) $5,000,000 Collateral Secured Demand Note, to be held in a depositary trust, which will be secured by a first lien on all

-8-

assets of LaBarge, subject to certain permitted liens, and upon which demand may only be made upon the occurrence of specific conditions, and which may be retired by LaBarge with the proportionate retirement of the last $5,000,000 of the Exchangeable Preferred Stock; and

(v)    50% of the then outstanding common stock of the company will be held in the voting trust with the rights of LaBarge and its then current management to purchase a portion of this common stock interest.

20.    It is projected by the Plaintiffs that if LaBarge were liquidated today, unless the Debentureholders were successful in asserting certain claims against other creditors of LaBarge regarding the amount, priority and extent of any secured indebtedness, senior indebtedness or guaranteed indebtedness, the Debentureholders would receive nothing in liquidation value to apply to the $20,000,000 in Debentures. PX 20.

21.    The Court finds that the liquidation analysis submitted by Ernst & Whinney is a reasonable prediction of the results of liquidation of LaBarge. This liquidation analysis, PX 24, demonstrates that the total liquidation value of the assets of LaBarge is $19,167,000, the total secured obligations including the debt owed to Mercantile Bank, Chemical Bank, Industrial Revenue Bondholders ($2,327,000) and Equipment Obligations ($466,000) which do not purport to be junior indebtedness, total approximately $19,752,000 (assuming Chemical debt is reduced to $6,000,000 as in effect settlement of a dispute). Thus a deficit of $585,000 would be available to pay unsecured claims totalling almost $29,859,000, including the $20,000,000 of Debentures. Such does not take into consideration the various costs of liquidation which would necessarily be incurred. While various theories of litigation against Chemical Bank and Mercantile Bank, the prior Indenture Trustee, and the officers and directors of LaBarge may, if successful, increase the recovery from this analysis, it is not assured that such will be successful and, even if successful, such recoveries appear to be less than the value of the settlement to the Debentureholders. See also PX 25.

-9-

22.     Accountants for the Plaintiffs have testified that the value of the new securities to be issued under the Proposed Settlement if LaBarge is a going concern is from $15,000,000 to in excess of $20,000,000.  PX 25, 26.  LaBarge has placed the value of the New Securities to be issued under the Proposed Settlement at approximately $15,000,000.  PX 23.

23.     Further, the Proposed Settlement has the following benefits, including without limitation:

A.     This resolution of LaBarge's defaults under the Indenture and of LaBarge's inability to comply with the terms of the Indenture provides a temporary equity infusion to LaBarge through the exchange of Debentures for 140,000 shares of Class A Cumulative Preferred Stock with a liquidation value of $7,000,000 to be exchangeable for Senior Debenture Series A; 100,000 shares of Class B Cumulative Preferred Stock with a liquidation value of $10,000,000 to be exchangeable for Senior Debenture Series B; 50% of the outstanding common stock of LaBarge in a Voting Trust; and secured by a $5,000,000 Collateral Secured Demand Note.

B.     After the consummation of the Proposed Settlement, LaBarge will continue in business as a going concern with substantial shareholder equity.

C.     The resolution prevents expensive, time-consuming and unproductive litigation between LaBarge, the Debentureholders, the Trustee and other creditors.  Such litigation would involve the determination of the amount, priority and extent of any secured indebtedness, senior indebtedness or any guaranteed indebtedness.  Such litigation would appear to prevent any debt restructuring with other creditors until such litigation was finally resolved.

D.     The rights, claims and interest of the Debentureholders as creditors are reserved and any claim which Debentureholders have against other creditors are reserved pending satisfactory performance by LaBarge of all the terms and conditions of the Proposed Settlement.

E.     Bankruptcy and numerous lawsuits by individual Debentureholders would cause serious ongoing business problems to LaBarge, and hence effect any recovery by Debentureholders, since LaBarge would very likely suffer the loss of the United States defense contracts, an extremely important part of the LaBarge business.

-10-

F.    Upon a liquidation of the assets of LaBarge on account of Bankruptcy or numerous lawsuits, the value of the assets would very likely be significantly less for Debentureholders given liquidation costs and existing secured senior debt. In such a liquidation the Debentureholders could very likely recover far less than $5,000,000, very possibly nothing.

24.    The Trustee believes that payment of the Debentures pursuant to the Proposed Settlement is the only currently available alternative to acceleration under the Indenture.

25.    The Trustee has taken all action it believes appropriate in order to obtain for the Debentureholders the most favorable resolution of the LaBarge problems that it believes to be possible. The Trustee believes, after participating in extensive settlement negotiations and assessing this situation to the best of its ability, that the Proposed Settlement is the most favorable resolution of the problems available to the Debentureholders at this time. The Trustee especially believes the Proposed Settlement to be superior to the acceleration of the indebtedness under the Indenture. The Trustee is unwilling to proceed with consummation of the Proposed Settlement without Court approval and direction and instruction to enter into the Proposed Settlement and a declaration of whether consummation of the Proposed Settlement is consistent with the duties and responsibilities of the Trustee.

26.    CNA, individually and as a class representative, does not know of any other available alternative resolution of these problems which is a better resolution for the Debentureholders and is acceptable to LaBarge than the Proposed Settlement. CNA especially believes the Proposed Settlement to be superior to the acceleration of the indebtedness under the Indenture.

27.    The Proposed Settlement may be affected by provisions of the Tax Reform Act which will apply on and after January 1, 1987. Therefore, the Proposed Settlement must be approved and consummated, if at all, by December 31, 1986.

-11-

28.    The Trustee, CNA and all Debentureholders will suffer serious and irreparable harm and injury absent a judicially scrutinized determination of the merits of this real case and controversy, which substantially affects the rights of each party before the Court, before December 31, 1986.

29.    On December 12, 1986, LaBarge mailed the Notice in the form attached as Exhibit A to the Order Setting Hearing Date and Approving Notices to all holders of record of the Debentures as evidenced by the Affidavit of Mailing which has been filed with this Court. PX 16, 17.

30.    On December 17, 1986 and again on December 22, 1986, the short form of Notice attached as Exhibit B to the Order Setting Hearing Date and Approving Notices was published in the Wall Street Journal, as evidenced by the Affidavit of Publication which has been filed with this Court.

31.    The Trustee mailed the Trustee's letter which was attached as Exhibit C to the Order Setting Hearing Date and Approving Notices to all Debentureholders of record on December 15, 1986, as evidenced by the Affidavit of Mailing which has been filed with this Court. PX 16, 17.

32.    These Notices which have been mailed and published constitute adequate and sufficient notice to Class Members and Debentureholders of the proposed compromise of the class action, as required by Federal Rule of Civil Procedure 23(e). The Court finds that these Notices were given in compliance with the Court's Order of December 12, 1986 setting hearing date and approving Notices and that, giving due regard to the practicalities and peculiar emergency circumstances of this case, said Notices satisfied the requirements of due process and have given any Class Member or Debentureholder who chooses to become actively involved, sufficient information and time to determine and prepare its position with regard to the Proposed Settlement. No further notice to Class Members is desirable or required, under the emergency circumstances of this case.

-12-

33.    The holders of the Debentures have not been deprived of their right to sue for principal and interest on the Debentures within the meaning of Section 316(b) of the Trust Indenture Act, 15 U.S.C. §77ppp.  This lawsuit is a suit, brought by the Trustee and by CNA on behalf of the Class of the Debentureholders, for enforcement of the right to receive payment of principal and interest on the Debentures pursuant to Section 316(b) of the Trust Indenture Act, 15 U.S.C. §77ppp.  The Proposed Settlement will constitute the best available payment of such principal and interest, and the Court has subjected the Proposed Settlement to judicial scrutiny.  Individual lawsuits by Debentureholders at this time would circumvent the best interest of the Debentureholders as a whole and interfere with the rights of all the holders and would lead to a race to judgment and quite possibly, to a reduced recovery for all Debentureholders.

34.    The Trustee has taken all actions that are reasonable, prudent, proper and appropriate in order to obtain the most favorable resolution for the Debentureholders as is possible, given the existing circumstances.  The Trustee in negotiating for the Proposed Settlement rather than accelerating the debt or attempting a liquidation of LaBarge has exercised the same degree of care and skill that a prudent man would exercise or use in the exercise of his own affairs.  The Trustee is correct in believing, after participating in extensive settlement negotiations and assessing this situation to the best of its ability, that the Proposed Settlement is the most favorable resolution of the problems available to the Debentureholders at this time.  The Trustee is further correct in believing that the Proposed Settlement is superior to the acceleration of the indebtedness under the Indenture or liquidation of LaBarge and payment of its creditors.  The Trustee, pursuant to the direction and instruction of a majority of the Debentureholders, has properly brought this action for this Court's review and scrutiny of the Proposed Settlement of the disputed issues set forth in the Complaint.  The Trustee has

-13-

at all times acted appropriately and prudently in negotiating for the Proposed Settlement and has complied with the requirements of the Trust Indenture Act of 1939, 15 U.S.C. §77aaa, et seq., including, but not limited to Section 315(c), 15 U.S.C. §77000(c).

35.    The class representative, CNA, has at all times acted properly and appropriately and in the best interests of the entire Class of Debentureholders in negotiating and seeking approval of this Proposed Settlement.

36.    The Objections of the Proposed Settlement filed with the Court are without merit and are overruled.  Litigation and the possible case under the Bankruptcy Code which would result if this Proposed Settlement were not approved and the obligations of LaBarge under the Indenture were accelerated, would involve substantial additional delay, expense and uncertainty to the Debentureholders.    Given the contingencies present in any such litigation, and the extremely doubtful recovery to Debentureholders in the event of liquidation of LaBarge, the Proposed Settlement is the best alternative available to the Trustee, the Debentureholders and LaBarge under the circumstances.  The costs and delays of further litigation, a likely appeal therefrom, and small chance of recovery outweigh any benefit which might accrue from such litigation or appeal.

37.    The terms and conditions of the Proposed Settlement are reasonable, fair and appropriate as to all Debentureholders and all Class Members.

38.    The Proposed Settlement for resolution of the default of Debentures is a just and proper resolution of the defaults and problems and is approved as being fair and, given the present existing circumstances, in the best interest of the Debentureholders.

39.    The exchange of securities contemplated by the Proposed Settlement is fair and such exchanged securities are exempt under Section 3(a)(10) of the Securities Act of 1933.

-14-

40.     There has been no improper control or influence by the Trustee, CNA, or by a majority of the Debentureholders in proceeding to consummate the Proposed Settlement.

41.     The Settlement Documents which have been prepared to effect the Proposed Settlement and which have been presented to the Court, PX 8 through 15, are reasonable, proper, and appropriate, adequately reflect the interests of the parties, and the execution of documents substantially similar to PX 8 through 15 is approved.

42.     After giving effect to the exchange of securities and notes as provided in the Proposed Settlement, LaBarge will be capable of continuing in business as a going concern with substantial shareholder equity.

43.     The exchange of securities and notes provided in the Proposed Settlement is intended by LaBarge, the Trustee and the Debentureholders to be a contemporaneous exchange for new value given to LaBarge and such exchange is in fact a contemporaneous exchange for new value given to LaBarge. The Proposed Settlement is in the ordinary course of business of LaBarge.

44.     Upon consummation of the Proposed Settlement, the Collateral Secured Demand Note will be a valid, existing obligation of LaBarge, and LaBarge is authorized to take appropriate action to execute and file all documents to give a valid and perfected lien to the Depository Trustee on all the assets of LaBarge to secure payment of the Collateral Secured Demand Note.

45.     After giving effect to the exchange of securities and notes as provided in the Proposed Settlement and as hereby provided and ordered, the Debenture Trustee and Debentureholders will have reserved their rights as to any rights, claims, causes of action in law or in equity or by statute, including the Federal Securities Laws, against any persons other than the Debentureholders, the Company, the Debenture Trustee and their respective counsel as such exist as of December 30, 1986 relating to the Debentures, Debenture Indenture, or the Default thereunder.

-15-

46.    Any finding of fact herein which is conclusion of law shall be deemed to be a conclusion of law as if fully set forth therein.

**THIS COURT FURTHER CONCLUDES AS A MATTER OF LAW:**

A.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1332.  This Court further has jurisdiction over the parties to both Counts.

B.    This action is properly one for adjudication by means of a declaratory judgment, is a real case and controversy, and it is in the public interest that this Court adjudge the rights of the parties on an expedited emergency basis.  This proceeding does not involve a political question.  Rowe v. Chesapeake & Potomac Telephone Co., 466 A.2d 538 (Md. App. 1983); Grossman v. State, 682 P.2d 1319 (Mont. 1984); North-western University v. State of Illinois, 56 Ill.App.3d 305 (1977); Roberts v. Roberts, 90 Ill.App.2d 184 (1967).

C.    The Trustee has the power to represent the Debentureholders in this action regarding the trust property and the resolution of this action by settlement or trial will bind all Debentureholders.  Carey v. Brown, 92 U.S. 171 (1875); Shaw v. Little Rock and Fort Smith Railway Co., 100 U.S. 605 (1880); Redmond v. Commerce Trust Company, 144 F.2d 140 (8th Cir. 1944), cert. den. 323 U.S. 776, rehearing den. 323 U.S. 819 (1945); Mo. Rev. Stat. 456.520.

D.    The Notices described herein, which have been mailed to the bond-holders and published in the Wall Street Journal, constitute due and adequate notice to the Debentureholders of the Proposed Settlement and further such Notices satisfy the requirements of due process and have given any class member or Debentureholder who chooses to become actively involved, sufficient information and time to determine and prepare its position with regard to the Proposed Settlement.  Grunin v. International House of Pancakes, 513 F.2d 114, 121 (8th Cir. 1975), cert. denied, 423 U.S. 864, 96 S.

-16-

Ct. 124, 46 L. Ed.2d 93 (1975); Maher v. Zapata Corp., 714 F.2d 436 (5th Cir. 1983); United States Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co., 447 F.2d 647 (7th Cir. 1971); Miller v. Republic Nat. Life Ins. Co., 559 F.2d 426 (5th Cir. 1977); Harris Trust and Savings Bank, as Trustee v. Covenant Living Centers North, Inc.., No. 80 C 1194, N.D. Ill.; LaSalle National Bank, as Trustee v. Butler Street Baptist Church, No. 81 C 6951, N.D. Ill.

E.    After default, and Indenture Trustee becomes an active trustee with power to take all actions necessary and proper which a reasonable, prudent man may take under such circumstances concerning his property and the Trustee may litigate all claims relating to the recovery of the trust property and may settle or compromise such claims. Carey v. Brown, 92 U.S. 171, 173 (1875); Shaw v. Little Rock and Fort Smith R. Co., supra; Newhouse v. First National Bank of Chicago, 13 F.2d 886 aff'd 17 F.2d 228 (7th Cir. 1927); Baker v. Dale, 123 F. Supp. 364 (W.D. Mo. 1954); Lower Colorado River Authority v. Chemical Bank and Trust Company, 185 S.W.2d 461 (Tex. Ct. Civ. App. 1945), aff'd. 190 S.W.2d 48 (Tex. 1945); BOGERT, TRUST AND TRUSTEES, §593 at pp. 277-288, (2d edition 1969).

F.    The Trustee has properly instituted this action as Trustee of an express trust, and accordingly, the Trustee may properly enter into and consummate the compromise of this action as set forth in the Proposed Settlement on behalf of all of the Debentureholders. Shaw v. Little Rock and Fort Smith R. Co., supra; U.S. and Mexican Trust Company v. U.S. Mexican Trust Company as Trustee, 250 F. 377 (8th Cir. 1918); Newhouse v. First National Bank of Chicago, 13 F.2d 887 aff'd 17 F.2d 228 (7th Cir. 1927); Smith v. Wayman, 224 S.W.2d 211 (Tex. S. Ct. 1949); Lower Colorado River Authority v. Chemical Bank and Trust Company, 185 S.W.2d 461 (Tex. Ct. Civ. App. 1945), aff'd. 190 S.W.2d 48 (Tex. 1945); Krieger v. Title Insurance Trust Co., 83 S.W.2d 850 (Ky. 1935); In re Pittsburgh and Lake Erie Railway Co. Securities and Antitrust

Litigation, 543 F.2d 1058 (3rd Cir. 1976); Redmond v. Commerce Trust Co., 144 F.2d 140 (8th Cir. 1944, cert. denied., 323 U.S. 776, rehearing den. 323 U.S. 819 (1945).

G.    The Trustee has properly sought and obtained this Court's granting and approval of the instant compromise with respect to payment of the Debentures, as set forth in the Proposed Settlement, thereby obviating the need for any further suit or litigation regarding the defaults under the Indenture.  Bennett's Guardian v. Cary's Ex'r and Trustee, 276 S.W. 818 (Ky. App. 1925); Butler v. Butler, 230 N.W. 575 (Minn. 1930); Redmond v. Commerce Trust Co., supra, Norman v. Muller, 42 N.E.2d 303 (Ill. App. 1942).

H.    CNA has fairly and adequately represented all of the members of the class and has at all times, both individually and as class representative, acted properly in this matter.  The class representative, CNA, has at all times acted properly and appropriately and in the best interest of all Class members in negotiating and seeking approval of this Proposed Settlement.  Manual for Complex Litigation, Second, $30.43.

I.    CNA, the Trustee and LaBarge have acted properly and within their contractual rights and obligations in proceeding with the negotiation and consummation of the settlement approved in this Order.  See, Donovan v. Estate of Fitzsimmons, 778 F.2d 298 (7th Cir. 1985); Armstrong v. Board of School Directors, 616 F.2d 305 (7th Cir. 1980); Patterson v. Stoval, 528 F.2d 108 (7th Cir. 1976).

J.    The Trustee, CNA and all Debentureholders will suffer serious and irreparable harm and injury absent a judicially scrutinized determination of the merits of this real case and controversy, which substantially affects the rights of each party before the Court, before December 31, 1986.

K.    The proposed Intervenor, TC Investment Group, has failed to comply with Rule 24(c) of the Federal Rules of Civil Procedure.  Further, intervention by this dissenting holder is not appropriate as an objection to the Proposed Settlement is not a

-18-

ground for intervention. <u>Guaranty Trust Co. v. Chicago, M. St. P. Ry. Co.</u>, 15 F.2d 434 (N.D. Ill. 1926); <u>In re Schommer</u>, 112 F.2d 311 (7th Cir. 1940). However, all objections to the Proposed Settlement which have been filed have been considered by the Court.

      L.    The litigation and possible case under the Bankruptcy Code which would result if this Proposed Settlement were not approved and the obligations of LaBarge under the Indenture were accelerated, would involve substantial additional delay, expense and uncertainty to the Debentureholders. Given the contingencies present in any such litigation, and the strong likelihood that nothing would be payable to the Debentureholders upon liquidation, the Proposed Settlement is the best alternative available to the Trustee, the Debentureholders and LaBarge under the circumstances. The costs and delays of further litigation, likely appeal therefrom and doubtful results outweigh any benefit which might accrue from such litigation or appeal. See <u>Donovan v. Estate of Fitzsimmons</u>, 778 F.2d 298 (7th Cir. 1985); <u>Palmer v. Bankers Trust Co.</u>, 12 F.2d 747 (8th Cir. 1926); <u>Dickinson v. Burnham</u>, 197 F.2d 973 (2d Cir. 1952), Cert. den'd, 344 U.S. 875 (1952).

      M.    The terms and conditions of the Proposed Settlement are reasonable, fair and appropriate as to all Debentureholders and Class Members. <u>Donovan v. Estate of Fitzsimmons</u>, 778 F.2d 298, 307-308 (7th Cir. 1985); <u>Armstrong v. Board of School Directors</u>, 616 F.2d 305 (7th Cir. 1980); <u>Patterson v. Stoval</u>, 528 F.2d 108, 114 (7th Cir. 1976). The Proposed Settlement for resolution of the default of Debentures is a just and proper resolution of the defaults, the objections to the Proposed Settlement are overruled, and the Proposed Settlement is approved as being fair and given the present existing circumstances, in the best interest of the Debentureholders. <u>Id</u>.

      N.    The holders of the Debentures have not been deprived of their right to sue for payment of principal and interest within the meaning of Section 316(b) of the Trust Indenture Act, 15 U.S.C. §77ppp. This lawsuit is a suit, brought by the Trustee and

by CNA on behalf of the Class of the Debentureholders, for enforcement of the right to receive payment of principal and interest on the Debentures pursuant to Section 316(b) of the Trust Indenture Act, 15 U.S.C. §77ppp. The Proposed Settlement will constitute the best available payment of such principal and interest, and the Court has subjected the Proposed Settlement to judicial scrutiny. Individual lawsuits by Debentureholders at this time would circumvent the best interest of all the Debentureholders and interfere with the rights of all the holders and would lead to a race to judgment and quite possibly, to a reduced recovery for all Debentureholders. Therefore, the Proposed Settlement does not violate or conflict with Section 316(b) of the Trust Indenture Act, 15 U.S.C. §77ppp. House Committee Report No. 1016, 76th Congress, First Session, page 56.

      O.    The Trustee has taken all actions that are reasonable, prudent, proper and appropriate in order to obtain the most favorable resolution for the Debentureholders as is possible, given the existing circumstances. The Trustee in negotiating for the Proposed Settlement rather than accelerating the debt or attempting a liquidation of LaBarge, has exercised the same degree of care and skill that a prudent man would exercise or use in the exercise of his own affairs. The Trustee is correct in believing, after participating in extensive settlement negotiations and assessing this situation to the best of its ability, that the Proposed Settlement is the most favorable resolution of the problems available to the Debentureholders at this time. The Trustee is further correct in believing that the Proposed Settlement is superior to the acceleration of the indebtedness under the Indenture or liquidation of LaBarge and payment of its creditors. The Trustee, pursuant to the direction and instruction of a majority of the Debentureholders has properly brought this action for this Court's review and scrutiny of the Proposed Settlement of the disputed issues set forth in the Complaint. The Trustee has at all times acted appropriately and prudently in negotiating for the Proposed Settlement and has complied with the requirements of the Trust Indenture Act of 1939,

-20-

15 U.S.C. §77aaa, et seq., including, but not limited to Section 315(c), 15 U.S.C. §77ooo(c). Palmer v. Bankers Trust Co., Id; Dickinson v. Burnham, Id.

      P.    The exchange of securities contemplated by the Proposed Settlement is fair and such exchange securities are exempt under Section 3(a)(10) of the Securities Act of 1933. See, e.g., Metlyn Realty Corp. v. Esmark, Inc.., 763 F.2d 826 (7th Cir. 1985); Bleznak v. C.G.S. Scientific Corp., 387 F.Supp. 1184 (E.D. Pa. 1974); SEC v. Texas Int'l Corp., 498 F.Supp. 1231 (N.D. Ill. 1980); Merger Mines Corp. v. Grismer, 137 F.2d 335 (9th Cir. 1943); LIN Broadcasting Corp., SEC No-Action Letter, [1972-73 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶79,154 (November 8, 1972); VTR, Inc.., SEC No-Action Letter, [1971-72 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶78,518 (October 8, 1971). The Securities and Exchange Commission has also agreed that court-approved settlements which involve the issuance of new securities are the very transactions intended to be covered by Section 3(a) 10. See, e.g., Peoples Financial Corp., SEC No-Action Letter, July 21, 1986.

      Q.    There has been and will be no improper control or influence by the Trustee, CNA, or by a majority of the Debentureholders in proceeding to consummate the Proposed Settlement. See, In re W.T. Grant Co., 699 F.2d 599 (2d Cir. 1983); KMC Co. Inc.. v. Irving Trust Co., 757 F.2d 752 (1985); In re Process-Manz Press, Inc., 236 F.Supp. 333 (N.D. Ill. 1964), rev'd on other grounds, 369 F.2d 513 (1966); Farah Manufacturing Co. v. State National Bank, 678 S.W.2d 671 (Tex. 1984).

      R.    The Settlement Term Sheet PX 5 and the Settlement Documents which have been prepared to effect the Proposed Settlement and which have been presented to the Court, including the provision in the Settlement Agreement for payment of Trustee's fees and expenses, are reasonable, proper, and appropriate and adequately reflect the interests of the parties and the Settlement Term Sheet and the execution of documents substantially similar to PX 8 through 15 are approved. PX 8 through 15. Stotts v. Memphis Fire Department, 679 F.2d 541 (6th Cir. 1982).

-21-

S.    After giving effect to the exchange of securities and notes as provided in the Proposed Settlement, LaBarge will be capable of continuing in business as a going concern with substantial shareholder equity. PX 26, 23.

T.    The exchange of securities and notes provided in the Proposed Settlement is intended by LaBarge, the Trustee and the Debentureholders to be a contemporaneous exchange for new value given to LaBarge and such exchange is in fact contemporaneous exchange for new value given to LaBarge in the ordinary courses of business. In re Magic Circle Energy Corp., 1986 CCH Bank L. Rep. ¶71,444 (W.D. Okla. 1986).

U.    Upon consummation of the Proposed Settlement, the Collateral Secured Demand Note will be a valid, existing obligation of LaBarge, and LaBarge is authorized and directed to take appropriate action to execute and file all documents to give a valid and perfected lien to the Depositary Trustee on all the assets of LaBarge to secure payment of the Collateral Secured Demand Note and Collateral Secured Demand Note shall be valid, binding and perfected.  The effectiveness of this Settlement will require appropriate restructuring of the debt of other creditors.  The Court will retain jurisdiction in this matter to ensure the effectiveness of this Settlement and the implementation thereof.

V.    After giving effect to the exchange of securities and notes as provided in the Proposed Settlement, the Debenture Trustee and Debentureholders will have reserved their rights as to any rights, claims, causes of action in law or in equity or by statute, including the Federal Securities Laws, against any persons other than the Debentureholders, the Company, the Debenture Trustee and their respective counsel as such exist as of December 30, 1986 relating to the Debentures, Debenture Indenture, or the Default thereunder.

-22-

W.    Any conclusion of law which is finding of fact shall be deemed to be a finding of fact as if fully set forth therein.

## WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

A.    All objections are overruled and the compromise of this dispute as set forth in the Proposed Settlement and in the Settlement Documents, is hereby approved by this Court as fair, adequate and reasonable under all of the circumstances, and accordingly, the Trustee, CNA and LaBarge are authorized and directed to take all appropriate action to execute the Settlement Documents and consummate the Proposed Settlement.

B.    The compromise of this dispute as set forth in the Proposed Settlement and in the Settlement Documents constitutes the best and highest result for all of the Debentureholders, the Class Members, the Trustee and LaBarge, under the circumstances, and such compromise is in the best interest of the Debentureholders, the Class Members, CNA, the Trustee, Labarge and all interested parties. Accordingly, all Debentureholders, the Class Members, the Trustee, CNA and LaBarge are bound by this order and declaratory judgment.

C.    All Debentureholders are directed to surrender their Debentures for exchange on or before 5th day of February, 1987.

D.    This Order approving the terms of this settlement is a final and appealable order and this Court finds that there is no just cause or reason for delay in any appeal in this Order.

E.    The Court retains jurisdiction of this case to enforce the terms of

the Proposed Settlement and implementation thereof and the debt restructuring of
LaBarge.

BY THE COURT:

The Honorable James B. Parsons

Dated: December 29, 1986

-24-